## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § | No. 1:23-cv-0355 |
| | § | **CAPITAL 2255 PROCEEDINGS** |
| v. | § § | HON. MARCIA A. CRONE |
| CHRISTOPHER EMORY CRAMER | § § § § § | |

## EXHIBITS IN SUPPORT OF MOTION FOR COLLATERAL RELIEF

## VOLUME 2

## EXHIBITS 73-102

**EXHIBIT INDEX**

1.   *Filed Under Seal*

2.   Transcript of Sentencing Proceedings, *U.S. v. Otis Carden,* Case No. 08-CR-147-T-26MP, January 12, 2009

3.   *Filed Under Seal*

4.   *Filed Under Seal*

5.   *Filed Under Seal*

6.   *Filed Under Seal*

7.   *Filed Under Seal*

8.   Declaration of Terry Oliver Gilmore, March 13, 2023

9.   Declaration of Hortensia White, July 10, 2023

10.  *Filed Under Seal*

11.  Declaration of Jeffrey Martin, March 17, 2023

12.  *Filed Under Seal*

13.  Declaration of John McNicholas, August 29, 2023

14.  Declaration of Ronald McElroy, February 27, 2023

15.  Declaration of Shirley Miller, July 8, 2023

16.  *Filed Under Seal*

17.  *Filed Under Seal*

18.  *Filed Under Seal*

19.  *Filed Under Seal*

20.  Testimony, Judge Marcia Crone, Criminal Justice Act Review, February 4, 2016

21.  *Filed Under Seal*

22.  *Filed Under Seal*

1

23.     *Filed Under Seal*

24.     *Filed Under Seal*

25.     *Filed Under Seal*

26.     *Filed Under Seal*

27.     *Filed Under Seal*

28.     *Filed Under Seal*

29.     *Filed Under Seal*

30.     *Filed Under Seal*

31.     *Filed Under Seal*

32.     *Filed Under Seal*

33.     *Filed Under Seal*

34.     *Filed Under Seal*

35.     *Filed Under Seal*

36.     *Filed Under Seal*

37.     *Filed Under Seal*

38.     *Filed Under Seal*

39.     *Filed Under Seal*

40.     *Filed Under Seal*

41.     Declaration of Dr. John Weeks, September 10, 2023

42.     *Filed Under Seal*

43.     *Filed Under Seal*

44.     Declaration of Dr. Barbara Belbot, September 14, 2023

45.     Declaration of Dr. Meredith Rountree, September 12, 2023

46.     Declaration of Anthony S. Haughton, September 19, 2023

47.     *Filed Under Seal*

2

48.     *Filed Under Seal*

49.     *Filed Under Seal*

50.     *Filed Under Seal*

51.     Supplemental Declaration of Darla Dillon, September 07, 2023

52.     Article, Federal Death Penalty Resource Counsel

53.     *Filed Under Seal*

54.     *Filed Under Seal*

55.     *Filed Under Seal*

56.     *Filed Under Seal*

57.     Article, *Federal Death Penalty: The federal government can seek death sentence for a limited set of crime, but federal executions are much rare than state executions*, 2023

58.     General Order Adopting The Amended Plan For The Random Selection of Jurors, No. 19-06, April 4, 2019

59.     General Order Amending Local Rules, No. 09-07, March 26, 2009

60.     *Filed Under Seal*

61.     *Filed Under Seal*

62.     *Filed Under Seal*

63.     *Filed Under Seal*

64.     *Filed Under Seal*

65.     *Filed Under Seal*

66.     *Filed Under Seal*

67.     Excerpt of DSM-V, Conduct Disorder, 2013

68.     *Filed Under Seal*:

69.     *Filed Under Seal*

70.     *Filed Under Seal*

71.     *Filed Under Seal*

3

72.    *Filed Under Seal*

73.    Declaration of Matt Rubenstein , September 13, 2023

74.    *Filed Under Seal*

75.    *Filed Under Seal*

76.    *Filed Under Seal*

77.    *Filed Under Seal*

78.    *Filed Under Seal*

79.    *Filed Under Seal*

80.    *Filed Under Seal*

81.    Article, *Federal Prisons Were Told to Provide Addiction Medications. Instead, They Punish People Who Use Them,* December 12, 2022

82.    Intentionally Omitted

83.    *Filed Under Seal*

84.    *Filed Under Seal*

85.    Article, Gangs, Prison Culture and the Role of Prison Staff, February 10, 2022

86.    Article, Violence on the Rise in BOP Facilities, August 15, 2009

87.    Article, Five things to know about one of the deadliest federal prisons, May 31, 2022

88.    *Filed Under Seal*

89.    *Filed Under Seal*

90.    *Filed Under Seal*

91.    *Filed Under Seal*

92.    *Filed Under Seal*

93.    *Filed Under Seal*

94.    *Filed Under Seal*

95.    *Filed Under Seal*

4

96.     *Filed Under Seal*

97.     *Filed Under Seal*

98.     *Filed Under Seal*

99.     *Filed Under Seal*

100.    *Filed Under Seal*

101.    *Filed Under Seal*

102.    *Filed Under Seal*

# Exhibit 73

## DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH

1. I serve as the Director of the Capital Resource Counsel project. The Capital Resource Counsel ("CRC") project and the Federal Death Penalty Resource Counsel ("FDPRC") project are the federal capital trial projects (commonly referred together as the "Trial Projects")[1] of the Defender Services Office of the Administrative Office of the United States Courts. The two projects are staffed by expert federal capital litigators who work in close coordination providing consultation, training, and assistance to courts and counsel to improve the quality of representation and cost-effectiveness of defense services in federal capital prosecution cases. The CRC attorneys are full-time salaried federal defender staff available to be appointed to represent federal capital defendants and the FDPRC resource counsel are part-time contractors who do not appear as counsel of record in their role with the Project.

2. The Trial Projects' responsibilities include the monitoring of all federal capital prosecutions throughout the United States to assist in the delivery of high-quality defense services to indigent capital defendants. This effort includes overseeing the collection of data on the initiation and prosecution of federal capital cases.

3. In my review of the thirty-four (34) federal capital trials that proceeded to a jury sentencing since 2010, the Court instructed the jurors that the consequence of a non-unanimous

---

[1] The work of the Trial Projects is described in a report prepared by the Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, *Federal Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense Representation* (May 1998), at 28 – 30, http://www.uscourts.gov/sites/default/files/original_spencer_report.pdf [Perma.cc archive: https://perma.cc/SU25-GWMV]. The Subcommittee report "urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project . . . , which has become essential to the delivery of high quality, cost-effective representation in death penalty cases . . . ." *Id.* at 50. An update to the Report states: "Many judges and defense counsel spoke with appreciation and admiration about the work of Resource Counsel. Judges emphasized their assistance in recruiting and recommending counsel for appointments and their availability to consult on matters relating to the defense, including case budgeting. Defense counsel found their knowledge, national perspective, and case-specific assistance invaluable." *Report to the Committee on Defender Services, Judicial Conference of the United States, Update on the Cost and Quality of Defense Representation in Federal Death Penalty Cases* (September 2010) at 63. https://www.uscourts.gov/sites/default/files/fdpc2010.pdf [Perma.cc archive: https://perma.cc/LPH6-K8QB].

Exhibit 73 - 1

vote on the ultimate issue of life or death was the imposition of a sentence of life imprisonment without release in twenty-seven (27) of these trials (79% of the trials).[2][3]

4.    In the twenty-seven (27) trials in which the instruction was given, eight trials (8) resulted in one or more unanimous death sentences (30% of the trials resulted in one or more sentences of death).[4] This data establishes that fears about giving a jury "'an open invitation to . . . avoid its responsibility and to disagree,'" *Jones*, 527 U.S. at 384 (quoting *Justus v. Virginia*, 266 S.E.2d 87, 92-93 (Va. 1980)), are unfounded.

5.    Furthermore, in the seven (7) trials in which the Court did *not* instruct the jurors of the consequence of a non-unanimous vote on the ultimate issue of life or death, the jury sentenced every defendant except one to death (eight (8) of the nine (9) defendants; 89% of the sentences were for death).[5]

6.    In the two capital trials occurring in the Eastern District of Texas since 2010, the instruction addressing the consequences of non-unanimity was *not* given and all four (4) defendants were sentenced to death (each trial involved two (2) codefendants).

7.    I am aware of only one other case, *United States v. Taylor*, 814 F.3d 340, 371 (6th Cir. 2016), in which a jury asked about the consequences of a non-unanimous decision and the court declined to inform the jury that a non-unanimous vote for life imprisonment without release

---

[2]    The list of these twenty-seven (27) trials is attached as *Exhibit A*. Extracts of relevant language from the jury instructions and verdict forms is attached as *Exhibit B*.

[3]    A total of forty-one (41) defendants were tried during this period (five (5) of these thirty-four (34) trials involved one or more co-defendants).

[4]    The trials in which the consequences of non-unanimity instruction was given that resulted in one or more death sentences included: (1) *United States v. Azibo Aquart*, No. 3:06-CR-00160-SRU (D. Conn. 2011), (2) *United States v. Kaboni Savage, et al.*, No. 2:04-cr-00269-MAK (E.D. Pa. 2012), (3) *United States v. Thomas Sanders*, No. 1:10-cr-00351-DDD-JDK (W.D. La. 2014), (4) *United States v. Wesley Coonce, et al.*, No. 6:10-cr-03029-GAF (W.D. Mo. 2014), (5) *United States v. Dylann Storm Roof*, No. 2:15-cr-00472 (D.S.C. 2016), (6) *United States v. Gary Lee Sampson*, No. 1:01-cr-10384-LTS (D. Mass. 2016), (7) *United States v. Brandon Council*, No. 4:17-cr-00866-RBH (D.S.C. 2019), and (8) *United States v. Robert Bowers*, No. 2:18-cr-00292-RJC (W.D. Pa. 2023).

[5]    The defendants sentenced to death included: (1) *U.S. v. Alejandro Umana*, No. 3:08-cr-00134-RJC (W.D.N.C. 2010), (2 & 3) *U.S. v. Mark Snarr & Edgar Garcia*, No. 1:09-cr-00015-MAC-KFG (E.D. Tex. 2010), (4) *U.S. v. Ronell Wilson*, No. 1:04-cr-01016-NGG (E.D.N.Y. 2013), (5) *U.S. v. Jorge Torrez*, No. 1:11-cr-00115-LO (E.D. Va. 2014), (6) *U.S. v. Dzhokhar Tsarnaev* (D. Mass. 2015), and (7 & 8) *U.S. v. Christopher Cramer & Ricky Fackrell*, No. 1:16-cr-00026-MAC-ZJH (E.D. Tex. 2018). The one life sentence was returned in *U.S. v. Vincent Basciano*, No. 1:05-cr-00060-NGG (E.D.N.Y. 2011).

DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS
OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE
IMPRISONMENT OR DEATH
(August 31, 2023)                                                                                    Page 2

Exhibit 73 - 2

or death would result in a life sentence.[6] In my experience, this situation is extremely unusual in capital trials.

I declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that the foregoing is true and correct. Executed this 31st day of August, 2023.

/s/      Matthew Rubenstein
         Matthew Rubenstein

---

[6]      I have conducted a comprehensive review of the thirty-four (34) federal capital trials that proceeded to a jury sentencing since 2010 and have consulted with capital appellate and trial resource counsel regarding earlier trials.

DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS
OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE
IMPRISONMENT OR DEATH
(August 31, 2023)                                                                    Page 3

Exhibit 73 - 3

Exhibit A

List of Federal Capital Cases Tried Since 2010 in which the
Court Instructed the Jurors that the Consequence of a Non-Unanimous
Vote on the Ultimate Issue of Life or Death was the
Imposition of a Sentence of Life Imprisonment Without Release

1.  *United States v. Robert Bowers*, No. 2:18-cr-00292-RJC (W.D. Pa. 2023, Colville, J.) (voir dire began April 24, 2023)

2.  *United States v. Sayfullo Habibullaevic Saipov*, No. 1:17-cr-00722 (S.D.N.Y 2023, Broderick, J.) (voir dire began October 11, 2022)

3.  *United States v. Brandon Council*, No. 4:17-cr-00866-RBH (D.S.C. 2019, Harwell, J.) (voir dire began September 9, 2019)

4.  *United States v. Brendt Christensen*, No. 2:17-cr-20037-JES (C.D. Ill. 2019, Shadid, J.) (voir dire began June 3, 2019)

5.  *United States v. Ulysses Jones*, No. 6:10-cr-03090-DGK (W.D. Mo. 2017, Kays, J.) (voir dire began September 25, 2017)

6.  *United States v. Jesse Con-Ui,* No. 3:13-cr-00123-ARC (M.D. Pa. 2017, Caputo, J.) (voir dire began April 24, 2017)

7.  *United States v. Dylann Storm Roof*, No. 2:15-cr-00472 (D.S.C. 2016, Gergel, J.) (voir dire began November 28, 2016)

8.  *United States v. Gary Lee Sampson*, No. 1:01-cr-10384-LTS (D. Mass. 2016, Sorokin, J.) (voir dire began September 14, 2016)

9.  *United States v. Juan Briseno*, No. 2:11-cr-00077 (N.D. Ind. 2015, Simon, J.) (voir dire began January 12, 2015)

10. *United States v. Thomas Sanders*, No. 1:10-cr-00351-DDD-JDK (W.D. La. 2014, Drell, J.) (voir dire began August 18, 2014)

11. *United States v. Wesley Coonce, et al.*, No. 6:10-cr-03029-GAF (W.D. Mo. 2014, Fenner, J.) (voir dire began March 28, 2014)

12. *United States v. Naeem Williams*, No. 1:06-cr-00079-JMS-KSC (D. Haw. 2014, Seabright, J.) (voir dire began January 28, 2014)

13. *United States v. John McCluskey,* No. 1:10-cr-02734-JCH (D.N.M. 2013, Herrera, J.) (voir dire began July 22, 2013.)

Exhibit 73 - 4

14. *United States v. Ahmed Salad, et al.*, No. 2:11-cr-00034-RBS (E.D. Va. 2013, Smith, J.) (voir dire began June 4, 2013)

15. *United States v. Xavier Jimenez-Bencevi*, No. 3:12-cr-00221-JAF (D.P.R. 2013, Fusté, J.) (voir dire began April 15, 2013)

16. *United States v. LaShaun Casey*, No. 3:05-CR-00277-ADC (D.P.R. 2013, Delgado-Colon, J.) (voir dire began February 4, 2013)

17. *United States v. Alexis Candelario-Santana*, No. 3:09-cr-00427-JAF-1 (D.P.R. 2013, Fusté, J.) (voir dire began January 28, 2013)

18. *United States v. Kaboni Savage, et al.*, No. 2:04-cr-00269-MAK (E.D. Pa. 2012, Surrick, J.) (voir dire began November 5, 2012)

19. *United States v. Edison Burgos-Montes*, No. 3:06-cr-00009-JAG (D.P.R. 2012, Garcia-Gregory, J.) (voir dire began April 16, 2012)

20. *United States v. Brian Richardson*, No. 1:08-cr-00139-CC (N.D. Ga. 2012, Cooper, J.) (voir dire began February 27, 2012)

21. *United States v. Larry Lujan*, No. 2:05-cr-00924-RB (D.N.M. 2011, Brack, J.) (voir dire began June 20, 2011)

22. *United States v. Azibo Aquart*, No. 3:06-CR-00160-SRU (D. Conn. 2011, Underhill, J.) (voir dire began April 6, 2011)

23. *United States v. Timothy O'Reilly*, No. 2:05-cr-80025-VAR-1 (E.D. Mich. 2010, Roberts, J.) (voir dire began June 8, 2010)

24. *United States v. George Lecco*, No. 2:05−cr−00107 (S.D.W. Va. 2010, Copenhaver, Jr., J.) (voir dire began April 5, 2010)

25. *United States v. Anh The Duong*, No. 01-cr-20154-JF (N.D. Cal. 2010, Fogel, J.) (voir dire began February 23, 2010)

26. *United States v. Antonio Argueta*, No. 8:05-CR-00393-DKC (D. Md. 2010, Chasanow, J.) (voir dire began January 12, 2010)

27. *United States v. Maurice Phillips*, No. 2:07-cr-00549-JCJ (E.D. Pa. 2010, Joyner, J.) (voir dire began January 4, 2010)

Exhibit A: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)                                                                                      Page 2

Exhibit 73 - 5

Exhibit B


Relevant Portions of Extracts from Sentencing Trial
(Penalty Phase) Jury Instructions and Verdict Forms

Exhibit 73 - 6

Sentencing Trial (Penalty Phase) Jury Instructions and Verdict Form Extracts

| | |
|---|---|
| **US v. Robert Bowers (W.D. Pa. 2023)** | **1** |
| 2023 Bowers (W.D. Pa. 2023) excerpts penalty phase final charge | 2 |
| consequences of non-unanimity | 3 |
| consequences of non-unanimity | 5 |
| 2023 Bowers (W.D. Pa. 2023) Verdict Form | 6 |
| **US v. Sayfullo Habibullaevic Saipov (S.D.N.Y. 2023)** | **8** |
| 2023 Saipov (S.D.N.Y.) excerpts Juror Questionnaire | 9 |
| consequences of non-unanimity | 10 |
| consequences of non-unanimity | 11 |
| 2023 Saipov (S.D.N.Y.) excerpts Voir Dire | 13 |
| consequences of non-unanimity | 14 |
| consequences of non-unanimity | 15 |
| 2023 Saipov (S.D.N.Y.) excerpts penalty phase final charge | 17 |
| consequences of non-unanimity | 19 |
| 2023 Saipov (S.D.N.Y.) Court Exhibit #14 - Deliberations began March 8, 2023 (Tr at 3625); note from jury rec'd March 13, 2023 | 20 |
| **US v. Brandon Council (D.S.C. 2019)** | **21** |
| 2019 Council (D.S.C. ) excerpts preliminary final sentencing trial instruction | 22 |
| consequence of non-unanimity | 23 |
| 2019 Council (D.S.C. ) excerpts closing sentencing trial instruction | 24 |
| consequence of non-unanimity | 25 |
| 2019 Council (D.S.C. ) Verdict Form | 26 |
| consequence of non-unanimity | 27 |
| **US v. Brendt Christensen (C.D. Ill. 2019)** | **29** |
| 2019 Christensen (C.D. Ill.) Special Verdict Form | 30 |
| non-unanimity | 31 |
| 2019 Christensen (C.D. Ill.) instruction given to jury in response to note | 32 |
| consequence of non-unanimity | 33 |
| **US v. Ulysses Jones (W.D. Mo. 2017)** | **35** |
| 2017 Jones (W.D. Mo.) excerpts final sentencing trial instruction | 38 |
| consequence of non-unanimity | 40 |
| **US v. Jesse Con-Ui (M.D. Pa. 2017)** | **41** |

Exhibit 73 - 7

2017 Con-Ui (M.D. Pa.) excerpts final sentencing trial instruction                    42

    consequence of non-unanimity                    44

    consequence of non-unanimity                    45

2017 Con-Ui (M.D. Pa.) excerpts sentencing verdict form                    46

    consequence of non-unanimity                    47

    non-unanimity                    48

**US v. Dylann Storm Roof (D.S.C. 2016)**                    **51**

2017 Roof (D.S.C) excerpts final sentencing trial instruction                    52

    consequence of non-unanimity                    56

2017 Roof (D.S.C) excerpts sentencing verdict form                    57

    non-unanimity                    59

**US v. Gary Lee Sampson (D. Mass. 2017)**                    **60**

2017 Sampson (D. Mass. ) excerpts final sentencing trial instruction                    61

    consequence of non-unanimity                    65

2017 Sampson (D. Mass. ) excerpts sentencing verdict form                    67

    consequence of non-unanimity                    68

**US v. Juan Briseno (N.D. Ind. 2015)**                    **69**

2015 Briseno (N.D. Ind) excerpts final sentencing trial instruction                    70

    consequence of non-unanimity                    74

2015 Briseno (N.D. Ind) excerpts sentencing verdict form                    76

    consequence of non-unanimity                    77

**US v. Thomas Steven Sanders (W.D. La. 2014)**                    **86**

2014 Sanders (W.D. La.) excerpts final sentencing trial instruction                    87

    consequence of non-unanimity                    88

    consequence of non-unanimity                    89

    consequence of non-unanimity                    92

2014 Sanders (W.D. La.) excerpts sentencing verdict form                    93

    non-unanimity                    94

**US v. Wesley Paul Coonce, et al. (W.D. Mo. 2014)**                    **95**

2014 Coonce, Wesley Paul (W.D. Mo.) excerpts penalty phase jury instructions                    96

    consequence of non-unanimity                    97

**US v. Naeem J. Williams (D. Haw. 2014)**                    **98**

2014 Williams, Naeem (D. Haw.) excerpts final sentencing trial instruction                    99

    consequence of non-unanimity                    100

Exhibit 73 - 8

2014 Williams, Naeem (D. Haw.) excerpts sentencing verdict form 101

    consequence of non-unanimity 102

    non-unanimity 103

    consequence of non-unanimity 106

**US v. John McCluskey (D.N.M. 2103)** **107**

    2013 McCluskey (D.N.M.) excerpts final sentencing trial instruction 108

        consequence of non-unanimity 109

        non-unanimity 111

    2013 McCluskey (D.N.M.) excerpts sentencing verdict form 112

        consequence of non-unanimity 113

        consequence of non-unanimity 115

**US v. Ahmed M. Salad, et al. (E.D. Va. 2013)** **116**

    2013 Salad (E.D. Va.) excerpts sentencing instructions

        consequence of non-unanimity 117

        non-unanimity 118

        consequence of non-unanimity (gov proposed instruction) 121

        consequence of non-unanimity (gov proposed instruction) 123

**US v. Xavier Jimenez-Bencevi (D.P.R. 2013)** **124**

    2013 Jimenez-Bencevi (D.P.R.) excerpts preliminary sentencing trial instruction 125

        consequence of non-unanimity 126

**US v. LaShaun Casey (D.P.R. 2013)** **127**

    2013 Casey (D.P.R.) excerpts sentencing verdict form 128

        consequence of non-unanimity 129

**US v. Alexis Candelario-Santana (D.P.R. 2013)** **131**

    2013 Candelario (D.P.R.) excerpts final sentencing trial instruction 132

        consequence of non-unanimity 133

        consequence of non-unanimity 135

    2013 Candelario (D.P.R.) excerpts sentencing verdict form 136

        consequence of non-unanimity 137

**US v. Kaboni Savage, et al. (E.D. Pa. 2013)** **153**

    2013 Savage (E.D. Pa.) excerpts final sentencing trial instruction 154

        non-unanimity 155

        consequence of non-unanimity 156

        consequence of non-unanimity 157

    2013 Savage (E.D. Pa.) excerpts sentencing verdict form 158

Exhibit 73 - 9

| | |
|---|---|
| consequence of non-unanimity | 159 |
| **US v. Edison Burgos-Montes (D.P.R 2012)** | **172** |
| 2012 Burgos-Montes (D.P.R) excerpts sentencing verdict form | 173 |
| consequence of non-unanimity | 174 |
| consequence of non-unanimity | 175 |
| **US v. Brian Richardson (N.D. Ga. 2012)** | **178** |
| 2012 Richardson (N.D. Ga.) excerpts final sentencing trial instrucion | 180 |
| consequence of non-unanimity | 182 |
| 2012 Richardson (N.D. Ga.) excerpts sentencing verdict form | 186 |
| consequence of non-unanimity | 190 |
| **US v. Larry Lujan (D.N.M. 2011)** | **191** |
| 2011 Lujan (D.N.M.) excerpts final sentencing trial instruction | 192 |
| consequence of non-unanimity | 193 |
| 2011 Lujan (D.N.M.) excerpts sentencing verdict form | 195 |
| consequence of non-unanimity | 196 |
| consequence of non-unanimity | 197 |
| consequence of non-unanimity | 199 |
| **US v. Azibo Aquart (D. Conn. 2011)** | **200** |
| 2011 Aquart (D. Conn.) excerpts final sentencing trial instruction | 201 |
| consequence of non-unanimity | 202 |
| 2011 Aquart (D. Conn.) excerpts sentencing verdict form | 208 |
| non-unanimity | 209 |
| **US v. Timothy O'Reilly (E.D. Mich. 2010)** | **211** |
| 2010 O'Reilly (E.D. Mich.) excerpts final sentencing trial instruction | 212 |
| consequence of non-unanimity | 213 |
| 2010 O'Reilly (E.D. Mich.) excerpts sentencing verdict form | 214 |
| non-unanimity | 219 |
| **US v. George Lecco (S.D. W.Va. 2010)** | **220** |
| 2010 Lecco (S.D. W.Va.) excerpts final sentencing trial instruction | 221 |
| consequence of non-unanimity | 222 |
| 2010 Lecco (S.D. W.Va.) excerpts sentencing verdict form | 223 |
| non-unanimity | 225 |
| **US v. Anh The Duong (N.D. Cal. 2010)** | **228** |
| 2010 Duong (N.D. Cal.) excerpts final sentencing trial instruction | 229 |
| non-unanimity | 230 |
| 2010 Duong (N.D. Cal.) excerpts sentencing verdict form | 232 |

Exhibit 73 - 10

consequence of non-unanimity                                                        233
**US v. Antonio Argueta (D. Md. 2010)**                                             **235**
2010 Argueta (D. Md.) excepts final sentencing phase instructions      236
consequence of non-unanimity                                                        238
**US v. Maurice Phillips (E.D. Pa. 2010)**                                          **239**
2010 Phillips (ED PA) excerpts final sentencing trial instruction         240
non-unanimity                                                                            241
non-unanimity                                                                            242
consequence of non-unanimity                                                        244

Exhibit 73 - 11

*United States v. Robert Bowers*
No. 2:18-cr-00292-RJC (W.D. Pa.)
Judge Presiding: The Hon. Robert J. Colville
(Voir dire began April 24, 2023.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS                    Page 1
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 12

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

vs.                          Criminal No. 18-292

ROBERT BOWERS

Transcript of Jury Trial held on Monday, July 31, 2023, in the United States District Court, 700 Grant Street, Pittsburgh, Pennsylvania 15219, before Honorable Robert J. Colville, United States District Judge.

APPEARANCES:

| | |
|---|---|
| For the Government: | U.S. Attorney's Office |
| | Soo C. Song, Esquire |
| | Troy Rivetti, Esquire |
| | Eric G. Olshan, Esquire |
| | Nicole A. Vasquez Schmitt, Esquire |
| | Mary J. Hahn, Esquire |
| For the Defendant: | Federal Public Defender |
| | Elisa A. Long, Esquire |
| | Michael J. Novara, Esquire |
| | Ashwin Cattamanchi, Esquire |
| | and |
| | Clarke, Johnston, Thorp & Rice, PC |
| | Judy Clarke, Esquire |
| | and |
| | Law Office of Michael Burt |
| | Michael N. Burt, Esquire |
| Court Reporter: | Noreen A. Re, RMR, CRR |

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

VOLUME 35

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 2

Exhibit 73 - 13

54

decision before you separately as to each count and, of course, with an open mind. I cannot stress to you enough the importance of your giving careful and thorough consideration to all the evidence.

And regardless of any opinion you may have as to what the law may or should be, it would be a violation of your oaths as jurors to base your sentencing decision upon any view of the law other than that which is given to you in these instructions.

As we begin this process, I remind you that a juror is never required to vote for a sentence of death. And I'll explain this in more detail later in these instructions. The law provides you with guidance in making your sentencing decision, but your decision on this question of life imprisonment without the possibility of release or death is a uniquely individual moral judgment that the law in the final analysis leaves up to each of you.

Further, a sentence of death is only imposed if all 12 jurors unanimously agree that death is the appropriate sentence. On the other hand, if one or more jurors find that a sentence of life imprisonment without the possibility of release is the more appropriate sentence for Mr. Bowers, the Court will impose a sentence of life imprisonment without possibility of release. You should understand, though, that if the jury unanimously votes to impose the death penalty as

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 3

Exhibit 73 - 14

55

to any count, the death sentence will be imposed, regardless of a life sentence you might vote to impose as to any other count or counts.

There is no parole in the federal system. Life without possibility of release means just that. If you determine that Mr. Bowers should be sentenced to death or sentenced to life imprisonment without possibility of release, the Court is required to impose that sentence.

Members of the jury, you have seen and heard all the evidence and the arguments of the lawyers. Once again, I have gotten this backwards. You will soon hear -- you have seen all the evidence. You will soon hear all the arguments of the lawyers. I am now instructing you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence that you have heard and seen in court during this trial. That is your job and your job alone. I play no part in finding the facts. You should not take anything I may have said or done during the trial as indicating what I think of the evidence or what I think that your verdict should be.

Your second duty is to apply the law that I give you to the facts. My role now is to explain to you the legal principles that must guide you in your decisions. You must apply my instructions carefully. Each of the instructions is important and you must apply all of them. You must not

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 4

Exhibit 73 - 15

94

mitigating factors such that the death penalty should be imposed.

Again, each juror is to individually decide what weight or value is to be given to any particular aggravating or mitigating factor in the decisionmaking process. Bear in mind, of course, that in order to find that a sentence of death is appropriate for a particular count, the jurors must be unanimous in their conclusion that the aggravating factors proven as to that count sufficiently outweigh any mitigating factors found or, in the absence of any mitigating factors, that the aggravating factors alone are sufficient to justify a sentence of death.

If, after weighing the aggravating and mitigating factors, you unanimously determine that a sentence of death shall be imposed, then the Court is required to sentence Mr. Bowers to death.  Otherwise, whether the jury is unanimous for life or not unanimous, the sentence will be life in prison without the possibility of release.

If the jury determines a sentence of death shall be imposed for any one or more of the capital counts, even if the juror returns a sentence of life imprisonment for one or more other capital counts, the Court will impose a sentence of death upon Mr. Bowers.

The process by which you must reach your decision requires that you make and record certain findings in a

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 5

Exhibit 73 - 16

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ROBERT BOWERS

Criminal No. 18-292

## SENTENCE SELECTION PHASE VERDICT FORM

**Section I:  Counts to Consider** ...................................................................................................2

**Section II:  Non-Statutory Aggravating Factors**............................................................................ 4

**Section III:  Mitigating Factors** .................................................................................................... 7

**Section IV:  Determination of Sentence**........................................................................................ 23

**Section V:  Justice Without Discrimination** .................................................................................. 26

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 6

Exhibit 73 - 17

Section IV.C: Mixed determination of sentences: After considering whether the aggravating factors found to exist as to each count sufficiently outweigh the mitigating factor or factors found to exist for that count to justify a death sentence or, in the absence of any mitigating factors, whether the aggravating factors alone are sufficient to justify a death sentence:

a. _____ We, the jury, unanimously find that death is the appropriate sentence for Robert Bowers with regard to each of the following capital counts only (identify each count by number):

_____

_____

b. _____ We, the jury, unanimously find that life in prison without the possibility of release is the appropriate sentence for Robert Bowers with regard to each of the following capital counts only (identify each count by number):

_____

_____

_____ **Failure to Reach Unanimous Decision.** We, the jury, are unable to reach a unanimous decision on any capital count regarding whether life imprisonment without the possibility of release or death is the appropriate sentence in this case.

Directions: After you have completed your sentence determination in this section (regardless of what determination was made), continue on to Section V.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 7

Exhibit 73 - 18

*United States v. Sayfullo Habibullaevic Saipov*
No. 1:17-CR-00722-VSB (S.D.N.Y.)
Judge Presiding: The Hon. Vernon S. Broderick
(Voir dire began on October 11, 2022.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 8

Exhibit 73 - 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>SAYFULLO HABIBULLAEVIC SAIPOV,<br><br>Defendant. | S1-17-CR-722 (VSB) |

## JUROR QUESTIONNAIRE

**JUROR NUMBER:** _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 9

Exhibit 73 - 20

90.    Under the law, if the jury is unanimous for a death sentence, that sentence will be imposed. If the jurors are not unanimous about the appropriate punishment, then a sentence of life imprisonment without the possibility of release is imposed. In other words, if one juror votes to impose a sentence of life imprisonment without the possibility of release that sentence will be imposed. Whether you agree or disagree with this principle, if you are chosen as a juror you must apply this principle. Would you have difficulty applying this principle?

☐ Yes        ☐ No

Please explain: _____

_____

91.    If you are chosen as a juror in this case, the judge will instruct you that possible punishments are not to be considered during the guilt/innocence phase of trial, at which the jury must determine if the defendant is guilty or not guilty of the offenses charged in the indictment. Will you be able to follow this instruction and, at the guilt/innocence phase of trial, consider whether the defendant is guilty or not guilty of the offenses charged in the indictment without consideration of the possible punishments?

☐ Yes        ☐ No

IF NO, please explain:

_____

_____

_____

Exhibit 73 - 21

## SECTION 10:  QUESTIONS CONCERNING PUNISHMENT

### INTRODUCTION

In a case where jurors may have to decide between lifetime incarceration or death as possible punishments, it is important that we know your opinions and feelings regarding punishment.

If there is a punishment phase of the trial, it will be the jurors' responsibility to determine whether Sayfullo Saipov will be sentenced to life imprisonment without the possibility of release or sentenced to the death penalty. In the federal system there is no parole; therefore, if Defendant Saipov is sentenced to life imprisonment he will spend the rest of his life in prison and never be released.

The decision whether to impose a sentence of life imprisonment without the possibility of release or death is one the law leaves entirely up to the jurors. Each juror must ultimately make a unique individual judgment about whether to sentence a defendant to life imprisonment without the possibility of release or to death.

If, and only if, all twelve jurors unanimously find that death is the only appropriate sentence for Sayfullo Saipov, will a death sentence be imposed. On the other hand, if one or more jurors find that a sentence of life imprisonment without the possibility of release is the appropriate sentence for Defendant Saipov, the judge will impose a sentence of life imprisonment without the possibility of release.

During a punishment phase, jurors consider certain evidence referred to in the law as "aggravating factors," and "mitigating circumstances." Aggravating factors are factors that could support a sentence of death. In order for an aggravating factor to be considered, all twelve jurors must agree that the factor has been proved by the government beyond a reasonable doubt. Jurors may not consider anything else as an aggravating factor.

Mitigating factors pertain to the circumstances of the offense, or the personal traits, character, or background of the Defendant, or anything else relevant to the sentencing decision that would suggest, for any individual juror, that life imprisonment without the possibility of release rather than death is the appropriate punishment. Mitigating circumstances do not excuse or justify the crime and the law does not require that there be a connection between the mitigating circumstances and the crime committed.

The sentence imposed by the jury, whether a unanimous vote for life, a non-unanimous vote for life or a unanimous vote for death, is final. The judge must follow the jury's sentencing determination.

This is only an overview of the law about jurors' consideration of life imprisonment without the possibility of release and the death penalty. If this case requires a punishment phase, the judge will instruct jurors in greater detail about their duties.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 11

Exhibit 73 - 22

By asking these questions about punishment, the Court is not suggesting in any way that the defendant is guilty, or that you will in fact be called upon to decide a penalty in this case. The Court must know, however, whether you could be fair to both the prosecution and the defense on the issue of punishment if you reach that issue.

With the above overview in mind, please answer the following questions completely and honestly, always remembering that there are no right or wrong answers.

## SENTENCING QUESTIONS

113.   In general, what are your views on the death penalty?

_____

_____

_____

_____

_____

_____

_____

114.   Please CIRCLE below the number from 1 - 10 that best reflects your overall opinion regarding the death penalty, with "1" being strongly opposed and "10" being strongly in favor:

Strongly Opposed                                          Strongly in favor

    1    2    3    4    5    6    7    8    9    10

115.   Which of the following best describes your view (please check only one):

☐ If a person is convicted of a crime for which the death penalty is authorized, I will always vote to impose it, regardless of the facts and law in the case, and could not vote for a life sentence under those circumstances.

☐ I am strongly in favor of the death penalty and would have a difficult time voting against it if a person is convicted of a capital crime, regardless of the facts and law in the case.

☐ I generally favor the death penalty, but I would base a decision to impose it on the facts and the law in the case.

☐ I do not have strong opinions either for or against the death penalty, and I would consider both alternatives and base a decision to impose it on the facts and law in the case.

☐ I am generally opposed to the death penalty, but I believe I can put aside my feelings against the death penalty and impose it if is called for by the facts and the law in the case.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 12

Exhibit 73 - 23

1

MABNSAIVD1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

                    v.                          17 Cr. 722 (VSB)

SAYFULLO HABIBULLAEVIC SAIPOV,

                    Defendant.
                                                Voir Dire

------------------------------x

                                                New York, N.Y.
                                                October 11, 2022
                                                10:50 a.m.

Before:

                    HON. VERNON S. BRODERICK,

                                                District Judge

                            APPEARANCES

DAMIAN WILLIAMS
        United States Attorney for the
        Southern District of New York
BY:     AMANDA L. HOULE
        JASON A. RICHMAN
        ALEXANDER N. LI
        ANDREW S. DEMBER
        Assistant United States Attorneys

DAVID E. PATTON
        Federal Defenders of New York, Inc.
        Attorney for Defendant
BY:     DAVID E. PATTON
        SYLVIE J. LEVINE
        ANDREW J. DALACK
        ANNALISA MIRON
        -and-
ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
BY:     DAVID M. STERN
        -and-
RUHNKE & BARRETT
BY:     DAVID A. RUHNKE

Exhibit 73 - 24

31

MABNSAIVD3                    Voir Dire

jurors agree unanimously, at the conclusion of the penalty phase if all 12 jurors unanimously find that life imprisonment without the possibility of release is appropriate, then a sentence of life imprisonment without the possibility of release will be imposed.

If, and only if, all 12 jurors unanimously find that death is the only appropriate sentence will a death sentence be imposed.  If one or more jurors find that a sentence of life imprisonment without the possibility of release is the appropriate sentence, then the jury is not unanimous in its decision regarding punishment.  Then the Court will impose a sentence of life imprisonment without the possibility of release.

The sentence imposed by the jury, whether a unanimous vote for life imprisonment, a unanimous vote for death, a nonunanimous vote for life is final.  I must follow the jury's sentencing determination.

This is only an overview of the law to provide you some context to answer our questions today.  At trial, I will instruct jurors in greater detail about their duties.  I want to thank you again for taking part in this important process and for returning to the courthouse today.

This completes my preliminary remarks, ladies and gentlemen.  I will now ask my deputy clerk Leyni Rodriguez to readminister the oath that will be govern your participation in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 73 - 25

84

MABNSAIVD5                        Voir Dire

JUROR:  Not if it's proven that he did what he did.

THE COURT:  Now, in connection with Question 129, "Guided by the Court's instructions and the evidence presented, each juror ultimately makes the life or death sentencing decision for themselves based on the juror's own unique individual moral judgment.  If you serve as a juror in this case, will you respect the right of each juror to arrive at an individual decision even if you disagree with any of that juror's sentencing decision?"

And you responded, "Yes."

Now, as a follow-up, do you think this principle is important?

JUROR:  Yes.

THE COURT:  And why do you think it's important?

JUROR:  Because we all have a voice and we all have the -- or deserve the opportunity to share our voice and why we feel the way we feel.  And there should be no blocking or discouraging of that.

THE COURT:  Okay.  Now, in Question 90 it asks, "Under the law, if the jury is unanimous for a death sentence, the sentence will be imposed.  If jurors are not unanimous about the appropriate punishment, then a sentence of life imprisonment without the possibility of release is imposed.  In other words, if one juror votes to impose a sentence of life imprisonment without the possibility of release that sentence

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 15

Exhibit 73 - 26

MABNSAIVD5                    Voir Dire

will be imposed.  Whether you agree or disagree with this principle, if you are chosen as a juror you must apply this principle.  Would you have difficulty applying this principle?"

And you responded, "No."

Each juror is ultimately called upon to make the life or death sentencing decision for him or herself based on the juror's own unique individual moral judgment.  At the end of the day you may by your individual vote be responsible for deciding whether Mr. Saipov lives or dies.  Can you share with us how having this responsibility makes you feel.

JUROR:  I can't say it makes me feel good or bad either way.  Again, if it's proven without -- it's proven beyond a shadow of a doubt that he did it.

THE COURT:  Now, just another question.  You may hear from Mr. Saipov's family, who are practicing Muslims, some of whom live here and some of whom will come from Uzbekistan.  They include women in Mr. Saipov's family who will appear in traditional covered dress.  How do you feel about that?

JUROR:  No, no difference.  Indifference.

THE COURT:  That doesn't impact you one way or the other?

JUROR:  No.

THE COURT:  Do you think it would create any conscious or unconscious bias as you think about punishment?

JUROR:  No.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 16

Exhibit 73 - 27

3542

N388SAI1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
UNITED STATES OF AMERICA,

                    v.                          17 Cr. 722 (VSB)

SAYFULLO HABIBULLAEVIC SAIPOV,

                    Defendant.
                                                Trial
-------------------------------x
                                                New York, N.Y.
                                                March 8, 2023
                                                10:50 a.m.

Before:

                    HON. VERNON S. BRODERICK,

                                                District Judge
                                                -and a Jury-

                            APPEARANCES

DAMIAN WILLIAMS
        United States Attorney for the
        Southern District of New York
BY:     AMANDA L. HOULE
        JASON A. RICHMAN
        ALEXANDER N. LI
        ANDREW S. DEMBER
        Assistant United States Attorneys

DAVID E. PATTON
        Federal Defenders of New York, Inc.
        Attorney for Defendant
BY:     DAVID E. PATTON
        SYLVIE J. LEVINE
        ANDREW J. DALACK
        ANNALISA MIRON
        -and-
ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
BY:     DAVID M. STERN
        -and-
RUHNKE & BARRETT
BY:     DAVID A. RUHNKE

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 17

Exhibit 73 - 28

3609

N38MSAI4                    Charge

question, the law relies on each of you to determine what is sufficient outweighing to make the death penalty rather than life imprisonment without the possibility of release the more appropriate sentence.

Each juror is individually to decide what weight or value, if any, is to be given to a particular aggravating or mitigating factor in the decision-making process. Bear in mind, however, that in order to find that a sentence of death is justified for a particular count, the jurors must be unanimous in their conclusion that the aggravating factor or factors proven as to that count sufficiently outweigh any mitigating factors found to justify a sentence of death.

Determination of sentence.

Each juror is entitled to his or her opinion. Each should, however, exchange views with his or her fellow jurors. That is the very purpose of jury deliberation, to discuss and consider the evidence, to listen to arguments of fellow jurors, to present your individual views, to consult with one another, and to reach an agreement based solely and wholly on the evidence. But each juror must ultimately make the sentencing decision for themselves based on the juror's unique individual moral judgment. Thus, each juror must respect the right of every or juror to arrive at an individual decision. This means that each juror must treat every other juror with respect and dignity and not intimidate, coerce, or bully any other juror

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 18

Exhibit 73 - 29

3610

N38MSAI4                    Charge

about a vote one way or another about any factor or the ultimate punishment decision, if they disagree.

If you unanimously determine that that all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or in the absence a mitigating factor, that the aggravating factor or factors alone are sufficient to justify a sentence of death, please mark the appropriate box provided in Section VI of the special verdict form for the count you are considering.  If you unanimously find that Mr. Saipov should be sentenced to life imprisonment without the possibility of release, please mark the appropriate box provided in Section VI of the special verdict form for the count you are considering.

As I have told you, you should unanimously decide -- as I told you, should you unanimously decide to impose the death or to impose life imprisonment without the possibility of release, I am required by law to abide by your decision and to sentence Mr. Saipov accordingly.  In the event that you do not unanimously decide to sentence Mr. Saipov to death or unanimously decide to sentence Mr. Saipov to life imprisonment without the possibility of release for a particular count, the Court will sentence Mr. Saipov to life imprisonment without the possibility of release.

If you have concluded that you are unable to reach a

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 19

Exhibit 73 - 30

JUDGE BRODERICK,

WE HAVE CONCLUDED WE ARE UNABLE TO REACH A UNANIMOUS DECISION.

Juror #1

Court Exhibit # 14

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 20

Exhibit 73 - 31

*United States v. Brandon Council*
No. 4:17-cr-00866-RBH (D.S.C.)
Judge Presiding: The Hon. R. Bryan Harwell
(Voir Dire began on September 9, 2019.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 21

Exhibit 73 - 32

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal No.: 4:17-cr-00866-RBH |
| | ) | |
| v. | ) | **JURY INSTRUCTIONS** |
| | ) | **PENALTY PHASE - OPENING INSTRUCTIONS** |
| Brandon Michael Council, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Members of the jury, this morning we begin the second phase of this trial, the penalty phase. As I told you at the beginning of the first phase of the trial, the purpose of this hearing is to determine whether the defendant should be sentenced to life imprisonment without the possibility of release or sentenced to death for his commission of certain crimes charged by the government.

Now that you have been sworn as the jury to try the penalty phase of this case, I want to give you some preliminary instructions. What I will say is intended to serve as an introduction to the sentencing proceeding that you will be participating in. I want to describe how the sentencing proceeding will be conducted and to explain the roles of the major participants in this case. At the end of this phase, I will give you more detailed guidance on how you are to go about reaching your decision.

You have unanimously found the defendant guilty of both counts in the indictment, which are capital offenses. There are two forms of punishment possible under the law for these offenses. Number one, life imprisonment without the possibility of release, which means just what those words imply. The defendant would serve the rest of his natural life in prison with no possibility of being released under any circumstances. Or, number two, the death penalty, which

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 22

Exhibit 73 - 33

present which, in that juror's mind, is not outweighed by the aggravating factors proven, then, of course, your verdict could not be unanimous because of that juror's position. Separate considerations must be given to aggravating and mitigating factors in each count.

If, after weighing the aggravating and mitigating factors, you unanimously recommend a sentence of life imprisonment without the possibility of release, the court is required to sentence the defendant to life in prison without the possibility of release. If, on the other hand, after weighing the aggravating and mitigating factors, you unanimously recommend that a sentence of death be imposed, then the court is required to sentence the defendant to death. If you cannot unanimously agree that the defendant should be sentenced to death, I will sentence the defendant to life in prison without the possibility of release.

This concludes my preliminary instructions as to the procedure to be followed for the penalty phase of this case.

15

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 23

Exhibit 73 - 34

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal No.: 4:17-cr-00866-RBH |
| | ) | |
| v. | ) | **JURY INSTRUCTIONS** |
| | ) | **PENALTY PHASE - CLOSING INSTRUCTIONS** |
| Brandon Michael Council, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Now that you have heard all of the evidence in the case and the arguments of the attorneys, it is my duty to instruct you on the rules of law that you must follow in arriving at your decision as to whether the defendant, Brandon Michael Council, should be sentenced to life in prison without the possibility of release, or sentenced to death. Your unanimous finding of guilt in the previous guilt phase of this trial ensures that he will be punished with one of the two most severe punishments available under law.

As you know, the defendant has been found guilty of both counts of the indictment, which are capital offenses. You will have to decide the appropriate punishment and return individual verdicts for each of the two death-penalty-eligible counts. The instructions that I give you today apply equally to both counts that you must decide. I remind you that, at the time you were selected as jurors, each of you assured me that you would follow the law as I told you it applied. It is imperative that you do that.

Regardless of any opinion you may have as to what the law is, or should be, it would be a violation of your oaths, as jurors, to base your verdict upon any other view of the law than what I give you in these instructions. You and you alone will decide whether the defendant should be sentenced to life in prison without possibility of release or sentenced to death. The law does not

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 24

Exhibit 73 - 35

determination in Section VI.

If you cannot unanimously agree on either a death sentence or a life sentence, you should indicate that on Section VI on the special verdict form and I will impose a sentence of life imprisonment without possibility of release upon the defendant. That will conclude the case.

## DUTY TO DELIBERATE

Remember, at all times, you are not partisans. Your sole interest is to speak the truth from the evidence in the case and reach an appropriate judgment within the legal framework as I have described it for you. When you are in the jury room, please discuss all aspects of these sentencing issues among yourselves with candor, frankness, and a due regard for the opinions of one another. It is your duty, as jurors, to discuss the case with one another in an effort to reach an agreement, if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember that the parties and the court are relying upon you to give full, careful, and mature consideration to this sentencing issue. By so doing, you carry out, to the fullest, your oaths as jurors to try the issues of this case well and truly and to render a just result. Be truthful to the oath that you have taken by taking time to understand the instructions I have given to you and thoroughly and thoughtfully discuss the evidence you have heard to be sure that the decision you make is yours and yours alone. Your verdict should be one which you feel justice dictates after calm and deliberate consideration of all the evidence.

28

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 25

Exhibit 73 - 36

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal No.: 4:17-cr-00866-RBH |
| | ) | |
| v. | ) | **SPECIAL VERDICT FORM** |
| | ) | |
| Brandon Michael Council, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### COUNT 1 – BANK ROBBERY RESULTING IN DEATH

I.    AGE OF DEFENDANT

Do you unanimously find that the government has established beyond a reasonable doubt that Brandon Michael Council was eighteen (18) years of age or older at the time of the offense? *(Mark your response with an "X" below)*

___X___ YES            _____ NO

*Instructions*:    *If you answered "YES" to the question above, proceed below to Section II.*

*If you answered "NO" to the question above, stop your deliberations, skip over Sections II, III, IV, V, and VI of this form, and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which each juror reached his or her decision. You should then advise the court that you have reached a decision*

Page 1 of 14

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Exhibit 73 - 37

2.    **SENTENCE OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF RELEASE**

A.    **Unanimous Decision for Life Imprisonment**

We, the jury, unanimously conclude that a sentence of life imprisonment without the possibility of release shall be imposed as to Count One.

_____

FOREPERSON(Signature & Juror Number)

Date:_____

B.    **Unable to Reach Any Unanimous Decision**

We, the jury, are unable to come to a unanimous decision in favor of a life sentence without the possibility of release or in favor of a death sentence as to Count One. We understand that the Court will impose a sentence of life imprisonment without the possibility of release as to Count One.

_____

FOREPERSON(Signature & Juror Number)

Date:_____

Page 13 of 14

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 27

Exhibit 73 - 38

2.    **SENTENCE OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF RELEASE**

A.    **Unanimous Decision for Life Imprisonment**

We, the jury, unanimously conclude that a sentence of life imprisonment without the possibility of release shall be imposed as to Count Two.

                                             FOREPERSON(Signature & Juror Number)

                                             Date:_____

B.    **Unable to Reach Any Unanimous Decision**

We, the jury, are unable to come to a unanimous decision in favor of a life sentence without the possibility of release or in favor of a death sentence as to Count Two. We understand that the Court will impose a sentence of life imprisonment without the possibility of release as to Count Two.

                                             FOREPERSON(Signature & Juror Number)

                                             Date:_____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Exhibit 73 - 39

*United States v. Brendt Christensen*
No. 2:17-cr-20037-JES (C.D. Ill.)
Judge Presiding: The Hon. James E. Shadid
(Voir Dire began on June 3, 2019.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 29

Exhibit 73 - 40

E-FILED
Thursday, 18 July, 2019  04:24:07 PM
Clerk, U.S. District Court, ILCD

FILED

## SPECIAL VERDICT FORM

JUL 18 2019

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

I have prepared a form entitled "Special Verdict Form" to assist you during your

deliberations. You are required to record your decisions on the Special Verdict Form. Section I of

the Special Verdict Form is where you will record your findings on the defendant's Age. Section

II is where you will record your findings on the Threshold Intent Factors. Section III is where

you will record your findings on Statutory Aggravating Factors. Section IV is where you will

record your findings on Non-Statutory Aggravating Factors. Section V is where you will record

your findings on Mitigating Factors. Section VI is where you will record your sentence

determinations. Finally, Section VII contains the non-discrimination certification each juror must

read and sign. You are each required to sign the Special Verdict Form.

Once you have finished your deliberations and filled in, signed, and dated the Special

Verdict Form, you will advise the Court that you have reached a verdict.

1

Exhibit 73 - 41

2:17-cr-20037-JES-JEH    # 481    Page 19 of 21

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions*: Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is unanimous. Based upon that consideration, check one of the following:

_____ **We, the jury, unanimously find that the aggravating factor or factors found to exist sufficiently outweigh the mitigating factor or factors found to exist or, in the absence of any mitigating factors, that the aggravating factor or factors alone are sufficient so that death is the appropriate sentence for Brendt Christensen.**

_____ **We, the jury, unanimously find that a sentence of life in prison without the possibility of release is the appropriate sentence for Brendt Christensen.**

___X___ **Based upon our consideration of the evidence, and in accordance with the court's instructions, after making all reasonable efforts, we, the jury, are unable to reach a unanimous decision in favor of a life sentence or in favor of a death sentence.**

After answering the above question, each juror should sign his or her name below and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.

19

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 31

Exhibit 73 - 42

*United States v. Brendt Christensen*, No. 2:17-cr-20037-CSB-EIL (C.D. Ill. 2019) (Doc. 487 at 7)

**Note from the jury on July 18, 2019, at 1:30 p.m.**

E-FILED
Monday, 22 July, 2019 09:01:31 AM
Clerk, U.S. District Court, ILCD

We need help — the jury
would like ~~the~~ to know
what the results are ~~from~~ if
there is no unanimous
decision. Section VI #3
page 19 is not clear,

s/ juror

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 43

**Instruction from the Court on July 18, 2019, at 1:58 p.m.**

I refer you back to page 30 instruction 16 Duty to Deliberate for your review.

Having said that, if after weighing the aggravating and mitigating factors as instructed, you are still unable to unanimously agree as to a sentence of life without possibility of release, or a sentence of death, and you so inform the Court of that, the Court will impose a sentence of life without the possibility of release.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 33

Exhibit 73 - 44

**Note from the jury on July 18, 2019 at 2:08 p.m.**

E-FILED
Monday, 22 July, 2019 09:01:31 AM
Clerk, U.S. District Court, ILCD

7/18 @ 2:08AM

The Jury is ready to present their findings.

s/ foreperson

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 34

Exhibit 73 - 45

*United States v. Ulysses Jones*
No. 6:10-cr-03090-DGK (W.D. Mo.)
Judge Presiding: The Hon. Greg Kays
(Voir dire began September 25, 2017.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 35

Exhibit 73 - 46

**Query      Reports      Utilities      Help      Log Out**

CLOSED

# U.S. District Court
## Western District of Missouri (Springfield)
## CRIMINAL DOCKET FOR CASE #: 6:10-cr-03090-DGK-1

Case title: USA v. Jones

Date Filed: 11/08/2010
Date Terminated: 03/19/2018

Assigned to: District Judge Greg Kays

### Defendant (1)

**Ulysses Jones, Jr**
*TERMINATED: 03/19/2018*

represented by **Shane Paul Cantin**
Carver, Cantin and Mynarich, LLC
901 East St. Louis Street
Suite 1600
Springfield, MO 65806
(417) 831-6363
Fax: (417) 831-7373
Email: shane@carvercantin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Thomas D. Carver**
Carver, Cantin and Mynarich, LLC
901 East St. Louis Street
Suite 1600
Springfield, MO 65806
417-831-6363
Fax: 417-831-7373
Email: tom@carvercantin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

### Pending Counts

MURDER, FIRST DEGREE
(1s)

### Disposition

The defendant was found guilty on counts

Exhibit 73 - 47

| | | Lambrecht, 816-512-5623. (Strodtman, Tracy) (Entered: 10/11/2017) |
|---|---|---|
| 10/11/2017 | 425 | Minute Entry for proceedings held before Chief District Judge Greg Kays: Jury Trial - DAY 12 - Death Penalty Phase as to Ulysses Jones, Jr held on 10/11/2017, Time in court: 8:19 a.m. to 4:22 p.m. To order a transcript of this hearing please contact Reggie Lambrecht, 816-512-5623. (Strodtman, Tracy) (Entered: 10/11/2017) |
| 10/11/2017 | 426 | NOTICE of filing *Defendant's Requested Additional Penalty Phase Instruction* by Ulysses Jones, Jr (Cantin, Shane) (Entered: 10/11/2017) |
| 10/11/2017 | 427 | Counter PROPOSED JURY INSTRUCTIONS to Doc. 426 by USA as to Ulysses Jones, Jr (Peterson, James) Modified on 10/12/2017 creating document link (Siegert, Karen). (Entered: 10/11/2017) |
| 10/11/2017 | 428 | DRAFT PROPOSED PENALTY PHASE JURY INSTRUCTIONS. (Strodtman, Tracy) (Entered: 10/12/2017) |
| 10/12/2017 | 429 | Minute Entry for proceedings held before Chief District Judge Greg Kays: Jury Trial - DAY 13 - Death Penalty Phase as to Ulysses Jones, Jr held on 10/12/2017. Time in court: 8:19 a.m. to 11:56 a.m. To order a transcript of this hearing please contact Reggie Lambrecht, 816-512-5623. (Strodtman, Tracy) (Entered: 10/12/2017) |
| 10/12/2017 | 430 | MOTION in limine *To Prevent or Limit Government Intended Rebuttal Testimony* by Ulysses Jones, Jr. Suggestions in opposition/response due by 10/26/2017 unless otherwise directed by the court. (Cantin, Shane) (Entered: 10/12/2017) |
| 10/13/2017 | 431 | SUGGESTIONS in opposition by USA as to Ulysses Jones, Jr re 430 MOTION in limine *To Prevent or Limit Government Intended Rebuttal Testimony* . Reply suggestions due by 10/27/2017 unless otherwise directed by the court. (Peterson, James) (Entered: 10/13/2017) |
| 10/13/2017 | 432 | ORDER concerning final jury instructions. Signed on October 13, 2017, by Chief District Judge Greg Kays. Any substantive objections to these instructions should be filed in writing by Saturday, October 14, 2017, at 5 p.m. If either party finds any typographical errors, he or it may simply email the Court's law clerk. (Attachments: # 1 Special Verdict Form) (Law clerk) (Entered: 10/13/2017) |
| 10/13/2017 | 433 | Minute Entry for proceedings held before Chief District Judge Greg Kays: Jury Trial - DAY 14 - Death Penalty Phase as to Ulysses Jones, Jr held on 10/13/2017. Time in court: 8:16 a.m. to 6:24 p.m. To order a transcript of this hearing please contact Reggie Lambrecht, 816-512-5623. (Strodtman, Tracy) (Entered: 10/16/2017) |
| 10/16/2017 | 434 | PENALTY PHASE JURY INSTRUCTIONS GIVEN. (Strodtman, Tracy) (Entered: 10/16/2017) |
| 10/16/2017 | 435 | Minute Entry for proceedings held before Chief District Judge Greg Kays: Jury Trial - DAY 15 - Death Penalty Phase as to Ulysses Jones, Jr held on 10/16/2017. Time in court: 8:16 p.m. to 3:16 p.m. To order a transcript of this hearing please contact Reggie Lambrecht, 816-512-5623. (Strodtman, Tracy) (Entered: 10/16/2017) |
| 10/16/2017 | 436 | SPECIAL VERDICT FORMS as to Ulysses Jones Jr (1). (Strodtman, Tracy) (Entered: 10/16/2017) |

EXHIBIT B DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Exhibit 73 - 48

### Instruction No. 37

Concerning Counts One and Two, if you find unanimously and beyond a reasonable doubt that the defendant was eighteen years of age or older when he committed the offense; that he acted with the requisite intent; and that the government proved the existence of at least one statutory aggravating factor; and after you then determine whether or not the government proved the existence of a non-statutory aggravating factor submitted to you, and whether or not the defendant proved the existence of any mitigating factors, you will then engage in a weighing process.  In determining the appropriate sentence, all of you must weigh the aggravating factor that you unanimously found to exist—whether statutory or non-statutory—and each of you must weigh any mitigating factors that you individually found to exist, and may weigh any mitigating factors that another or others of your fellow jurors found to exist.  In engaging in the weighing process, you must avoid any influence of passion, prejudice, or undue sympathy.  Your deliberations should be based upon the evidence you have seen and heard and the law on which I have instructed you.

Again, whether or not the circumstances in this case justify a sentence of death is a decision that the law leaves entirely to you.

The process of weighing aggravating and mitigating factors against each other in order to determine the proper punishment is not a mechanical process.  In other words, you should not simply count the number of aggravating and mitigating factors and reach a decision based upon which number is greater; you should consider the weight and value of each factor.

The law contemplates that different factors may be given different weights or values by different jurors.  Thus, you may find that one mitigating factor outweighs all aggravating factors combined, or that the aggravating factor proved does not, standing alone, justify imposition of a sentence of death.  If one or more of you so find, you must return a sentence of life in prison without possibility of release.  Similarly, you may unanimously find that a particular aggravating factor sufficiently outweighs all mitigating factors combined to justify a sentence of death.  You are to decide

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

434   Filed 10/16/17   Page 15 of 22

Page 38

Exhibit 73 - 49

what weight or value is to be given to a particular aggravating or mitigating factor in your decision-making process.

If you unanimously conclude as to one or both counts that the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors which any of you found to exist to justify a sentence of death, and that therefore death is an appropriate sentence in this case, you must record your determination that a sentence of death shall be imposed in Section VI(A), of the Special Verdict Form for that particular count.

If you determine that death is not justified for one or both counts, you must complete Section VI(A) of the Special Verdict Form and record your determination that the defendant be sentenced to life imprisonment without possibility of release in Section VI(B) on the Special Verdict Form for that particular count.

You are reminded that you are to make a separate determination for each count.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 39

434   Filed 10/16/17   Page 16 of 22

Exhibit 73 - 50

**Instruction No. 38**

At the end of your deliberations, if you unanimously determine that the defendant should be sentenced to death, or to life imprisonment without possibility of release, the court is required to impose that sentence.

If you cannot unanimously agree whether under Counts One and Two the defendant should be sentenced to death or life imprisonment without possibility of release, the court will sentence the defendant to life imprisonment without the possibility of release. There is no parole in the federal system.

Again, you are reminded that you are to make a separate determination for each count.

Exhibit 73 - 51

Exhibit 73 - 52

*United States v. Jessie Con-Ui*
No. 3:13-cr-00123-ARC (M.D. Pa.)
Judge Presiding: The Hon. A. Richard Caputo
(Voir dire began April 24, 2017.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 41

1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :
                                :
        vs                      :        3:13-CR-00123
                                :
                                :
JESSIE CON-UI                   :
                                :

        BEFORE:      THE HONORABLE A. RICHARD CAPUTO

        PLACE:       COURTROOM NO. 1

        PROCEEDINGS: PENALTY TRIAL

        DATE:        THURSDAY, JULY 7, 2017


APPEARANCES:

For the United States:

FRANCIS P. SEMPA, ESQ.
ROBERT J. O'HARA, ESQ.
U.S. ATTORNEY'S OFFICE
235 NORTH WASHINGTON AVENUE
3RD FLOOR
SCRANTON, PA 18503

ROBERT J. FEITEL, ESQ.
UNITED STATES DEPARTMENT OF JUSTICE
1331 F. STREET, NW
WASHINGTON, DC 20530


For the Defendant:

DAVID A. RUHNKE, ESQ.
RUHNKE & BARRETT
47 PARK STREET
MONTCLAIRE, NJ 07042

JAMES A. SWETZ, ESQ.
711 SARAH STREET
STROUDSBURG, PA 18360

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Exhibit 73 - 53

165

with regard to each of the two counts, counts one and two for each -- for which each of you have found at least one gateway factor and at least one statutory aggravating factor.  Each juror must individually decide whether the facts and circumstances in the case as to each count call for the -- for death as the appropriate sentence.

In determining the appropriate sentence, all of you must weigh the aggravating factor or factors that you unanimously found to exist whether they are statutory or non-statutory, and each of you must weigh and mitigating factors or factors you individually found to exist and may weigh any mitigating factors that your fellow jurors found to exist.  In engaging in the weighing process, you must avoid any influence of passion, prejudice or undue sympathy.

Your deliberations should be based upon the evidence that you have seen and heard and the law on which I have instructed you.  Again, whether or not the circumstances of this case justify a sentence of death is a decision that the law leaves entirely to you.  The law never requires the imposition of a sentence of death and never assumes that any defendant found guilty of committing capital murder must be sentenced to death.

In carrying out this weighing and balancing process, the members of the jury are not mere fact finders.  Instead jurors are called upon to make a unique individualized personal

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 43

Exhibit 73 - 54

166

moral judgment about the appropriateness of sentencing another human being to death.  This is not a mechanical process.  Neither is the decision determined by raw numbers.  Members of a death penalty jury do not simply count factors.

Instead individual jurors consider such factors qualitatively assessing the weight and value of each factor.  The law contemplates different factors may be given different weights or values by different jurors.  Thus, any single mitigating factor may outweigh several aggravating factors.  On the other hand, one aggravating factor proved may outweigh several mitigating factors.  In short what is called for in weighing the various factor is not an arithmetic calculation but an individual juror's careful considered and mature judgment as to the weight to be given to the aggravating and mitigating factors present in this case.

It's up to you how much weight you individually assign to each particular mitigating factor.  You can give it a lot of weight, a little weight or something in between.  You may not give an established mitigating factor no weight.  In the event you unanimously find that the balancing process leads you to the conclusion that a death sentence is called for as to the particular capital count you are considering, please mark the appropriate space on the special verdict form.

If after engaging in the balancing process you do not unanimously find the defendant should be sentenced to death,

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 44

Exhibit 73 - 55

167

then you may not impose the death penalty.  In that event, the defendant will be sentenced to life imprisonment without the possibility of release.

Consequences of deliberations.  At the end of your deliberations if you unanimously determine that the defendant should be sentenced to death or life imprisonment without the possibility of release, the Court is required to impose that sentence.  If you cannot unanimously agree on whether the defendant should be sentenced to death, the Court will sentence the defendant to life imprisonment without the possibility of release.

Justice without discrimination.  In your consideration of whether the death sentence is justified, you must not consider the race, color, religious beliefs, national origin or sex of either the defendant or the victim.  You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to race, color, religious beliefs, national origin or sex of either the defendant or the victim.  To emphasize the importance of this consideration, section seven of the special verdict form on each count contains a certification statement.

Each juror should carefully read the statement and sign in the appropriate place if the statement accurately reflects the manner in which each of you reached your decision.

Special verdict.  I have prepared a special form

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 45

Exhibit 73 - 56

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | **CRIMINAL NO. 3:CR-13-123** |
| | * | |
| JESSIE CON-UI, | * | |
| Defendant | * | |

## SPECIAL VERDICT FORM
## PENALTY PHASE

## COUNT I: First Degree Murder

1

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 46

Exhibit 73 - 57

**Special Verdict Form: COUNT I**

## SECTION VI. <u>DETERMINATION OF SENTENCE</u> FOR COUNT I

<u>Instructions</u>: In Section VI, enter your determination of the defendant's sentence with regard to Count I.

Based upon consideration of whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist to justify a sentence of death:

A.    We, the jury, determine, by unanimous vote, that a sentence of death shall be imposed on the defendant, JESSIE CON-UI, for Count I: First Degree Murder.

      YES _____ NO ____✓____

B.    We, the jury, determine, by unanimous vote, that a sentence of life imprisonment without the possibility of release shall be imposed on the defendant, JESSIE CON-UI, for Count I: First Degree Murder.

      YES _____ NO ____✓____

C.    We, the jury, are unable to reach a unanimous verdict. We understand that the consequence of this is that the defendant, JESSIE CON-UI, will be sentenced to life imprisonment without the possibility of release for Count I: First Degree Murder.

      YES ____✓____ NO _____

21

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 47

Exhibit 73 - 58

**Special Verdict Form: COUNT I**

Instructions: After entering your determination of the defendant's sentence with regard to Count I, each juror must sign his or her name below in the spaces provided, indicating that the above sentence determination reflects the jury's decision, whether unanimous or not:

The Foreperson shall indicate the date of signing:

Date: _July 10, 2017_

Instructions: Upon completion of Section VI (regardless of the sentence determination made), proceed to Section VII, which follows.

22

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Exhibit 73 - 59

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | **CRIMINAL NO. 3:CR-13-123** |
| | * | |
| JESSIE CON-UI, | * | |
| Defendant | * | |

## SPECIAL VERDICT FORM
## PENALTY PHASE

## COUNT II: First Degree Murder of a United States Corrections Officer

24

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 49

Exhibit 73 - 60

## Special Verdict Form: COUNT II

Instructions: After entering your determination of the defendant's sentence with regard to Count II, each juror must sign his or her name below in the spaces provided, indicating that the above sentence determination reflects the jury's decision, whether unanimous or not:

FOREPERSON

The Foreperson shall indicate the date of signing:

Date: _July 10, 2017_

Instructions: Upon completion of Section VI (regardless of the sentence determination made), proceed to Section VII, which follows.

46

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 61

Exhibit 73 - 62

*United States v. Dylann Storm Roof*
No. 2:15-cr-00472-RMG (D.S.C.)
Judge Presiding: The Hon. Richard Mark Gergel
(Voir dire began November 28, 2016.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 51

779

IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION


UNITED STATES OF AMERICA,      )          2:15-cr-00472-RMG
                               )
          Plaintiff,           )
                               )
VS                             )
                               )          Charleston,
DYLANN STORM ROOF,             )          South Carolina
                               )          January 10, 2017
          Defendant.           )          Volume V


                    TRANSCRIPT OF JURY TRIAL
          BEFORE THE HONORABLE RICHARD M. GERGEL,
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:        JULIUS NESS RICHARDSON
                          Assistant U.S. Attorney
                          U.S. Attorneys Office
                          1441 Main Street, Suite 500
                          Columbia, South Carolina 29201

                          MARY J. HAHN
                          Assistant U.S. Attorney
                          U.S. Department of Justice
                          601 D Street NW, Room 5200
                          Washington, DC 20003

                          NATHAN STUART WILLIAMS
                          Assistant U.S. Attorney
                          U.S. Attorneys Office
                          P.O. Box 876
                          Charleston, South Carolina


                          RICHARD E. BURNS
                          Assistant U.S. Attorney
                          U.S. Department of Justice
                          1331 F Street NW, Suite 625
                          Washington, DC 20530

PARMCRR OFFICIAL COURT REPORTER

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 52

Exhibit 73 - 63

JURY CHARGE                           865

the weighing process, you must avoid any influence of passion, prejudice, or undue sympathy.  Your deliberations should be based upon the evidence you have seen and heard and the law on which I have instructed you.

You must -- you may not consider as an aggravating factor any matter not asserted by the Government as a statutory or nonstatutory aggravating factor.  Moreover, you may not consider as an aggravating factor any statutory or nonstatutory factor asserted by the Government that was not proven unanimously and beyond a reasonable doubt in sections 3 and 4.

The process of weighing aggravating and mitigating factors against each other in order to determine the proper punishment is not a mechanical process.  In other words, you should not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater.  You should instead consider the weight and value of each factor to make a unique, individualized, and reasoned moral judgment about the appropriateness of the death penalty as a punishment for each capital offense.

The law contemplates that different factors may be given different weights or values by different jurors.  Thus, you may find that one mitigating factor outweighs all the aggravating factors combined or that the aggravating factors proven do not justify imposition of a sentence of death

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)                                                Page 53

OFFICIAL COURT REPORTER

Exhibit 73 - 64

JURY CHARGE                                                     866

rather than a sentence of life imprisonment without release. On the other hand, you may unanimously find a particular aggravating factor sufficiently outweighs all mitigating factors combined to justify a sentence of death rather than a sentence of life imprisonment without release.

Each juror must decide what weight or value should be given to a particular aggravating or mitigating factor in the decision-making process. In other words, it is not an arithmatic analysis, but a qualitative weighing and a reasoned, moral judgment. Whether or not the circumstances in this case justify a sentence of death rather than a sentence of life imprisonment without release is a decision that the law leaves entirely to you.

You will note that at section 6 of the verdict form provides you several options which differ from the format earlier in the verdict form. You are given four options: Number one, a determination of a death sentence on all capital counts.

Two, a determination of life imprisonment without the possibility of release on all capital counts.

Three, a mixed determination in which the death sentence is imposed on some counts and life imprisonment without the possibility of release on other counts.

And, four, a determination that the jury is unable to reach a unanimous verdict.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS                    Page 54
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

_____ CARR   OFFICIAL  COURT  REPORTER

Exhibit 73 - 65

JURY CHARGE                    867

Again, whether or not the circumstances of this case justify a sentence of death rather than a sentence of life imprisonment without release is a decision the law leaves to you the jury.

You do not take anything I have said or done during the guilt phase or this penalty phase as indicating what I think of the evidence or what I think your decision should be.

Let's turn to the third section of our charge, and we are getting towards the end here. Thank goodness for my voice and your ears.

Duty to deliberate and consequences of deliberations: When you retire to the jury room, you should discuss the case with your fellow jurors to reach agreement if you can do so. Any verdict imposing a death sentence must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors. Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict, but, of course, only if each of you can do so having made your own conscientious decision. Do not change an honest belief about

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 55

DEBRA L. POTOCKI, RMR, CRR OFFICIAL COURT REPORTER

Exhibit 73 - 66

JURY CHARGE                              868

the weight and effect of the evidence simply to reach a verdict.  Remember at all times that you are not partisans. You are judges, judges of the facts.

If after due deliberation, you cannot unanimously agree on the appropriate punishment, I will sentence the defendant to life imprisonment without the possibility of release.

Separate consideration of each count.  The indictment in this case charges 18 offenses that carry the death penalty as a possible punishment, Counts 13 through 21, and 25 through 33, and the Government has given notice of its intent to seek the death penalty based on each of those counts.  Each capital count charges a separate crime.  You must consider each count and the evidence relating to it separate and apart from every other count.  That is, you must decide separately what the evidence in the case shows about the defendant and the appropriate sentence to each count. Your verdict on any count should not control your verdict on any other count.

Now, justice without discrimination, section 7 of the verdict form.  Finally, in your sentencing deliberations you must not consider race, color, religious beliefs, national origin, or gender of either the defendant or any victim.  Whatever decision you return, each of you is required by law to sign the certification section 7 there,

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)                              Page 56

RR  OFFICIAL  COURT  REPORTER

Exhibit 73 - 67

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:15-CR-00472-RMG |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| DYLANN STORM ROOF | ) |  |

**SENTENCING PHASE VERDICT FORM**

Section I: Age of Defendant ............................................................ 1

Section II: Gateway Intent Factors ................................................... 4

Section III: Statutory Aggravating Factors ...................................... 7

Section IV: Non-Statutory Aggravating Factors .............................. 10

Section V: Mitigating Factors ........................................................ 14

Section VI: Determination of Sentence .......................................... 17

Section VII: Justice Without Discrimination ................................... 19

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 68

Section VI: Determination of Sentence

## <u>Section VI: Determination of Sentence</u>

General directions for Section VI:

- As used in this section, the term "capital count(s)" refers only to those counts for which you found the defendant was eighteen years of age or older at the time of the offense charged in the count in Section I, and at least one gateway factor in Section II, and at least one statutory aggravating factor in Section III. You may not impose a sentence of death on a particular count unless you have first found with regard to that count, unanimously and beyond a reasonable doubt, that the defendant was eighteen years of age or older at the time of the offense charged in the count in Section I, and at least one gateway intent factor in Section II, and at least one statutory aggravating factor in Section III.

- In this section, enter your determination of the defendant's sentence with regard to each of the capital counts.

  Based upon consideration of whether the aggravating factor or factors found to exist for each count sufficiently outweigh the mitigating factor or factors found to exist for that count to justify a sentence of death:

Section VI.A:  Determination of death sentence for all capital counts:

_✓_  We, the jury, unanimously find for all the capital counts, that the aggravating factor or factors found to exist sufficiently outweigh the mitigating factor or factors found to exist so that death is the appropriate sentence for the defendant.  We vote unanimously that the defendant shall be sentenced to death separately as to each count.

Section VI.B:  Determination of life imprisonment without the possibility of release for all capital counts:

_____  We, the jury, unanimously find that a sentence of life in prison without the possibility of release is the appropriate sentence for the defendant for all of the capital counts.  We vote unanimously that the defendant shall be sentenced to life imprisonment without the possibility of release separately as to each count.

17

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 58

Exhibit 73 - 69

Section VI: Determination of Sentence

Section VI.C:  Mixed determination of sentences:

After considering whether the aggravating factor or factors found to exist as to each count sufficiently outweigh the mitigating factor or factors found to exist for that count to justify a death sentence:

a. _____ We, the jury, unanimously find that death is the appropriate sentence for the defendant with regard to each of the following capital counts only (*identify each count by count number*):

_____

_____

b. _____ We, the jury, unanimously find that life in prison without the possibility of release is the appropriate sentence for the defendant with regard to each of the following capital counts only (*identify each count by count number*):

_____

_____

Section VI.D: Unable to reach any unanimous decision:

_____ After considering whether the aggravating factor or factors found to exist as to each count sufficiently outweigh the mitigating factor or factors found to exist for that count to justify a death sentence, we, the jury, are unable to reach a unanimous verdict in favor of a life sentence or in favor of a death sentence for any of the capital counts.

Directions:

After you have completed your sentence determination in this section (regardless of what determination was made), continue on to Section VII.

18

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 59

Exhibit 73 - 70

*United States v. Gary Lee Sampson*
No. 1:01-cr-10384-LTS (D. Mass.)
Judge Presiding: The Hon. Leo T. Sorokin
(Voir dire began September 14, 2016.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 60

Exhibit 73 - 71

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA    ) | |
| ) | |
| ) | |
| v.                          ) | Criminal Action No. 01-10384-LTS |
| ) | |
| GARY LEE SAMPSON            ) | |

FINAL JURY INSTRUCTIONS

January 4, 2017

Ladies and Gentlemen of the jury, you have heard all of the evidence in this case.  I will now instruct you as to the law you must follow in deciding the sole question before you: whether Gary Sampson should be sentenced to death for either or both of the crimes to which he has pled guilty, or instead sentenced to life imprisonment without the possibility of release.  As I will explain in more detail, first you will decide whether the government has proven beyond a reasonable doubt to each one of you that Mr. Sampson is eligible for the death penalty as to one or both offenses.  Even when a defendant is eligible for the death penalty, though, the law never requires you to impose a sentence of death.  So you will then have to consider whether the government also has proved beyond a reasonable doubt that the death penalty is justified.  Your decisions on these questions will determine whether Mr. Sampson will live or die.  Your decisions will be binding on the Court, and I will sentence Mr. Sampson according to your choices.

My instructions this afternoon will be in three basic parts: first, general rules and concepts that control your duties as jurors and your consideration of the evidence you have heard; second, specific definitions and legal principles related to the decision-making process you must follow in making the sentencing determination required of you in this case; and third,

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 61

Exhibit 73 - 72

Each juror must decide individually whether the facts and circumstances in this case as to an offense call for death as the appropriate sentence. In determining the appropriate sentence for an offense, each of you must independently weigh the statutory and non-statutory aggravating factor or factors that you unanimously found to exist with regard to that offense, each of you must independently weigh any mitigating factors that you individually or with others have found to exist, and any of you may independently weigh any mitigating factors found by other jurors. As I have said, you may consider only those aggravating factors which you unanimously found were proven beyond a reasonable doubt; if eleven of you concluded that a particular aggravating factor was proven, but one of you did not agree, then none of you may consider that factor in your weighing. However, any of you may consider and weigh a mitigating factor that any one juror found was proven, even if few or no other jurors agreed.

You are not to consider in this weighing process any of the levels of intent you considered as to the second gateway eligibility factor and found in answering questions 1(b) and 2(b). In the weighing process, you must avoid any influence of bias, passion, prejudice, or any other arbitrary considerations. Your deliberations must be based on your reasoned evaluation of the evidence as you have seen it and heard it, and on the law which I am explaining to you now. You may consider whether it is appropriate to treat Mr. Sampson with mercy, but any desire to be merciful may not prevent you from considering the other things that the law requires you also to consider.

You have been selected to decide this case because you committed to be fair and impartial in all respects, to give fair consideration to all of the evidence offered by both sides, to be open to the possibility of imposing either of the two available sentences in this case, and to remain open throughout the trial. You made your oath or affirmation to that effect. It is for you

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 62

Exhibit 73 - 73

alone, the fair-minded jurors, to decide the appropriate punishment in this case based on your careful evaluation of the evidence that you have heard and seen in this courtroom.

I want to caution you that you are not to consider any possible financial costs to the government that may be involved in carrying out either the death penalty or life imprisonment without the possibility of release. This is so for two reasons: first, whether one sentence may be more expensive than another is simply not a legally permissible basis upon which to decide a matter as important as this; and second, even if it were permissible to consider cost savings in selecting a sentence, there is no evidence before you as to which sentence, if either, is actually more expensive to carry out. For both of these reasons, it would be improper for you to base any part of your decision on the notion that the government could save money by imposing one sentence rather than another. That is a subject that you should not even discuss in the jury room.

Whether the circumstances in this case call for a sentence of death is a decision that the law leaves entirely to you. All twelve jurors must agree that death is the appropriate sentence in order for it to be imposed as to either offense. No juror is ever required to impose a sentence of death. The decision is yours, as individuals, to make. I know this is a formidable responsibility, and one which you will take very seriously. However, as I told you when this trial began in November, you were carefully selected as jurors to hear this case, and no judge or other group of people is better equipped to make this profound decision than you are.

The process of weighing aggravating and mitigating factors against each other, or weighing the aggravating factors alone if you find no mitigating factors exist, in order to determine the proper punishment is not a mathematical or mechanical process. In other words, you should not simply count the total number of proven aggravating factors and proven mitigating factors and reach a decision based on which number is greater. Rather, you should

47

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 63

Exhibit 73 - 74

consider the weight and significance of each factor. In assigning weights to the factors, you might determine that the significance of certain factors is diminished because they are part of, or related to, another more significant factor. Remember that the existence of a given factor is distinct from its weight. In carefully weighing these factors, you are called upon to make a unique, individual judgment about the sentence Mr. Sampson should receive.

The law contemplates that different factors may be given different weights or values by different jurors. Thus, you may find that one aggravating factor sufficiently outweighs all proven mitigating factors combined so as to justify a sentence of death. Conversely, you may find that a single mitigating factor outweighs all proven aggravating factors combined, or that the proven aggravating factors do not, standing alone, justify the imposition of a sentence of death.

Each juror is to individually decide what weight or value is to be given to any particular aggravating or mitigating factor in the decision-making process. Any one of you is free to decide that a sentence of life imprisonment without the possibility of release should be imposed so long as, based on the evidence and your sense of justice, you conclude that the proven aggravating factors do not sufficiently outweigh the mitigating factors such that the death penalty should be imposed.

Bear in mind that in order to find a sentence of death is appropriate for a particular offense, all of you must be unanimous in concluding that the government has proven beyond a reasonable doubt that the aggravating factor or factors established as to that offense sufficiently outweigh any mitigating factors found or, in the absence of any mitigating factors, that the aggravating factors alone are sufficient to call for a sentence of death. The law does not define what is "sufficient" to justify a death sentence. As to that question, the law relies on each of you to consult your conscience and determine what you believe is sufficient to justify sentencing Mr.

48

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 64

Exhibit 73 - 75

Sampson to death.  What is sufficient for one of you to impose the death penalty might not be sufficient for another.  This is a personal moral choice.

In the event that you unanimously find as to either offense that the aggravating factor or factors found to exist sufficiently outweigh the mitigating factor or factors found to exist or, in the absence of any mitigating factors, that the aggravating factor or factors alone are sufficient to justify a sentence of death, then you will indicate that as to the relevant offense by answering "Yes" in the appropriate space in question 5(a).

In the event that you unanimously find as to either offense that a sentence of life imprisonment without the possibility of release is the appropriate sentence for Mr. Sampson – that is, that the aggravating factor or factors proven as to that offense do not sufficiently outweigh any mitigating factors found, or that the aggravating factors standing alone are insufficient, to justify a sentence of death – then you will indicate that as to the relevant offense by answering "Yes" in the appropriate space in question 5(b).

In the event that you are unable to reach a unanimous verdict as to either offense, then you will indicate that as to the relevant offense in the appropriate space in question 5(c).  If the government fails to prove to any one of you that the death penalty is both an option in this case, and the appropriate penalty for at least one of the offenses, Mr. Sampson will be sentenced to life imprisonment without the possibility of release.  You will not be a "hung jury."  But, before you reach any conclusion based on a lack of unanimity on an offense, you should continue your discussions until you are fully satisfied that no further discussion will lead to a unanimous decision.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 65

Exhibit 73 - 76

When you have finished the weighing process, your decision as to any offense for which you have found Mr. Sampson eligible for death should be reflected in your response to question 5(a), (b), or (c), but, you should respond "yes" to only one of the three subparts of question 5.

After you have completed the weighing process and marked your sentence determination as appropriate in question 5, regardless of what your decision is, you must continue on to question 6 and complete the certificate regarding the determination of sentence.  The signatures of each of you in that section will certify that your response or responses to all preceding questions accurately reflect your sentencing decision.

In your consideration of whether the death sentence is appropriate or not, you must not consider the race, color, religious beliefs, national origin, or sex of either Mr. Sampson or of the victims.  Whatever sentence you return must be imposed without regard to the race, color, religious beliefs, national origin, or sex of either Mr. Sampson or of the victims.  To emphasize the importance of this consideration, question 7 on the verdict form asks each of you to read and sign a certification statement.  When your deliberations have concluded, each juror should carefully read that statement and sign his or her name in the appropriate place if the statement accurately reflects the manner in which each of you reached your individual decision.

III.    Guidelines for Deliberations

That brings us to the end of the verdict form, and almost to the end of these instructions. I'll just conclude with a few brief remarks about the deliberation process.  The importance of your deliberations should be obvious.  I remind you that you can return a decision sentencing Mr. Sampson to death only if all twelve of you are unanimously persuaded both that Mr. Sampson eligible for the death penalty and that the death penalty is, in fact, appropriate.  And, again, I remind you that no jury – and no juror – is ever required by law to impose a sentence of death.

50

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 66

Exhibit 73 - 77

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. )                    Criminal Action No. 01-10384-LTS
)
GARY LEE SAMPSON )
)

## SENTENCING VERDICT FORM

**Definitions: For purposes of all questions on this Verdict Form, "Offense 1 (McCloskey)" is the carjacking resulting in the death of Philip McCloskey, and "Offense 2 (Rizzo)" is the carjacking resulting in the death of Jonathan Rizzo.**

## QUESTION 1: Eligibility – Offense 1 (McCloskey)

(a) Age: Do you unanimously find that the government has proven beyond a reasonable doubt that Gary Sampson was eighteen (18) years of age or older at the time of the offense?

    __✓__ Yes         _____ No

*Proceed to (b) only if you answered "Yes" to (a). Otherwise, proceed to (d).*

(b) Level of Intent:

1) In committing the offense, do you unanimously find that the government has proven beyond a reasonable doubt that Gary Sampson intentionally killed Philip McCloskey?

    __✓__ Yes         _____ No

*Proceed to (b)(2) regardless of your answer to (b)(1)*

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)



Exhibit 73 - 78

**QUESTION 5: Determination of Sentence**

Answer each subpart of this Question <u>only</u> as to the offense or offenses for which you have found Mr. Sampson "Eligible" for the death penalty. In other words, answer this question as to Offense 1 (McCloskey) <u>only</u> if you answered "Eligible" in Question 1(d), and answer this question as to Offense 2 (Rizzo) <u>only</u> if you answered "Eligible" in Question 2(d).

If Mr. Sampson is eligible for the death penalty for Offense 1 (McCloskey), then, in answering this question, each juror <u>must</u> consider all aggravating factors for which the jury answered "Yes" in Question 1(c) and, as to Offense 1 (McCloskey), in Question 3; <u>must</u> consider all mitigating factors for which he or she answered "Yes" as to Offense 1 (McCloskey) in Question 4; and <u>may</u> consider any mitigating factors which any other juror found in Question 4 as to Offense 1 (McCloskey).

If Mr. Sampson is eligible for the death penalty for Offense 2 (Rizzo), then, in answering this question, each juror <u>must</u> consider all aggravating factors for which the jury answered "Yes" in Question 2(c) and, as to Offense 2 (Rizzo), in Question 3; <u>must</u> consider all mitigating factors for which he or she answered "yes" as to Offense 2 (Rizzo) in Question 4; and <u>may</u> consider any mitigating factors which any other juror found in Question 4 as to Offense 2 (Rizzo).

To determine that death is the appropriate sentence for either offense, you must unanimously agree that the government has proven beyond a reasonable doubt that the aggravating factor or factors found to exist sufficiently outweigh any mitigating factors found to exist to justify a sentence of death (or, in the absence of any mitigating factors, that the aggravating factor or factors alone justify a sentence of death).

(a) Have you unanimously determined that a sentence of death shall be imposed?

<u>Offense 1 (McCloskey)</u>          <u>Offense 2 (Rizzo)</u>

_____ Yes    __✓__ No              __✓__ Yes    _____ No

(b) Have you unanimously determined that a sentence of life imprisonment without possibility of release shall be imposed?

<u>Offense 1 (McCloskey)</u>          <u>Offense 2 (Rizzo)</u>

_____ Yes    __✓__ No              _____ Yes    __✓__ No

(c) After due deliberation, have you been unable to come to unanimous agreement on the issue of punishment, understanding that a sentence of life imprisonment without possibility of release will therefore be imposed?

<u>Offense 1 (McCloskey)</u>          <u>Offense 2 (Rizzo)</u>

__✓__ Yes    _____ No              _____ Yes    __✓__ No

---

**Proceed to read and sign the certifications in Questions 6 and 7.**

---

27

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 68

Exhibit 73 - 79

*United States v. Juan Briseno*
No. 2:11-cr-00077 (N.D. Ind.)
Judge Presiding: The Hon. Philip P. Simon
(Voir dire began January 12, 2015.)

Exhibit 73 - 80

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S FINAL INSTRUCTIONS TO THE JURY**
**(FOLLOWING PENALTY-PHASE EVIDENCE)**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 81

## COURT'S INSTRUCTION NO. 11

### Weighing Aggravating and Mitigating Factors

With respect to the capital count you are considering, if you unanimously find that the government proved beyond a reasonable doubt: 1) that the defendant was over 18 years of age at the time of the crime; and 2) the existence of at least one intent factor, and 3) the existence of at least one Statutory Aggravating Factor; and after you then decide whether the Government proved beyond a reasonable doubt the existence of the alleged Non-Statutory Aggravating Factors submitted to you with respect to that count, and whether the defendant proved the existence of any Mitigating Factors by a preponderance of the evidence, you will then engage in a weighing process.

In determining the appropriate sentence for each count, all of you must weigh the Aggravating Factor or Factors that you unanimously found proved beyond a reasonable doubt for that count, and each of you must weigh any Mitigating Factor or Factors that you individually found to exist for that count, and may weigh any Mitigating Factors that another fellow juror found to exist. Whether or not the circumstances of each count in this case make death the appropriate sentence is a decision that the law leaves entirely to you.

Although I have previously instructed you that you will not consider a death sentence for any count unless you first unanimously find the age requirement and at least one threshold intent factor proven beyond a reasonable doubt, I instruct you now that the age requirement and threshold intent factors **shall not** be considered when

26

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 71

Exhibit 73 - 82

weighing the Aggravating and Mitigating Factors. You must weigh only the Statutory and Non-Statutory Aggravating Factors that you unanimously find to exist for a particular count against any Mitigating Factors that any juror individually, or with others, finds to exist for that count.

In engaging in the weighing process, you must avoid any influence of passion, prejudice, or undue sympathy. Your deliberations should be based upon the evidence you have seen and heard and the law on which I have instructed you.

The process of weighing Aggravating and Mitigating Factors against each other in order to determine the proper punishment is not a mechanical process. In other words, you should not simply count the number of Aggravating and Mitigating Factors and reach a decision based on which number is greater. You should instead consider the weight and value of each factor to make a unique, individualized, and reasoned judgment about the sentence this defendant should receive for each capital offense.

The law contemplates that different Factors may be given different weights or values by different jurors. Thus, you may find that one Mitigating Factor outweighs one or more Aggravating Factors. Or you may find, even if you have found no Mitigating Factors, that the Aggravating Factor or Factors proved do not, standing alone, justify imposition of a sentence of death. On the other hand, you may unanimously find that a particular Aggravating Factor sufficiently outweighs all Mitigating Factors combined to make a sentence of death the appropriate sentence. Each juror must decide what weight or value is to be given to a particular Aggravating or Mitigating Factor in the

27

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 72

Exhibit 73 - 83

decision-making process.

Again, whether or not the circumstances in any particular count justify a sentence of death is a decision that the law leaves entirely to you. You are never required to impose a death sentence.

28

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 73

Exhibit 73 - 84

## COURT'S INSTRUCTION NO. 12

### Determination of Sentence (Section VI of Special Verdict Form)

You will be asked the following question for each capital count: "Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO, aka Tito, as punishment" for the murder you are considering? You will answer that question either "Yes" or "No." In answering this question, you must unanimously decide whether the Aggravating Factor or Factors sufficiently outweigh the Mitigating Factor or Factors such that a sentence of death is the most appropriate sentence. If you answer "Yes" the Court will then be required to impose a death sentence for that count.

If you cannot unanimously agree that a sentence of death should be imposed, you should answer the question "No" and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the count you are considering. In the federal system, a sentence of life imprisonment without the possibility of release means just that — the defendant will never be released from prison. There is no parole in the federal system.

It is your duty as jurors to discuss all aspects of these sentencing issues with one another frankly and candidly in an effort to reach agreement, if you can reach agreement. Each of you must decide these questions for yourselves and not go along with the conclusions of your fellow jurors, but only after full consideration of the evidence with the other members of the jury and due respect for one another's opinions.

29

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 74

Exhibit 73 - 85

While you are discussing this matter, do not hesitate to re-examine your own opinion, and to change your mind if you become convinced that you are wrong. But do not give up your honest beliefs as to the weight or the effect of the evidence solely because others think differently or simply to reach a verdict.

30

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 86

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA )
)
vs. ) 2:11-cr-00077
)
JUAN BRISENO )

## COURT'S VERDICT FORM (PENALTY PHASE)

### (Completed Form To Be Filed Under Seal)

### COUNT 9 (Murder of Luis Ortiz aka "Manolo")

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 87

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous.** Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Luis Ortiz?

YES _____     NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Ortiz.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.

_____     _____

_____     _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 77

Exhibit 73 - 88

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

UNITED STATES OF AMERICA     )
                           )
vs.                        )      2:11-cr-00077
                           )
JUAN BRISENO               )

## COURT'S VERDICT FORM (PENALTY PHASE)

### (Completed Form To Be Filed Under Seal)

### COUNT 13 (Murder of Michael Sessum)

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 89

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous**. Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Michael Sessum?

YES _____    NO __✓____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Sessum.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.



VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 90

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

COURT'S VERDICT FORM (PENALTY PHASE)

(Completed Form To Be Filed Under Seal)

COUNT 15 (Murder of Miguel Mejias aka "King Nelly")

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 80

Exhibit 73 - 91

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous**. Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Miguel Mejias?

YES _____    NO ___✓_____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Mejias.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed, proceed to Section VII of this Special Verdict Form.



(August 31, 2023)

Exhibit 73 - 92

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

## COURT'S VERDICT FORM (PENALTY PHASE)

### (Completed Form To Be Filed Under Seal)

### COUNT 19 (Murder of Miguel Colon aka "Migs")

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 93

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous**. Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Miguel Colon?

YES _____    NO \_\_✓\_\_\_\_\_

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Colon.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.



VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 94

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

UNITED STATES OF AMERICA          )
                                  )
            vs.                   )          2:11-cr-00077
                                  )
JUAN BRISENO                      )

## COURT'S VERDICT FORM (PENALTY PHASE)

### (Completed Form To Be Filed Under Seal)

### COUNT 21 (Murder of Latroy Howard)

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 95

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist

sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence

of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves

sufficient to justify a sentence of death, and whether death is therefore the appropriate

sentence in this case. A sentence of death shall only be imposed if your decision in favor

of it is **unanimous.** Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on

the defendant JUAN BRISENO aka Tito as punishment for the murder of Latroy

Howard?

YES _____        NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be

imposed, you should answer the above question "No," and the Court will sentence Mr.

Briseno to a life sentence without the possibility of release for the murder of Mr.

Howard.

After answering the above questions, each juror should sign his or her name

below, and the date should be filled in. Once each juror has signed proceed to Section

VII of this Special Verdict Form.

_____        _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 85

Exhibit 73 - 96

*United States v. Thomas Steven Sanders*
No. 1:10-cr-00351-DDD-JDK (W.D. La.)
Judge Presiding: The Hon Dee D Drell (Chief Judge)
(Voir dire began August 18, 2014.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 86

Exhibit 73 - 97

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 10-000351 |
| -vs- | JUDGE DRELL |
| THOMAS STEVEN SANDERS | MAGISTRATE JUDGE KIRK |

# FINAL JURY INSTRUCTIONS
# PENALTY PHASE

## Members of the Jury:

Now that you have heard all of the evidence in this case, it is my duty to give you instructions regarding the law applicable to the very serious question of whether Thomas Steven Sanders should be sentenced for his conviction on Counts One and Two to death or life imprisonment without the possibility of release.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 87

Exhibit 73 - 98

factors alleged and proved by the Government and cited in these instructions.

Only if you are unanimously persuaded that the aggravating factor(s) found to exist sufficiently outweigh the mitigating factor(s) found to exist may you return a decision in favor of the death penalty.

Each individual juror must decide whether the defendant should be sentenced to death on a particular count. If even one juror finds that the aggravating factor(s) you have unanimously agreed to exist do not sufficiently outweigh one or more mitigating factors which that juror has found to exist, then the jury may not sentence the

53

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 88

Exhibit 73 - 99

defendant to death.  The same is true if no mitigating factor(s) are found and one juror finds that the proven aggravating factor(s) are not themselves sufficient to justify a sentence of death.

I also remind you again that, whatever findings you make with respect to the aggravating and mitigating factors, you are never required to impose a death sentence.  For example, if you do not unanimously determine that the defendant should be sentenced to death, I will sentence the defendant to life in prison without the possibility of release.  Federal law has abolished parole and,

54

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 89

Exhibit 73 - 100

therefore, if the defendant is sentenced to life imprisonment, he will never be released.

As I have said, this determination must be made as to both counts individually.

I remind you that this penalty phase of the trial differs from the guilt phase, where I instructed you to deliberate with the goal of reaching a unanimous decision one way or the other, as to whether the Government had proved the defendant guilty beyond a reasonable doubt of the crimes charged against him in the Superceding Indictment.

In this penalty phase, at the end of your deliberations, all jurors deliberating must

55

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 90

Exhibit 73 - 101

have told you, you must follow the definitions I have given you in reaching your verdict.

I instruct you that unanimity is required for only three purposes in the penalty phase: (1) to find that the defendant was at least eighteen years of age at the time of the offenses; (2) to find at least one Gateway Factor and at least one aggravating factor; and (3) to impose the sentence of death. In this regard, this second phase of the trial differs from the first.

In the first phase, I instructed you to deliberate with the goal of reaching a unanimous decision one way or the other, as to whether the Government had proved the defendant guilty

59

Page 91

Exhibit 73 - 102

beyond a reasonable doubt of the crimes charged against him in the Superceding Indictment. However, in the penalty phase, if you are not unanimous as to the defendant's age, or existence of a Gateway or aggravating factor, you have made a decision and you should not find that factor.

Similarly, if you are not unanimous in favor of imposing a sentence of death, you will have made a decision against imposing a sentence of death and in favor of imposing a sentence of life imprisonment without the possibility of release.

Consistent with the law applicable to the first phase of the trial, the defendant does not have to prove to you that Gateway or aggravating factors

60

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 92

Exhibit 73 - 103



Exhibit 73 - 104

## IX.  Determination

Based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case:

We determine, by unanimous vote, that a sentence of death shall be imposed upon Thomas Steven Sanders for the offense described in Count One of the Superceding Indictment.

_____  NO                    ___✗___  YES

*If you answer "Yes" or "No," the foreperson must sign here, and you must then proceed to Section X on page 22.*

_____
FOREPERSON

Date: _____

**21**

Exhibit 73 - 105

*United States v. Wesley Paul Coonce, et al.*
No. 6:10-cr-03029-GAF (W.D. Mo.)
Judge Presiding: The Hon. Gary A. Fenner
(Voir dire began March 28, 2014.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 95

Exhibit 73 - 106

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-03029-CR-S-GAF |
| | ) | |
| WESLEY PAUL COONCE, JR. | ) | |
| and CHARLES MICHAEL HALL, | ) | |
| | ) | |
| Defendants. | ) | |

**PENALTY PHASE JURY INSTRUCTIONS**

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS            Page 96
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Case 6:10-cr-03029-GAF   Document 807   Filed 05/30/14   Page 1 of 83

Exhibit 73 - 107

## INSTRUCTION NO. 19

At the end of your deliberations, if you unanimously determine that Defendant Coonce and Defendant Hall should be sentenced to death or to life imprisonment without the possibility of release, the court is required to impose that sentence.

Under Counts I and II as to Defendant Coonce, and under Count I as to Defendant Hall, if you cannot unanimously agree whether the Defendants should be sentenced to death or life imprisonment without the possibility of release, the court will sentence the Defendants to life imprisonment without the possibility of release.  There is no parole in the federal system.

Again, you are reminded that you are to make a separate determination for each Defendant and for each count for which he is charged

42

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 97

Case 6:10-cr-03029-GAF    Document 807    Filed 05/30/14    Page 42 of 83

Exhibit 73 - 108

*United States v. Naeem J. Williams*
No. 1:06-cr-00079-JMS-KSC (D. Haw.)
Judge Presiding: The Hon. J. Michael Seabright
(Voir dire began January 28, 2014.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 98

Exhibit 73 - 109

Case 1:06-cr-00079-JMS-KSC   Document 2784   Filed 06/06/14   Page 1 of 1    PageID #:

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 06-00079 JMS-KSC |
| | ) | |
| Plaintiff, | ) | JURY INSTRUCTIONS FOR |
| | ) | SENTENCING PHASE |
| vs. | ) | |
| | ) | |
| NAEEM J. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## JURY INSTRUCTIONS FOR SENTENCING PHASE

The court's jury instructions for the sentencing phase in the numerical

order as read to the jury on June 6, 2014 are attached hereto as Exhibit A.

Attached as Exhibit B is a list of statutory and non-statutory mitigating factors

proffered by the government and the mitigating factors proffered by the Defendant,

which the parties agreed to provide the jury.

DATED:  Honolulu, Hawaii, June 6, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 99

Exhibit 73 - 110

COURT'S INSTRUCTION NO. 2

You unanimously found the Defendant guilty of the offenses of child abuse murder, and murder in the perpetration of a pattern and practice of assault and torture against a child, as charged in Count 1 and Count 2 of the Indictment. In these instructions, the court refers to these two Counts collectively as "the offense." You have also unanimously found the Defendant eligible for the death penalty for this offense.

This offense is punishable by death or by imprisonment for life without possibility of release. There is no parole in the federal system so a life sentence means exactly that -- if so sentenced, the Defendant will spend the rest of his life in prison without the possibility of parole or release.

The choice between these alternatives is left exclusively to you. In order to impose a sentence of death, all twelve jurors must agree that death is the appropriate sentence. If one or more jurors does not conclude that death is the appropriate sentence, the death penalty will not be imposed. That is, if you cannot unanimously agree on the appropriate punishment, I will sentence the Defendant to life imprisonment without possibility of release. Your decision will be binding on the court, and I will impose sentence on the Defendant according to your choice.

2

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 100

Exhibit 73 - 111

ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 27 2014

at ___ o'clock and ___ min ___ M.
SUE BEITIA, CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00079 JMS |
| | ) | |
| Plaintiff, | ) | SPECIAL FINDINGS FORM |
| | ) | REGARDING PENALTY |
| vs. | ) | SELECTION |
| | ) | |
| NAEEM WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SPECIAL FINDINGS FORM REGARDING PENALTY SELECTION

### I. Findings Regarding Justification for a Death Sentence

#### A. Non-Statutory Aggravating Factors

The government has alleged that the following non-statutory aggravating factors are present in this case. For each factor listed below, answer "yes" or "no" as to whether you unanimously find that the government proved the existence of the factor beyond a reasonable doubt:

1.  After committing the final act of physical abuse against Talia Williams, the Defendant intentionally waited before seeking medical attention for Talia Williams, with such delay reducing the possibility that Talia Williams could have been medically treated and saved.

    YES  ✓          NO  _____

2.  The Defendant intentionally endeavored to impede the investigation into the murder of Talia Williams by washing her blood from her bedroom wall as charged in Count 4 of the Indictment.

    YES  ✓          NO  _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 101

Exhibit 73 - 112

## C.    Weighing Process

To determine that the death sentence is appropriate, you must be in unanimous agreement that the proved aggravating factors sufficiently outweigh the proved mitigating factors to justify a sentence of death (or, in the absence of any mitigating factors, that the proved aggravating factors alone justify a sentence of death).  Answer each question below.

### 1.    Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____          NO __✓__

### 2.    Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____          NO __✓__

### 3.    Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment.  We understand that the court will impose a sentence of life imprisonment without the possibility of release.

YES __✓__          NO _____

Proceed to the next section (II) of this Form.

35

Exhibit 73 - 113

## II.    Imposition of Sentence

This is the last step in your deliberations.  You must record your verdict.

If you have unanimously concluded that a sentence of death is justified and therefore should be imposed on the Defendant (that is, in Section I-C, question 1, the jury answered "YES"), record your decision in Section II-A, Verdict -- Sentence of Death below, sign the verdict, read and sign the certification that follows in Section III, and notify the court that you have reached a decision.

If you have unanimously concluded that a sentence of life imprisonment without the possibility of release is justified and therefore should be imposed on the Defendant (that is, in Section I-C, question 2, the jury answered "YES"), record your decision in Section II-B, Verdict --  Life Imprisonment below, sign the verdict, read and sign the certification that follows in Section III, and notify the court that you have reached a decision.

If you were unable to reach a unanimous determination as to the Defendant's sentence (that is, in Section I-C, question 3, the jury answered "YES"), record your decision in Section II-C, Verdict -- Unable to Reach Unanimous Verdict below, sign the verdict, read and sign the certification in Section III, and notify the court that you have reached a decision.

36

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 114

## II-A.  VERDICT -- SENTENCE OF DEATH

Based upon our consideration of the evidence and in accordance with the court's instructions, we find by unanimous vote that a sentence of death shall be imposed on the Defendant.

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____
                            Foreperson

                            Date: _____

37

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 104

Exhibit 73 - 115

## II-B.  VERDICT -- LIFE IMPRISONMENT

Based upon our consideration of the evidence and in accordance with the court's instructions, we unanimously find that a sentence of life imprisonment without release should be imposed on the Defendant.

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

Foreperson

Date: _____

38

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 105

Exhibit 73 - 116

## II-C.  VERDICT -- UNABLE TO REACH UNANIMOUS VERDICT

Based upon our consideration of the evidence and in accordance with the court's instructions, all twelve members of the jury were unable to reach a unanimous verdict. We understand that in this event, the court will impose the mandatory sentence of life imprisonment without release.

| REDACTED |

Foreperson

Date: _06-26-2014_

39

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 106

Exhibit 73 - 117

*United States v. John McCluskey*
No. 1:10-cr-02734-JCH (D.N.M.)
Judge Presiding: The Hon. Judith C. Herrera
(Note that this questionnaire was approved by the Court,
and prospective jurors filled it out in 2012;
however, the trial was continued and
voir dire began July 22, 2013.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 107

Exhibit 73 - 118

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**vs.**                                 **No. CR 10-2734 JCH**

**JOHN CHARLES McCLUSKEY,**

       **Defendant.**

## **SELECTION PHASE JURY INSTRUCTIONS**

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 108

Exhibit 73 - 119

Members of the jury, you unanimously found the defendant, John Charles McCluskey, guilty of the offenses of carjacking resulting in death, as charged in Counts 2 and 3 of the indictment, witness killing, as charged in Counts 4 and 5 of the indictment, and causing death through the use of a firearm during and in relation to a crime of violence, as charged in Counts 9 through 18 of the indictment.  Each of these offenses is punishable by death or by imprisonment for life without possibility of release.  You have also unanimously found the defendant eligible for a sentence of death for these offenses.  The choice between a sentence of death or life imprisonment is left exclusively to you.  Your unanimous decision will be binding on the court, and I will impose sentence on the defendant according to your choice.  If you cannot unanimously agree on the appropriate punishment, I will sentence the defendant to life imprisonment without possibility of release.  There is no parole in the federal system, so a life sentence means that the defendant will spend the rest of his life in prison without the possibility of release. You must approach the sentencing decision before you separately as to each count.

3.01

2

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 109

Exhibit 73 - 120

After completing your findings regarding aggravating and mitigating factors, you must engage in a weighing process to determine whether a sentence of death is justified. In this process, you must consider only those aggravating factors, statutory and non-statutory, that you unanimously found to exist. Each of you must also consider any mitigating factors that you individually found to exist, and you each may consider any mitigating factors found by any of the other jurors. For each capital offense, you must determine whether the proven aggravating factor[s] sufficiently outweigh any proven mitigating factor[s] to justify a sentence of death. If the proved aggravating factors do not sufficiently outweigh the proved mitigating factors, or if the proved aggravating factors are equal in weight to the proved mitigating factors, a sentence of life imprisonment without possibility of release must be imposed.

The task of weighing aggravating and mitigating factors against each other, or weighing aggravating factors alone if there are no mitigating factors, is not a mechanical process. You should not simply count the number of factors, but consider the particular character of each, which may be given different weight or value by different jurors. What constitutes sufficient justification for a sentence of death in this case is exclusively left to you. Your role is to make a reasoned moral judgment. Whatever aggravating and mitigating factors are found, a jury is never required to conclude the weighing process in favor of a sentence of death. But your decision must be a reasoned one, free from the influence of passion, prejudice, or arbitrary consideration.

The law contemplates that different factors may be given different weights or values by different jurors. Thus, you may find that one mitigating factor outweighs all aggravating factors combined, or that the aggravating factors proved do not, standing alone, justify imposition of a sentence of death. Similarly, you may instead find that a single aggravating factor sufficiently

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 110

Exhibit 73 - 121

outweighs all mitigating factors combined so as to justify a sentence of death. Each juror is individually to decide what weight or value is to be given to a particular aggravating or mitigating factor in the decision-making process.

If (1) you do not unanimously find that the aggravating factors sufficiently outweigh the mitigating factors to justify a sentence of death, or (2) in the absence of any mitigating factor, you do not unanimously find that the aggravating factors, considered alone, justify a sentence of death, or (3) you find that the proved aggravating factors are equal in weight to the proved mitigating factors; then answer "no" in Section I-C of the Special Findings Form, record your decision on and sign Section II-B, Verdict—Life Imprisonment, and certify your decision as described in Section III of the Form, which will end your deliberations.  If you unanimously find that the comparative weight of the aggravating factor[s] is sufficient to justify a sentence of death, answer "yes" in Section I-C of the Special Findings Form, record your decision on and sign Section II-A, Verdict—Sentence of Death, and certify your decision as described in Section III of the Form.

Complete this process for each capital count listed in the Special Findings Form.

3.11

30

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 111

Exhibit 73 - 122

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                                       No. CR 10-2734 JCH

JOHN CHARLES McCLUSKEY,

Defendant.

### SPECIAL FINDINGS FORM FOR SELECTION PHASE

**I.    Findings Regarding Justification for a Death Sentence**

**A.    Non-Statutory Aggravating Factors**

The Government has alleged that the following non-statutory aggravating factors are present in this case. For each factor, answer "yes" or "no" according to whether you unanimously find that the Government proved the existence of the factor beyond a reasonable doubt.

**1.  Victim Impact**

Do you unanimously find that the Government has proved beyond a reasonable doubt that as demonstrated by the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family and friends, the defendant caused injury, harm, and loss to the victim and the victim's family and friends: Cathy Byus, Vivian Haas, Linda Rook, Sandra Roden Morgan, Talford Perkins, Erma Patrick, Jay Dee Patrick, Steve Walker, and Sheila Walker?

Gary Haas:     YES  ✓          NO  _____

Linda Haas:    YES  ✓          NO  _____

**2.  Contemporaneous Serious Criminal Acts**

Do you unanimously find that the Government has proved beyond a reasonable doubt that the defendant killed each victim during a contemporaneous and continuing episode of serious criminal activity: the July 30, 2010, escape from Arizona State Prison - Kingman; the July 31, 2010, robbery and kidnapping of Prahbjeet Bains and Gurdeep Singh; and the August 11, 2010, armed robbery of the Kut and Kurl hair salon in Gentry, Arkansas?

Gary Haas:     YES  ✓          NO  _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 112

Exhibit 73 - 123

## II.     Imposition of Sentence

This is the last step in your deliberations.  You must record your verdict for each count that is listed.
If you have unanimously concluded that a sentence of death is justified and therefore must be
imposed on the defendant, record your decision in Section II-A, Verdict—Sentence of Death below,
sign the verdict, sign the certification that follows in Section III, and notify the court that you have
reached a decision.  If you have not unanimously concluded that a sentence of death is justified and
therefore must be imposed, record your decision in Section II-B, Verdict—Life Imprisonment
below, sign the verdict, sign the certification in Section III, and notify the court that you have
reached a decision.

Page 27

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 113

Exhibit 73 - 124

## II-A.  VERDICT—SENTENCE OF DEATH

Based upon our consideration of the evidence and in accordance with the Court's instructions, we find by unanimous vote that a sentence of death shall be imposed on the defendant for the following counts (circle those counts that apply, if any):

| Gary Haas | Linda Haas |
|-----------|------------|
| Count 2 | Count 3 |
| Count 4 | Count 5 |
| Count 9 | Count 10 |
| Count 11 | Count 12 |
| Count 13 | Count 14 |
| Count 15 | Count 16 |
| Count 17 | Count 18 |

*9 names redacted*

_____          _____
Foreperson

Date: _____

Page 28

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 114

Exhibit 73 - 125

## II-B.  VERDICT—LIFE IMPRISONMENT

Based upon our consideration of the evidence and in accordance with the Court's instructions, we find that a sentence of life imprisonment without release shall be imposed on the defendant for the following counts (circle those that apply, if any):

| Gary Haas | Linda Haas |
|-----------|------------|
| Count 2   | Count 3    |
| Count 4   | Count 5    |
| Count 9   | Count 10   |
| Count 11  | Count 12   |
| Count 13  | Count 14   |
| Count 15  | Count 16   |
| Count 17  | Count 18   |

*3 names redacted*

Date: 11 DEC 13

Page 29

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 115

Exhibit 73 - 126

*United States v. Ahmed M. Salad, et al.*
No. 2:11-cr-00034-RBS (E.D. Va.)
Judge Presiding: The Hon. Rebecca Beach Smith
(Voir dire began June 4, 2013.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 116

Exhibit 73 - 127

*United States v. Ahmed M. Salad, et al.,* No. 2:11-cr-00034-RBS (E.D. Va. 2013)(J. Rebecca Beach Smith) (Voir dire began June 4, 2013).

Note: The jury instructions have not been publicly filed on ECF, however, the relevant portions of the sentencing trial instructions are excerpted below. These instructions are consistent with the instructions requested by the government. *See* Docket 808 at 11-12 (copied and bookmarked below in this *Salad* section).

**JURY INSTRUCTION NO. 15 - UNANIMITY REQUIRED FOR SENTENCE**

. . . .

BUT IF ANY OF YOU -- EVEN A SINGLE JUROR --
IS **NOT** PERSUADED THAT THE AGGRAVATESIG FACTORS SUFFICIENTLY OUTWEIGH ANY MITIGATING FACTORS SUCH THAT A SENTENCE OF DEATH IS JUSTIFIED, THEN THE ENTIRE JURY MAY NOT RECOMMEND IMPOSITION OF A SENTENCE OF DEATH ON THE VERDICT FORM AS TO THAT DEFENDANT ON THAT COUNT. IN SHORT, IF YOU FIND, AFTER THOROUGH DELIBERATION AND THE CONSIDERATION OF THE VIEWS OF YOUR FELLOW JURORS ON THE AGGRAVATMG AND MITIGATING FACTORS, THAT YOU ARE NOT UNANIMOUS IN YOUR CONCLUSION TO IMPOSE THE DEATH PENALTY, YOU HAVE NEVERTHELESS REACHED A DECISION -- NAMELY, THAT THE GOVERNMENT HAS NOT MET ITS BURDEN AND THE APPROPRIATE PENALTY IS A PENALTY OTHER THAN DEATH AS TO THAT COUNT OF CONVICTION.

**JURY INSTRUCTION NO. 16 - CONSEQUENCES OF DELIBERATION**

AT THE END OF YOUR DELIBERATIONS, IF YOU UNANIMOUSLY RECOMMEND THAT A SENTENCE OF DEATH SHALL BE IMPOSED, THEN, AS I PREVIOUSLY INSTRUCTED YOU, THE COURT IS REQUIRED TO SENTENCE THE DEFENDANT TO DEATH. HOWEVER, IF YOU DO NOT UNANIMOUSLY RECOMMEND THAT A SENTENCE OF DEATH SHALL BE IMPOSED, THEN THE COURT IS REQUIRED TO IMPOSE A SENTENCE OTHER THAN DEATH AS AUTHORIZED BY LAW.

FEDERAL LAW PROVIDES THAT AN ALTERNATIVE SENTENCE TO THE CHARGES CONTAINED IN COUNTS 1-5, 7-19 AND 22-25 IS A TERM OF LIFE IMPRISONMENT.

FEDERAL LAW HAS ABOLISHED PAROLE AND THEREFORE THERE IS NO POSSIBILITY THAT THE DEFENDANT WILL BE PAROLED EARLY FROM THE SENTENCE IMPOSED.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 117

Exhibit 73 - 128

## JURY INSTRUCTION NO. 21 - CONCLUDING INSTRUCTION

. . . .

THE IMPORTANCE OF YOUR DELIBERATIONS SHOULD BE OBVIOUS. I REMIND YOU THAT YOU CAN RETURN A DECISION SENTENCING A DEFENDANT TO DEATH ONLY IF ALL TWELVE OF YOU ARE UNANIMOUSLY PERSUADED, BEYOND A REASONABLE DOUBT, THAT A SENTENCE OF DEATH IS IN FACT APPROPRIATE.

Exhibit 73 - 129

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:11cr34 |
| | ) | |
| AHMED MUSE SALAD, | ) | |
| a/k/a "Afmagalo," | ) | |
| | ) | |
| ABUKAR OSMAN BEYLE, | ) | |
| | ) | |
| SHANI NURANI SHIEKH ABRAR, | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S PROPOSED JURY INSTRUCTIONS FOR SELECTION PHASE

COMES NOW the United States of America, by undersigned counsel, and respectfully

submits the following revised and additional proposed instructions for the Selection Phase in the

above referenced matter.  The United States previously submitted the majority of these

instructions, along with proposed instructions for the guilt and eligibility phases, on May 28,

2013.  (ECF No. 683).   The United States has made minor typographic corrections and stylistic

changes to some of these instructions to conform with the jury's findings in the guilt and

eligibility phases of trial.  For consistency and comparison, the United States has kept the same

numbering system used in its previously filed proposed instructions with respect to those

submitted herein.

Additionally, the United States submits two new instructions: Instruction No. 99A,

related to liability for the acts of others for aggravating factors[1]; and Instruction No. 103A,

_____

[1]Proposed Instruction 99A is identical to previously proposed Instruction 94 that was
submitted on May 28th in connection with the Eligibility Phase.  The content of this instruction
was also provided by the Court in the Eligibility Phase as Instruction No. 17.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 119

Exhibit 73 - 130

related to videotaped and other interviews made not under oath.

Respectfully submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____/s/_____

Benjamin L. Hatch
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number (757) 441-6331
Facsimile Number (757) 441-6689
E-Mail Address - Benjamin.Hatch@usdoj.gov

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 120

Exhibit 73 - 131

JURY INSTRUCTION NO. 98

**<u>UNANIMITY REQUIRED FOR SENTENCE</u>**

IN THIS REGARD, THIS SENTENCING PHASE OF THE TRIAL DIFFERS FROM THE FIRST GUILT PHASE.  IN THE FIRST PHASE, I INSTRUCTED YOU TO DELIBERATE WITH THE GOAL OF REACHING A UNANIMOUS DECISION ONE WAY OR THE OTHER, AS TO WHETHER THE GOVERNMENT HAD PROVEN THE DEFENDANTS GUILTY BEYOND A REASONABLE DOUBT OF THE CRIMES CHARGED AGAINST THEM IN THE SUPERSEDING INDICTMENT.

IN THIS PHASE, AT THE END OF YOUR DELIBERATIONS ALL TWELVE JURORS MUST UNANIMOUSLY AGREE THAT THE AGGRAVATING FACTORS SUFFICIENTLY OUTWEIGH ANY MITIGATING FACTORS OR, IN THE ABSENCE OF MITIGATING FACTORS, THAT THE AGGRAVATING FACTORS ARE THEMSELVES SUFFICIENT TO JUSTIFY A SENTENCE OF DEATH.  BUT IF ANY OF YOU -- EVEN A SINGLE JUROR -- IS **NOT** PERSUADED THAT THE AGGRAVATING FACTORS SUFFICIENTLY OUTWEIGH ANY MITIGATING FACTORS SUCH THAT A SENTENCE OF DEATH IS JUSTIFIED, THEN THE ENTIRE JURY MAY NOT RECOMMEND THE DEATH PENALTY ON THE VERDICT FORM.  IN SHORT, IF YOU FIND, AFTER THOROUGH DELIBERATION AND THE CONSIDERATION OF THE VIEWS OF YOUR FELLOW JURORS, THAT YOU ARE NOT UNANIMOUS IN YOUR VIEWS, YOU HAVE NEVERTHELESS REACHED A DECISION -- NAMELY, THAT THE GOVERNMENT HAS NOT MET ITS BURDEN AND THE APPROPRIATE PENALTY IS A PENALTY OTHER THAN THE DEATH PENALTY AS TO THAT COUNT OF CONVICTION.  THEN, YOU MUST ENDEAVOR TO REACH A UNANIMOUS DECISION ON LIFE WITHOUT THE

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 121

Exhibit 73 - 132

Case 2:11-cr-00034-RBS-DEM   Document 808   Filed 07/25/13   Page 12 of 39 PageID# 7914

POSSIBILITY OF RELEASE OR SOME OTHER LESSER SENTENCE AS APPROPRIATE

TO THAT COUNT OF CONVICTION.

NOW, THE DEFENDANTS AT THIS HEARING DO NOT HAVE TO PRESENT ANY

EVIDENCE.  A DEFENDANT DOES NOT HAVE TO PROVE TO YOU THAT HE SHOULD

NOT BE SENTENCED TO DEATH.  EACH DEFENDANT WAS, HOWEVER, ENTITLED

TO PRESENT ANY MITIGATING FACTS TO YOU.

AUTHORITY: Instruction as given by Chief Judge Rebecca Beach Smith in United States v. Runyon, 4:08cr16, itself modified from instruction given by Judge James R. Spencer in United States v. Tipton, No. 93-4005-07,09 & 10 (E.D. Va. 1993), itself based on instruction given in United States v. Pitera, No. 90 CR424 (RR) (S.D.N.Y. 1992).

Exhibit B  DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS                    Page 122
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 133

JURY INSTRUCTION NO. 107

## CONSEQUENCES OF DELIBERATION

AT THE END OF YOUR DELIBERATIONS, IF YOU UNANIMOUSLY RECOMMEND THAT A SENTENCE OF DEATH SHALL BE IMPOSED, THEN THE COURT IS REQUIRED TO SENTENCE THE DEFENDANT TO DEATH.  HOWEVER, IF YOU DO NOT UNANIMOUSLY RECOMMEND THAT A SENTENCE OF DEATH SHALL BE IMPOSED, THEN THE COURT IS REQUIRED TO IMPOSE A SENTENCE OTHER THAN DEATH AS AUTHORIZED BY LAW.

FEDERAL LAW PROVIDES THAT THE ALTERNATIVE SENTENCE TO THE CHARGES CONTAINED IN COUNTS 1-5, 7-10 AND 16-19 IS A MANDATORY LIFE TERM OF IMPRISONMENT.

FEDERAL LAW PROVIDES THAT THE ALTERNATIVE SENTENCE TO THE CHARGES CONTAINED IN COUNTS 11-15 AND 22-25  IS IMPRISONMENT FOR ANY NUMBER OF YEARS UP TO LIFE.  FEDERAL LAW HAS ABOLISHED PAROLE AND THEREFORE THERE IS NO POSSIBILITY THAT THE DEFENDANT WILL BE PAROLED EARLY FROM THE SENTENCE THE COURT IMPOSES.

AUTHORITY: Instruction given by Chief Judge Rebecca Beach Smith in United States v. Runyon, 4:08cr16, as provided in modified instruction given by Judge Robert E. Payne in United States v. Beckford, 3:96cr66.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS                    Page 123
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 134

*United States v. Xavier Jimenez-Bencevi*
No. 3:12-cr-00221-JAF (D.P.R.)
Judge Presiding: The Hon. José A. Fusté (former Chief Judge)
(Voir dire began April 15, 2013.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS                    Page 124
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 135

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

XAVIER JIMÉNEZ-BENCEVÍ (1),

    Defendant.

Criminal No. 12-221 (JAF)

## PRELIMINARY INSTRUCTIONS – PENALTY PHASE

### I.

### INTRODUCTION

You will remember that when we were in the process of selecting jurors for this case, I told you that if Defendant Xavier Jiménez-Benceví was found guilty by the jury of any death-penalty eligible count, we would hold a second phase where the jury decides the sentence to be imposed, that is, life imprisonment without the possibility of release, or the death penalty.

A jury's decision in this second phase to sentence a defendant to life imprisonment without the possibility of release or to death is binding on the judge.  That means that if the jury determines in this second phase that Defendant Xavier Jiménez-Benceví should be sentenced to life in prison without release, such is the sentence I am required to impose.  By the same token, if the jury determines that Defendant Xavier Jiménez-Benceví should be sentenced to death, I am required by law to impose that sentence.  In

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 125

Exhibit 73 - 136

Criminal No. 12-221 (JAF)                                                                -9-

However, if, after weighing the **aggravating and mitigating factors**, the jury cannot **unanimously** find that the sentence of death is justified, the jury shall enter a decision on the special verdict form to this effect and the court shall thereafter impose upon the defendant a sentence of life imprisonment without the possibility of release.

You should not take anything I may say or do during this sentencing hearing as indicating what I think of the evidence or what I think your decision should be.

## DEFINITION OF TERMS

Two terms that you have already heard and will hear throughout this sentencing hearing are "**aggravating factors** of two kinds, either **statutory** or **non-statutory**," and "**mitigating factors**."

The word "**aggravate**" means "to make worse or more offensive" or "to intensify." The word "**mitigate**" means "to make less severe" or "to moderate."  An **aggravating factor**, then, is a fact or circumstance which would tend to support imposition of the death penalty.  A **mitigating factor** is any aspect of a defendant's character, background, or record, any circumstance of the offenses, or any other relevant fact or circumstance which might indicate that the defendant should be sentenced to life imprisonment without the possibility of release.

Congress has identified a number of **aggravating factors** and they are listed in the federal death-penalty statute. These are called **statutory aggravating factors**.  As I instructed you earlier, before the jury may consider imposition of the death penalty, it must find that the government proved **at least one** of the **threshold factors** and **at least one** of the **statutory aggravating factors** specifically listed in the federal death penalty statute, and the jury's finding **must be unanimous and beyond a reasonable doubt**.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)                                              Page 126

Exhibit 73 - 137

*United States v. LaShaun Casey*
3:05-CR-00277-ADC (D.P.R.)
Judge Presiding: The Hon. Aida M. Delgado-Colon
(Voir dire began February 4, 2013.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 127

Exhibit 73 - 138

### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
Plaintiff,

v.

**LASHAUN CASEY,**
Defendant.

CRIM. NO.  05-277 (ADC)

### SPECIAL VERDICT FORM

**I.   DEFENDANT'S AGE AT THE TIME OF THE OFFENSES**

Do you, the jury, unanimously find beyond a reasonable doubt that LASHAUN CASEY was at least 18 years of age on August 1, 2005?

A.   Count One (Carjacking Resulting in Death)

YES **X**

NO _____

B.   Count Two (Use of a Firearm in Relation to a Crime of Violence Resulting in Death)

YES **X**

NO _____

If your finding is "YES" as to Counts One or Two, move on to the Threshold Intent/Gateway Factors in Section II for that count. If your finding is "NO" as to all counts, stop your deliberations and complete Section VII.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 139

## VI.   SENTENCE

COUNT ONE – (Carjacking Resulting in Death)

As to Count One, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or, in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case, we determine as follows:

1. Death Sentence
We determine, by unanimous vote, that a sentence of death shall be imposed:

YES _____                    NO __☓__

2. Life Imprisonment Without Possibility of Release
We determine, by unanimous vote, that a sentence of life imprisonment without the possibility of release shall be imposed:

YES _____                    NO __☓__

3. Unable to Reach Unanimous Decision
After due deliberation, we are unable to come to a unanimous agreement on the issue of punishment.  We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES __☓__                          NO _____

NOTE: the jury must mark "YES" as to one, and only one, of the choices.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 140

COUNT TWO- (Murder with a Firearm in Relation to a Crime of Violence)

As to Count Two, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or, in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case, we determine as follows:

1. Death Sentence
   We determine, by unanimous vote, that a sentence of death shall be imposed:

   YES _____          NO __X__

2. Life Imprisonment Without Possibility of Release
   We determine, by unanimous vote, that a sentence of life imprisonment without the possibility of release shall be imposed:

   YES _____          NO __X__

3. Unable to Reach Unanimous Decision
   After due deliberation, we are unable to come to a unanimous agreement on the issue of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

   YES __X__          NO _____

   NOTE: the jury must mark "YES" as to one, and only one, of the choices.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 130

Exhibit 73 - 141

*United States v. Alexis Candelario-Santana*
No. 3:09-cr-00427-JAF-1 (D.P.R.)
Judge Presiding: The Hon. José A. Fusté (former Chief Judge)
(Voir dire began January 28, 2013.)

Exhibit 73 - 142

1

UNITED

DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.                                    Docket No. 09-427

ALEXIS CANDELARIO SANTANA, and       San Juan, Puerto Rico
DAVID OQUENDO RIVAS,                  March 22, 2013

Defendants.

JURY TRIAL

BEFORE THE HONORABLE JUDGE JOSÉ A. FUSTÉ,

UNITED STATES DISTRICT JUDGE.

APPEARANCES:

For the Government:    Mr. Bruce Hegyi, AUSA
                       Ms. Maria Dominguez Victoriano, AUSA
                       Ms. Marcela Mateo, AUSA

For the Defendants:    Mr. David Arthur Ruhnke, PHV
                       Mr. Francisco Rebollo Casalduc, Esq.
                       Mr. Jose R. Aguayo, Esq.

Proceedings recorded by stenography.  Transcript produced by CAT.

1

I N D E X

WITNESSES:                                    PAGE

    None offered.


EXHIBITS:

    None offered.

---

an Juan, Puerto Rico

March 22, 2013

At or about 9:06 AM

*    *    *

THE COURT: Members of the jury, what we're going to do now is we're going to hear the closing arguments. And after that, I will instruct you on the applicable law to this phase of the case.

So we will do it the same way we did it before. The Government starts, followed by defendant, followed by Government's rebuttal.

Very well. Who's going to go first? Mr. Hegyi, please.

MR. HEGYI: May I proceed, Your Honor?

THE COURT: Please.

MR. HEGYI: Ladies and gentlemen, the job left to you in this case is to determine the just, right and proper sentence for Alexis Candelario Santana. When it comes down to it, it's really just as simple as that. It's not an easy job. It's not a joyful job. But it's a job, a duty that only you can do.

There are times in the life of any civilized society when reasonable, rational, mature and compassionate people have to rise up, they have to draw a line in the sand, and they have to say no more, not ever again. This is such a

3

case.

When we first met one another during the voir dire process that must seem like a lifetime ago to each of you, we learned that each of you was indeed a reasonable, rational, mature, compassionate individual. If you hadn't been, you wouldn't be sitting in this jury box, not the regular jurors, not the alternates. Each of you promised that under the right circumstances, you could vote for the death penalty.

You know that under the law, a person who's guilty of even a single murder, just one, under the right circumstances, could properly be sentenced to death. Not necessarily would, but could.

During the voir dire process, we learned some of your thoughts about the death penalty, when you thought the death penalty might or might not be appropriate. We heard from some of you, for instance, that they felt the death penalty might be appropriate for somebody who killed more than one person. Some of you felt that if someone killed an innocent person, or innocent people. Others felt that if women were the target and had been killed, children, old people, persons that were unable to defend themselves. Perhaps a person who killed indiscriminately, maybe that would be an appropriate time to impose the death penalty.

Some of you mentioned the idea of an individual who had killed before, gone to prison to have an opportunity to

Page 132

4

---

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Exhibit 73 - 143

reasonable doubt the defen.. time of the murders of these persons that I mentioned by name, and that at least one statutory aggravating factor and at least one threshold intent factor was found, unanimously and beyond a reasonable doubt, to apply to any one or more of the offenses arising from these murders, you will then proceed to weigh all of the aggravating and mitigating factors you have found as to those offenses.

In determining the appropriate sentence, all of you must weigh the aggravating factor or factors that you unanimously found to exist beyond a reasonable doubt, whether statutory or non-statutory. And each of you must weigh any mitigating factor that you individually or others found to exist.

Although I have previously instructed you, you must unanimously find at least one of the threshold intent factors proven beyond a reasonable doubt for the defendant to be eligible for a sentence of death. I instruct you now that the threshold intent factors shall not be considered when weighing the aggravating and mitigating factors. Once again, you must weigh only aggravating factors proven unanimously and beyond a reasonable doubt, whether statutory or not, and each of you must weigh any mitigating factor that you individually or collectively with others find to exist.

In engaging in the weighing process, you must not be

129

nd you again that the weighing process requires a unique, individualized, highly responsible assessment using your intelligence, your common sense, and your good judgment about the appropriateness of a sentence of death against a defendant.

Let's talk about the determination of a sentence of death. If you determine beyond a reasonable doubt that the aggravating factor or factors found to exist sufficiently outweigh any mitigating fact or factors found to exist to justify a sentence of life for a given capital offense, you will enter your determination as to whether death is justified in the corresponding section of the verdict form — sentence of life. If you unanimously determine that the aggravating factor or factors do not exist, do not sufficiently outweigh any fact or factors that exist to justify a sentence of death, you will enter your determination as to whether the defendant be sentenced to life imprisonment without possibility of release in the pertinent section of the verdict form.

However, if you are unable to come to agreement of an unanimous nature on the issue of punishment, after following the instruction number two, which is entitled duty to deliberate, I will impose a sentence of life imprisonment without the possibility of release. There is a space in your verdict form addressing this outcome.

At the end of your deliberations, if you unanimously

131

swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feelings. Your decision should be based upon the evidence you have seen and heard and the law which we are instructing you about now.

Again, whether or not the circumstances in this case justify a sentence of death or life imprisonment without the possibility of release or parole as it's technically referred to, is a decision that the law leaves entirely up to you. The process of weighing aggravating and mitigating factors against each other in order to determine the proper punishment is not a mechanical process. In other words, you should not simply count factors, aggravating and mitigators, and reach a decision based on which one number is greater.

You have to consider the weight and the value of these factors, the quality of the factors. The law also contemplates that different factors may be given different weights or valued by different jurors differently. Thus you may find that one mitigating factor outweighs all aggravating factors combined or that the aggravating factors proven do not standing alone justify the imposition of a sentence of death. Similarly, you may unanimously find that a particular aggravating factor sufficiently outweighs all mitigating factors combined to justify a sentence of death.

Each juror must decide what weight or value is to be given to any particular aggravating or mitigating factor in

determine that the defendant should be sentenced to death or to life imprisonment without the possibility of release, the Court is required to impose that sentence. Your verdict must be based solely on the evidence and the law as I have given it to you, and you have heard this before in these instructions. However, nothing I may have said or done is intended to indicate, nor should be taken by you as to what your verdict should be. Your verdict is entirely up to you to make or to decide.

Each item under consideration requires independent consideration. The same way that in the beginning you have to consider each defendant for each particular count, here you have to give separate, individual consideration to each issue that is before you. And what you decide on one doesn't necessarily control on the other. There has to be a separate decision for each of the particular counts.

The capital counts of the Third Superseding Indictment are Counts II through IX, which charge violations of Title 18, United States Code, Section 1959 and Section Two; and Counts XI through XVIII, which charge violations of Title 18, United States Code, Sections 924(j)(1) and two.

Each capital count charges a separate crime. You must consider each count separately. That is, you must decide separately the evidence in each case and what it shows about the defendant as to each particular count.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

130   Page 133   132

Exhibit 73 - 144

In your considerat

justified, you must not consider race, color, religious beliefs, national origin or sex of either the defendant or of any victim. You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to race, color, religious beliefs, national origin, or sex of either the defendant or any victim.

To emphasize the importance of this consideration, there is a section in the special verdict form that contains a certification statement to the effect that you are not considering race, color, religious beliefs, et cetera in your deliberations. Each juror should carefully read the statement and sign it in the appropriate place if the statement accurately reflects the manner in which you have reached your decision. Remember that since the jury is anonymous, you must individually sign the certification with the juror number in your own handwriting, not with your regular signature.

Let's talk about the special verdict form. Let's leave the verdict form for last.

Note taking. I allowed you to take notes. I see that you have your notebooks with you. Remember that the notes that you took are your individual notes as to what you wanted to remember in particular. Your notes are not binding upon the others in other words. Your notes are your aid in recollecting what you thought you had to put down in hand —

133

in black and white to remember. That's it. Nothing else.

So remember that the notes that one took are not necessarily the collective memory of the others. It is the collective memory of everybody that works here, is what really counts, not the particular notes of juror one, two or three.

Let's talk about the special verdict form. It's long, but it's very logical. And it's a good guide to follow. The first question is age of the defendant. And the purpose of that question is for you to decide, find whether it can be done unanimously and without — beyond a reasonable doubt what was his age at the time of the commission of the offenses.

Then we deal with threshold intent factors. Remember, there were two. And what we are asking you to do is to consider whether you find each of those threshold intent factors proven to your unanimous satisfaction beyond a reasonable doubt regarding the different individuals that are named in the verdict form, and regarding the particular count in which that person is named.

Example, Tina Marie Rodriguez Otero is mentioned in Counts IX and Count XVIII. So it's in relation to these Counts IX and XVIII that you have to answer yes or no regarding the particular threshold intent factors, and so on and so forth regarding through the remaining other individuals. And the same way regarding the other threshold intent factor that is also a possibility. And once again

Page 134

nvolved as victims, and in the specific counts in which they are mentioned. It's extremely logical the way it's written.

Then we go into the statutory aggravating factors, assuming that you have found threshold intent factors. And then here we go factor by factor. I'll give you an example of the first one. And I'll read them all again. Do you the jury unanimously find that the Government has established beyond a reasonable doubt that Alexis Candelario Santana was previously convicted of a state offense punishable by a term of imprisonment of more than one year involving the use of, attempted or threatened use of a firearm against another person? You have to answer yes or no. And so on and so forth.

And then you go once again, person by person, Tina Marie Rodriguez Otero; Joan Manuel Class Guzman; et cetera, et cetera, by count. It is here spelled out, the counts that apply to that particular victim or person killed.

Then we do the same with the non-statutory aggravating factors. And I'll read the second one to read one. Do you the jury unanimously find that the Government has established beyond a reasonable doubt that Alexis Candelario committed the offense in the course of engaging in a continuing criminal enterprise? You answer yes or no.

Then once you have done that, you go into the

135

victims. For example, do you the jury unanimously find that the Government has established beyond a reasonable doubt that Alexis Candelario Santana caused injury, harm and loss to the families of X, Y, and Z. Go like that, and you will answer those particular questions regarding those factors.

Then you go into the mitigating factors, and for the mitigating factors the process is a bit different, because remember that the mitigating factors can be proven with a different burden, proven — they must be proven that they are more likely so than not so, more likely true than not true. That means by preponderance of the evidence.

And remember that it doesn't have to be unanimous either. So, for example, you will see that that section of the verdict form has a blank for you to tell us the number of jurors that found a particular mitigating factor existed.

Let's take one. Let me just take one, the first one. David Oquendo will not face the death penalty for his role in the murders of La Tombola. If three of you found that that is a mitigating factor, you will put number of jurors that so found, three. If nobody found that factor, zero. If only one found it, one. If 12 found it, 12. That's it. One by one. Factor by factor. Mitigation.

And then since I told you that you could find other mitigating factors as long as they are related to the character, background or record or any circumstance of the

136

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 145

137

offenses or any other rele ncing issues among might indicate the defendant should be sentenced to life and not to death, then I gave you spaces to insert the particular mitigating factor that you found that we haven't talked about and the number of jurors who so found.

And I gave you actually 12 spaces for you to decide what you want to do with it. If you find none, just cross out that section. If somebody -- whichever, three, four, five, ten, 12, zero, whichever, you also indicate that result. And then you come into the process of weighing your determinations.

And I'll read you one of the determination questions in the verdict form. Let's take Joan Manuel Class Guzman as an example. It tells you in parentheses, Counts I and III, XI, as to Count II, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist or whether the mitigating factors outweigh the aggravating factors or in the absence of any mitigating factors whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case, we determine as follows: Death sentence, we determine by unanimous vote that the sentence of death shall be imposed, yes or no. Second option, sentence of life in prison without

137

possibility of release. We determine by unanimous vote the sentence of life in prison without the possibility of release, yes or no. Third option, unable to come to a unanimous decision. After due deliberation, we are unable to come to a decision on the issue of punishment. We understand the Court will impose a sentence of life imprisonment without possibility of release. And the answer is once again, yes or no.

And we go victim by victim and count by count with the same kind of questions asked. And the last part that you have to fill in is the certification. The certification is the one that I mentioned in the instructions that tells you — tells us, the receivers of the verdict here, that when you made these deliberations, you are certifying that you didn't consider impermissible factors such as race, national origin, things of the sort, religious beliefs, things of the sort. And then each one of you has to sign that certification. But since you are an anonymous juror, you will sign it with your number in your own handwriting.

So you will see that we have actually here 11 spaces, and the 12th space would be for the foreperson. That's it. This is the verdict form. It's extremely easy to follow. It's logically developed to be followed that way.

You're going to take with -- strike that. Before we continue, when you are in the jury room, you are going to

yourselves with candor, maturity, frankness, integrity, and respect for the opinion of one another.

Each one of you must decide these matters for yourself and not merely go along with the conclusion of your fellow jurors. In the course of your deliberations, you must never surrender your honest, conscientious belief of what is the truth or what is the weight or effect of the evidence and what should be the outcome determined by each juror individually in the evaluation of the case.

Remember that the parties and the Court are relying upon you to give full, considered, and mature consideration to this sentencing process. By doing so, you carry out your oath as jurors, that you will well and truly try the issues of this case and render a just verdict.

If it becomes necessary during your deliberations to communicate with the Court, you know what the process is. You grab a piece of paper. You write a note to me. You never tell me what is going on in detail. You simply ask me a question, whatever it may be, and I will take it upon myself to show it to the lawyers. That's why I tell you, do not tell me any intimate voting details in the note. And I will then tell you whether I decide I should answer in a written note or whether I should bring you in and tell you the answer in person.

139

Remember, if you send me a note, it's entirely possible it may take me a little bit of time to figure it out and call the lawyers in and discuss it with them. So if you send a note, don't think for a minute it's going to be two minutes. It could take ten minutes, 15 minutes depending what it is.

You remember that Mr. Villavicencio took an oath before. That oath is still valid. That oath has been taken by all the Court Security Officers and all the Marshals. And the oath is to the effect that the persons who are taking care of you in deliberations are not part of the jury obviously, and that they are prohibited from communicating with you on any subject touching upon the merits of the case. That is a given.

Bear in mind, you are never to reveal to any person how — not even me, how the jury stands numerically or otherwise on the matters under consideration until after you have reached a verdict.

And each one of you is going to get a copy of the verdict form and the instructions. This is for you. You are going to be able to have with you the exhibits from the guilt phase if you want to see them. If you want to see them, you can have them. If at some point in time you need to see any particular other exhibit from the previous phase, you let me know and I'll let you know whether you can have it or not.

139

140

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 135

Exhibit 73 - 146

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

ALEXIS CANDELARIO-SANTANA (1),

        Defendant.

Criminal No. 09-427 (JAF)



**SPECIAL VERDICT FORM**

## I.    AGE OF DEFENDANT

Instructions: Answer "YES" or "NO"

1.    Do you, the jury, unanimously find that the government has established beyond a reasonable doubt that:

Alexis Candelario Santana was eighteen years (18) of age or older at the time of the offenses charged under Counts Two through Nine, and Eleven through Eighteen of the Third Superseding Indictment (October 17, 2009).

YES  _____

NO  _____

Instructions: If you answered "NO" with respect to the determination in this section, then stop your deliberations, cross out Sections II, III, IV, V and VI of this form, and proceed to Section VII. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision. You should then advise the court that you have reached a decision.

If you answered "YES" with respect to the determination in this Section I, proceed to Section II which follows.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 136

Exhibit 73 - 147

Criminal No. 09-427 (JAF)                                                    13 of 29

## VI.  DETERMINATION

### A.  Joan Manuel Class-Guzmán (Counts Two and Eleven)

**Count Two**: As to Count Two, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____✓_____

### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 137

Exhibit 73 - 148

Criminal No. 09-427 (JAF)                                                      14 of 29

**Count Eleven:** As to Count Eleven, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____

### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 138

Exhibit 73 - 149

Criminal No. 09-427 (JAF)                                                    15 of 29

**B.    Pedro Semprit-Santana (Counts Three and Twelve)**

**Count Three:** As to Count Three, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____

### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 139

Exhibit 73 - 150

Criminal No. 09-427 (JAF)                                                                16 of 29

**Count Twelve:** As to Count Twelve, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____

### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 140

Exhibit 73 - 151

Criminal No. 09-427 (JAF)                                                        17 of 29

### C.   José Angel Hernández-Martínez (Counts Four and Thirteen)

**Count Four:** As to Count Four, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

#### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____✓_____

#### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____✓_____

#### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES __✓_____

NO _____

**Count Thirteen**: As to Count Thirteen, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 152

Criminal No. 09-427 (JAF)                                                           18 of 29

factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case:

## 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

## 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____

## 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 142

Exhibit 73 - 153

Criminal No. 09-427 (JAF)                                                                    19 of 29

### D.    John Henry García-Martínez (Counts Five and Fourteen)

**Count Five:** As to Count Five, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

#### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

#### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____

#### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

**Count Fourteen:** As to Count Fourteen, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 143

Exhibit 73 - 154

Criminal No. 09-427 (JAF)                                          20 of 29

determine as follows:

### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____

### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment.  We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 144

Exhibit 73 - 155

Criminal No. 09-427 (JAF)                                                   21 of 29

### E.    Elisa del Carmen Ocasio (Counts Six and Fifteen)

**Count Six:** As to Count Six, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____

### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment.  We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 156

Criminal No. 09-427 (JAF)                                                      22 of 29

**Count Fifteen:** As to Count Fifteen, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____✓_____

### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____✓_____

### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS                    Page 146
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 157

Criminal No. 09-427 (JAF)                                                                    23 of 29

### F.   Samuel Ruiz-Martínez (Counts Seven and Sixteen)

**Count Seven:** As to Count Seven, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

#### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____✓_____

#### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____✓_____

#### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment.  We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____✓_____

NO _____

**Count Sixteen:** As to Count Sixteen, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)
Page 147

Exhibit 73 - 158

Criminal No. 09-427 (JAF)                                                    24 of 29

factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____

### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 148

Exhibit 73 - 159

Criminal No. 09-427 (JAF)                                          25 of 29

### G.    Rafael Angel Ramos-Rivera (Counts Eight and Seventeen)

**Count Eight:** As to Count Eight, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____

### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

**Count Seventeen:** As to Count Seventeen, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 149

Exhibit 73 - 160

Criminal No. 09-427 (JAF)                                                26 of 29

factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____

### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 161

Criminal No. 09-427 (JAF)                                                          27 of 29

### H.    Tina Marie Rodríguez-Otero (Counts Nine and Eighteen)

**Count Nine:** As to Count Nine, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

#### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____✓_____

#### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____✓_____

#### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES ____✓_____

NO _____

**Count Eighteen:** As to Count Eighteen, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS                    Page 151
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 162

Criminal No. 09-427 (JAF)                                                28 of 29

factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case we determine as follows:

### 1. Death Sentence

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO _____

### 2. Sentence of Life in Prison Without Possibility of Release

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO _____

### 3. Unable to Come to Unanimous Decision

After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the Court will impose a sentence of life imprisonment without the possibility of release.

YES _____

NO _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 152

Exhibit 73 - 163

*United States v. Kaboni Savage, et al.*
No. 2:04-cr-00269-MAK (E.D. Pa.)
Judge Presiding: The Hon. R. Barclay Surrick
(Voir dire began November 5, 2012.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 153

Exhibit 73 - 164

1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :   CRIMINAL NUMBER

V.

KABONI SAVAGE                              :   07-00550

THURSDAY, 5-30-13
COURTROOM 8A
PHILADELPHIA, PA 19106

_____
BEFORE THE HONORABLE R. BARCLAY SURRICK, J.

_____

SENTENCING PHASE - DAY 6

_____

APPEARANCES:

DAVID TROYER, ESQUIRE                  FOR THE GOVERNMENT
JOHN GALLAGHER, ESQUIRE
ASSISTANT UNITED STATES ATTORNEYS
615 CHESTNUT STREET, SUITE 1250
PHILADELPHIA, PA 19106

SUZANNE R. WHITE, RPR, FCRR, CM
OFFICIAL COURT REPORTER
FIRST FLOOR U. S. COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA 19106
(215)627-1882

PROCEEDINGS RECORDED BY STENOTYPE-COMPUTER,
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 154

Exhibit 73 - 165

50

TOTAL NUMBER OF AGGRAVATING FACTORS AND REACH A DECISION BASED UPON THE NUMBER -- A NUMBER WHICH IS GREATER. RATHER, YOU SHOULD CONSIDER AND WEIGH THE VALUE OF EACH FACTOR AND CAREFULLY WEIGH THESE VARIOUS FACTORS. LADIES AND GENTLEMEN, YOU ARE CALLED UPON TO MAKE A UNIQUE, INDIVIDUAL JUDGMENT ABOUT THE SENTENCE THAT THIS DEFENDANT SHOULD RECEIVE.

THE LAW CONTEMPLATES THAT DIFFERENT FACTORS MAY BE GIVEN DIFFERENT WEIGHTS OR VALUES BY DIFFERENT JURORS. SO IF YOU MAY FIND THAT ONE MITIGATING FACTOR OUTWEIGHS ALL AGGRAVATING FACTORS OR THAT THE AGGRAVATING FACTORS PROVEN DO NOT, STANDING ALONE, JUSTIFY THE IMPOSITION OF A SENTENCE OF DEATH BEYOND A REASONABLE DOUBT, YOU MAY INSTEAD FIND THAT A SINGLE AGGRAVATING FACTOR SUFFICIENTLY OUTWEIGHS, BEYOND A REASONABLE DOUBT, ALL MITIGATING FACTORS COMBINED SO AS TO JUSTIFY A SENTENCE OF DEATH.

LADIES AND GENTLEMEN, ANY ONE OF YOU IS FREE TO DECIDE THAT A DEATH SENTENCE SHOULD NOT BE IMPOSED SO LONG AS, BASED ON THE EVIDENCE AND YOUR SENSE OF JUDGMENT, YOU CONCLUDE THAT THE PROVEN AGGRAVATING FACTORS DO NOT SUFFICIENTLY OUTWEIGH THE MITIGATING FACTORS SUCH THAT THE DEATH PENALTY SHOULD BE IMPOSED. EACH JUROR HAS TO INDIVIDUALLY DECIDE WHAT WEIGHT OR VALUE IS TO BE GIVEN TO A PARTICULAR AGGRAVATING OR

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 155

Exhibit 73 - 166

51

MITIGATING FACTOR IN THIS DECISION MAKING PROCESS.

YOU SHOULD BEAR IN MIND, HOWEVER, THAT IN ORDER TO FIND THAT A SENTENCE OF DEATH IS APPROPRIATE FOR A PARTICULAR COUNT, THE JURORS MUST BE UNANIMOUS IN THEIR CONCLUSION, BEYOND A REASONABLE DOUBT, THAT THE AGGRAVATING FACTOR OR FACTORS PROVEN AS TO THAT COUNT SUFFICIENTLY OUTWEIGH THE MITIGATING FACTORS FOUND OR IN THE ABSENCE OF MITIGATING FACTORS THAT THE AGGRAVATING FACTORS ALONE ARE SUFFICIENT TO JUSTIFY A SENTENCE OF DEATH.

NOW IN THE EVENT THAT YOU UNANIMOUSLY FIND BEYOND A REASONABLE DOUBT THAT THE BALANCING PROCESS LEADS YOU TO CONCLUDE THAT A SENTENCE OF DEATH IS CALLED FOR AS TO A PARTICULAR COUNT, PLEASE SO INDICATE ON SECTION 6 OF THE SPECIAL VERDICT FORM.  IF, AFTER ENGAGING IN THE BALANCING PROCESS THAT I HAVE JUST DISCUSSED WITH YOU, ALL 12 MEMBERS OF THE JURY DO NOT UNANIMOUSLY FIND BEYOND A REASONABLE DOUBT THAT THE DEFENDANT SHOULD BE SENTENCED TO DEATH ON A PARTICULAR COUNT, THEN YOU MAY NOT IMPOSE THE DEATH PENALTY ON THAT COUNT.  IN THAT EVENT, LADIES AND GENTLEMEN, CONGRESS HAS PROVIDED THAT LIFE IN PRISON WITHOUT THE POSSIBILITY OF RELEASE IS THE ONLY ALTERNATIVE SENTENCE AVAILABLE. IF YOU CAN NOT UNANIMOUSLY AGREE WHETHER THE DEFENDANT SHOULD BE SENTENCED TO DEATH OR TO LIFE IN PRISON

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 156

Exhibit 73 - 167

52

WITHOUT THE POSSIBILITY OF RELEASE, THE COURT WILL SENTENCE THE DEFENDANT TO LIFE IN PRISON WITHOUT THE POSSIBILITY OF RELEASE.

NOW, LADIES AND GENTLEMEN, BEFORE YOU REACH ANY CONCLUSION BASED ON A LACK OF UNANIMITY ON ANY COUNT, YOU SHOULD CONTINUE YOUR DISCUSSIONS UNTIL YOU ARE FULLY SATISFIED THAT NO FURTHER DISCUSSION WILL LEAD TO A UNANIMOUS DECISION.  IF YOU ARE SATISFIED THAT YOU CANNOT REACH A UNANIMOUS DECISION, PLEASE SO INDICATE THIS FINDING ON THE SPECIAL VERDICT FORM.  AS I HAVE TOLD YOU, SHOULD YOU UNANIMOUSLY DECIDE TO IMPOSE THE DEATH PENALTY OR TO IMPOSE LIFE IN PRISON WITHOUT THE POSSIBILITY OF RELEASE, I AM REQUIRED BY LAW TO ABIDE BY YOUR DECISION AND TO SENTENCE THE DEFENDANT ACCORDINGLY.

NOW, LADIES AND GENTLEMEN, IN YOUR CONSIDERATION OF WHETHER THE DEATH SENTENCE IS APPROPRIATE, YOU MUST NOT CONSIDER THE RACE, COLOR, RELIGIOUS BELIEFS, NATIONAL ORIGIN OR SEX OF EITHER THE DEFENDANT OR THE VICTIMS.  LADIES AND GENTLEMEN, YOU ARE NOT TO RETURN A SENTENCE OF DEATH UNLESS YOU WOULD RETURN A SENTENCE OF DEATH FOR THE CRIME IN QUESTION WITHOUT REGARD TO RACE, COLOR, RELIGIOUS BELIEFS, NATIONAL ORIGIN OR SEX OF EITHER THE DEFENDANT OR THE VICTIM.

LADIES AND GENTLEMEN, TO EMPHASIZE THE

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 157

Exhibit 73 - 168

COPY.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :
                            :    CRIMINAL ACTION
        v.                  :
                            :    NO. 07-550-03
KABONI SAVAGE               :

## SPECIAL VERDICT FORM FOR PENALTY PHASE

This special verdict sheet is supplied to you because you have found Kaboni Savage guilty of counts in the indictment which carry a possible penalty of death. Therefore, this form applies to your findings on Count 2 (murder of Kenneth Lassiter in aid of racketeering), Count 3 (murder of Mansur Abdullah in aid of racketeering), Count 4 (murder of Carlton Brown in aid of racketeering), Count 5 (murder of Barry Parker in aid of racketeering), Count 6 (murder of Tyrone Toliver in aid of racketeering), Count 7 (murder of Tybius Flowers in aid of racketeering), Count 10 (murder of Marcella Coleman in aid of racketeering), Count 11 (murder of Tameka Nash in aid of racketeering), Count 12 (murder of Sean Anthony Rodriguez in aid of racketeering), Count 13 (murder of Tajh Porchea in aid of racketeering), Count 14 (murder of Khadijah Nash in aid of racketeering), Count 15 (murder of Damir Jenkins in aid of racketeering), and Count 16 (retaliating against a witness, victim, or an informant, which resulted in the deaths of Marcella Coleman, Tameka Nash, Sean Anthony Rodriguez, Tajh Porchea, Khadijah Nash, and Damir Jenkins). This form is organized by count. For each count, you are asked to make your findings on the defendant's age, intent, and what, if any, statutory aggravating factors apply to that count.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 158

Exhibit 73 - 169

## Section VI - Determination of Sentences

### Section VI - Determination of Sentence for Count 2: The Murder of Kenneth Lassiter

*In this section, enter your determination of the defendant's sentence with regard to Count 2. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

_____✓_____ We vote unanimously that Kaboni Savage shall be sentenced to death.

_____ We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

_____ We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | 4 |
| 5 | 12 |
| 9 | 6 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON   2013 jurors

Date: 5|31|2013

60

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 170

**Section VI - Determination of Sentence for Count 3:  The Murder of Mansur Abdullah**

*In this section, enter your determination of the defendant's sentence with regard to Count 3. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

_____✓_____     We vote unanimously that Kaboni Savage shall be sentenced to death.

_____     We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

_____     We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| _____1_____ | _____4_____ |
| _____5_____ | _____12_____ |
| _____9_____ | _____6_____ |
| _____2_____ | _____11_____ |
| _____3_____ | _____10_____ |
| _____8_____ | _____7_____ |

FOREPERSON

Date: __5|31|2013__

61

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 160

Exhibit 73 - 171

## Section VI - Determination of Sentence for Count 4: The Murder of Carlton Brown

*In this section, enter your determination of the defendant's sentence with regard to Count 4. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

__✓__    We vote unanimously that Kaboni Savage shall be sentenced to death.

_____    We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

_____    We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | 4 |
| 5 | 12 |
| 9 | 6 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON

Date: 5/31/2013

62

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 172

## Section VI - Determination of Sentence for Count 5: The Murder of Barry Parker

*In this section, enter your determination of the defendant's sentence with regard to Count 5. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

_____✓_____    We vote unanimously that Kaboni Savage shall be sentenced to death.

_____    We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

_____    We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | 4 |
| 5 | 12 |
| 9 | 6 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON

Date: 5/31/2013

63

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 162

Exhibit 73 - 173

## Section VI - Determination of Sentence for Count 6: The Murder of Tyrone Toliver

*In this section, enter your determination of the defendant's sentence with regard to Count 6. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

    √    We vote unanimously that Kaboni Savage shall be sentenced to death.

        We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

        We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | 4 |
| 5 | 12 |
| 9 | 6 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON

Date: 5/31/2013

64

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 163

Exhibit 73 - 174

## Section VI - Determination of Sentence for Count 7: The Murder of Tybius Flowers

*In this section, enter your determination of the defendant's sentence with regard to Count 7. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

    ✓    We vote unanimously that Kaboni Savage shall be sentenced to death.

        We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

        We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | 4 |
| 5 | 12 |
| 9 | 6 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON

Date: 5/31/2013

65

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 164

Exhibit 73 - 175

**Section VI - Determination of Sentence for Count 10: The Murder of Marcella Coleman**

*In this section, enter your determination of the defendant's sentence with regard to Count 10.*
*Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

_____✓_____    We vote unanimously that Kaboni Savage shall be sentenced to death.

_____    We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

_____    We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | A |
| 5 | 12 |
| 9 | 6 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON

Date: 5/31/2013

66

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 165

Exhibit 73 - 176

### Section VI – Determination of Sentence for Count 11: The Murder of Tameka Nash

*In this section, enter your determination of the defendant's sentence with regard to Count 11. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

√    We vote unanimously that Kaboni Savage shall be sentenced to death.

_____    We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

_____    We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | 4 |
| 5 | 12 |
| 9 | 6 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON

Date: 5/31/2013

67

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 166

Exhibit 73 - 177

**Section VI - Determination of Sentence for Count 12: The Murder of Sean Anthony Rodriguez**

*In this section, enter your determination of the defendant's sentence with regard to Count 12. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

_____✓_____   We vote unanimously that Kaboni Savage shall be sentenced to death.

_____   We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

_____   We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | 4 |
| 5 | 12 |
| 9 | 4 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON

Date: 5/31/2013

68

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 167

Exhibit 73 - 178

## Section VI - Determination of Sentence for Count 13: The Murder of Tajh Porchea

*In this section, enter your determination of the defendant's sentence with regard to Count 13. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

_____✓_____    We vote unanimously that Kaboni Savage shall be sentenced to death.

_____    We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

_____    We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | 4 |
| 5 | 12 |
| 9 | 6 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON

Date: 5/31/2013

69

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 168

Exhibit 73 - 179

**Section VI - Determination of Sentence for Count 14: The Murder of Khadijah Nash**

*In this section, enter your determination of the defendant's sentence with regard to Count 14. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

_____√_____ We vote unanimously that Kaboni Savage shall be sentenced to death.

_____ We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

_____ We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | 4 |
| 5 | 12 |
| 9 | 6 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON

Date: 5/31/2013

70

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Exhibit 73 - 180

## Section VI - Determination of Sentence for Count 15: The Murder of Damir Jenkins

*In this section, enter your determination of the defendant's sentence with regard to Count 15. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

___√___    We vote unanimously that Kaboni Savage shall be sentenced to death.

_____    We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

_____    We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | 4 |
| 5 | 12 |
| 9 | 6 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON

Date: 5/31/2013

71

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH (August 31, 2023)

Page 170

Exhibit 73 - 181

**Section VI - Determination of Sentence for Count 16:  Retaliation Against A Witness By Committing The Murders Of Marcella Coleman, Tameka Nash, Sean Anthony Rodriguez, Tajh Porchea, Khadijah Nash, and Damir Jenkins**

*In this section, enter your determination of the defendant's sentence with regard to Count 16. Your vote as a jury must be unanimous with regard to each question in this section.*

Based upon consideration of whether the statutory and non-statutory aggravating factors which were proved in this case beyond a reasonable doubt sufficiently outweigh any mitigating factors that have been found to exist, or, in the absence of any mitigating factors, the aggravating factor(s) alone is/are sufficient to justify a sentence of death:

_____✓_____   We vote unanimously that Kaboni Savage shall be sentenced to death.

_____   We vote unanimously that Kaboni Savage shall be sentenced to life imprisonment without the possibility of release.

_____   We cannot reach a unanimous decision regarding the appropriate punishment in this case. One or more of us believes that death by execution is the appropriate punishment, and one or more of us believes that life in prison without any possibility of release is the appropriate punishment. We understand that because we do not unanimously agree, the Court will sentence Kaboni Savage to life in prison without any possibility of release.

*Each juror must sign his/her juror number below, indicating that the above sentence determination reflects the jury's unanimous decision:*

| | |
|---|---|
| 1 | 4 |
| 5 | 12 |
| 9 | 6 |
| 2 | 11 |
| 3 | 10 |
| 8 | 7 |

FOREPERSON

Date: 5/31/2013

72

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 171

Exhibit 73 - 182

*United States v. Edison Burgos-Montes*
No. 3:06-cr-00009-JAG (D.P.R.)
Judge Presiding: The Hon. Jay A. Garcia-Gregory
(Voir dire began April 16, 2012.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 172

Exhibit 73 - 183

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff,

v.

Crim. No. 06-09(JAG)

EDISON BURGOS MONTES,                                    /
Defendant.                                              /

----------------------------------------------------

### SPECIAL VERDICT FORM

### I.    AGE OF DEFENDANT

Instructions; Answer "YES" or "NO."

1.      Do you, the jury, unanimously find that the government has established beyond a reasonable doubt that:

Edison Burgos Montes was eighteen years (18) of age or older at the time of the offenses charged under Counts Three and Four.

YES ___X___

NO _____

REDACTED _____
Foreperson

Instructions: If you answered "NO" with respect to the determination in this section, then stop your deliberations, cross out Sections II, III, IV and V of this form, and proceed to Sections VI B. and VII. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision. You should then advise the court that you have reached a decision.

If you answered "YES" with respect to the determination in this Section I, proceed to Section II which follows.

1

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 173

Exhibit 73 - 184

## VI.    DETERMINATION

**Count Three**: As to Count Three, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case:

A.            <u>Death Sentence</u>

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO ___ X ___

If you answer "YES," the foreperson must sign here, and you must then proceed to Count Four below. If you answer "NO," the foreperson must sign, and you must then proceed to Question B immediately below.

**REDACTED**
_____
Foreperson

B.            <u>Sentence of Life in Prison Without Possibility of Release</u>

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO ___ X ___

If you answer "YES," the foreperson must sign here, and then you must proceed to Count Four below. If your answer is "NO", the foreperson must sign and you must then proceed to Question C immediately below.

**REDACTED**
_____
Foreperson

C.            <u>Unable to Reach a Unanimous Decision</u>

After deliberations consistent with Jury Instruction #2, we are unable to reach a unanimous vote as to a sentence of death or a sentence of life imprisonment. We

9

Exhibit 73 - 185

**CRIM. NO. 06-ᴗᴗ (ᴗᴀᴗ)**                                                                                    10

understand that the Court will impose a sentence of life imprisonment without possibility
of release.

YES __X__

If you answer "YES" the foreperson must sign here.

**REDACTED**
Foreperson

10

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 175

Exhibit 73 - 186

**Count Four:** As to Count Four, based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or whether the mitigating factors outweigh the aggravating factors, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death or life in prison without the possibility of release is the appropriate sentence in this case:

A.    <u>Death Sentence</u>

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES _____

NO ___X___

If you answer "YES," the foreperson must sign here. If you answer "NO," the foreperson must sign, and you must then proceed to Question B immediately below.

**REDACTED**
_____
Foreperson

B.    <u>Sentence of Life in Prison Without Possibility of Release</u>

We determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed.

YES _____

NO ___X___

If you answer "YES," the foreperson must sign here. If your answer is "NO", the foreperson must sign and you must then proceed to Question C immediately below.

**REDACTED**
_____
Foreperson

C.    <u>Unable to Reach a Unanimous Decision</u>

After deliberations consistent with Jury Instruction #2, we are unable to reach a unanimous vote as to a sentence of death or a sentence of life imprisonment. We understand that the Court will impose a sentence of life imprisonment without possibility of release.

11

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 176

Exhibit 73 - 187

**CRIM. NO. 06-09 (JAG)**                                                                12

YES ___X___

If you answer "YES" the foreperson must sign here.

**REDACTED**
_____  ___   _____ Foreperson

After completing section VI, please proceed to section VII.

1 **REDACTED**

2 **REDACTED**

3 -**REDACTED**

4 **REDACTED**

5 **REDACTED**

6. **REDACTED**

7 . **REDACTED**

8 -**REDACTED**

9 **REDACTED**

10. **REDACTED**

11 — **REDACTED**

12. **REDACTED**

12

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 177

Exhibit 73 - 188

Exhibit 73 - 189

*United States v. Brian Richardson*
No. 1:08-cr-139-CC (N.D. Ga.)
Judge Presiding: The Hon. Clarence Cooper
(Voir dire began February 27, 2012.)

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


UNITED STATES OF AMERICA,          )
                                   )
                                   )
-vs-                               )  Indictment No. 1:08-CR-139-CC
                                   )
                                   )  Excerpt:  Jury Charge
BRIAN RICHARDSON,                  )            Penalty Phase
          Defendant.               )


                Transcript of the Jury Charge Proceedings
                  Before the Honorable Clarence Cooper,
                United States District Court Senior Judge
                            April 24, 2012
                            Atlanta, Georgia


APPEARANCES OF COUNSEL:

On behalf of
the Government:        William L. McKinnon, Esq.
                       Richard Moultrie, Esq.
                       Tasheika Hinson, Esq.
                       Assistant United States Attorneys

                       Robert E. Burns,
                       Department of Justice

On behalf of
the Defendant:         Stephanie A. Kearns, Esq.
                       Brian Mendelsohn, Esq.
                       Thomas J. Waldrop, Esq.
                       Kimberly Sharkey, Esq.


Amanda Lohnaas, RMR, CRR
Official Court Reporter
United States District Court
Atlanta, Georgia
(404) 215-1546

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)                                                  Page 179

Exhibit 73 - 190

factors against each other or weighing aggravating factors alone, if there are no mitigating factors, in order to determine the proper punishment is not a mechanical process. In other words, you should not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater; you should instead consider the weight and value of each factor.

The law contemplates that different factors may be given different weights or values by different jurors. Thus, you may find that one mitigating factor outweighs all aggravating factors combined, or that the aggravating factors proven do not, standing alone, justify imposition of a sentence of death. Similarly, you may unanimously find that a particular aggravating factor sufficiently outweighs all mitigating factors combined so as to justify a sentence of death. Each juror must decide what weight or value to be given a particular aggravating or mitigating factor in the decision-making process. In other words, it is not arithmetic -- it is not an arithmetic analysis but a qualitative weighing.

Ladies and gentlemen, in addition, you have the discretion to temper justice with mercy. Any one of you is free to decide that a death sentence should not be imposed in this case for any relevant, mitigating reason you see fit.

Ladies and gentlemen of the jury, you can consider all

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 180

Exhibit 73 - 191

the evidence that was presented in the guilt phase of the trial as well as the sentencing phase of the trial in deciding on the penalty.

You will decide the credibility of the witnesses as you did in the guilt phase of the trial, in accordance with the same instructions I gave you then.  You must consider all of the evidence but you need not accept all of the evidence as true or accurate.

Ladies and gentlemen of the jury, if you unanimously determine that the aggravating factor or factors found to exist sufficiently outweigh the mitigating factor or factors, or in the absence of any mitigating factors, that the aggravating factor or factors alone are sufficient to justify a sentence of death, you shall record your determination that death is justified on the special verdict form.

Ladies and gentlemen of the jury, if you unanimously determine that the aggravating factor or factors found to exist do not sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or in the absence of any mitigating factors, that the aggravating factor or factors alone are not sufficient to justify a sentence of death, you shall record your determination that the defendant be sentenced to life imprisonment without the possibility of release on the special verdict form.  In the federal system, a sentence of

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 181

Exhibit 73 - 192

life imprisonment without the possibility of release means just that:  the defendant will never be released from prison. There is no parole in the federal system.

Ladies and gentlemen, if all 12 members of the jury cannot unanimously find either that defendant should be sentenced to life imprisonment without possibility of release or to death, then you should indicate this circumstance on the special verdict form.  Before you reach any conclusion based on lack of unanimity, you should continue your discussions until you are fully satisfied that no further discussions will lead to a unanimous decision.

Ladies and gentlemen of the jury, at the end of your deliberations, if you unanimously determine that the defendant should be sentenced to death, or to life imprisonment without possibility of release, the Court is required by law to abide by your decision and to impose that sentence.

I also remind you, ladies and gentlemen, that you are never required to vote for a death sentence.  The decision whether the sentence should be death or life imprisonment without possibility of release must be the decision of each juror.

In the event that you cannot unanimously determine either that defendant should be sentenced to death or to life imprisonment without possibility of release, Congress has

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 182

Exhibit 73 - 193

provided that the Court will impose the mandatory sentence of life imprisonment without any possibility of release.

Ladies and gentlemen of the jury, finally, in your deliberations as to the sentence, you must not consider the race, color, religious beliefs, national origin, or sex of either the defendant or the victim.  Whatever decision you return, each of you is required by law to sign a certification attesting to the fact that you have followed this instruction.  You must be convinced in your own mind that you would have reached the same decision regarding the sentence regardless of the race, color, religious beliefs, national origin, or sex of either the defendant or the victim.

You will be asked to individually certify such with your signature at the end of the special verdict form.  Each juror should carefully read the certification statement and sign your name in the appropriate place if the statement accurately reflects the manner in which each of you reached your individual decision.

Ladies and gentlemen of the jury, I have prepared a form entitled Special Verdict Form to assist you during your deliberations.  You are required to record your decisions on this form.

Section I of the Special Verdict Form contains space to record your findings on the defendant's age; Section II

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 183

Exhibit 73 - 194

contains space to record your findings on the requisite intent factor; Section III contains space to record your finding on statutory aggravating factors; Section IV contains space to record your findings on nonstatutory aggravating factors; Section V contains space to record your findings on mitigating factors; Section VI contains space to record your sentence determination; and Section VII contains a nondiscrimination certification each juror must read and sign.  You are each required to sign the Special Verdict Form.

Ladies and gentlemen of the jury, if you should desire to communicate with me at any time during your deliberations, please write down your message or question and pass the note to the court security officer, who will bring it to my attention.

I shall respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.

I caution you, however, concerning any message or question you might send, that you should not tell me any details of your deliberations or how many of you are voting a particular way on any issue.

When you have reached a decision, send me a note signed by your foreperson that you have completed your deliberations.  Do not indicate what your determination is in

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 184

Exhibit 73 - 195

the note.

Whichever of the possible sentencing determinations you reach, the foreperson must complete the Special Verdict Form accordingly and be prepared to report to the Court the jurors' findings as to the intent, aggravating and mitigating factors, and the sentencing decision.  The foreperson will sign where indicated; all jurors will sign the sentence determination and the certification sections.

Ladies and gentlemen of the jury, let me remind you again that nothing that I have said in these instructions, and nothing that I have said or done during the trial, has been said or done to suggest to you what I think your decision should be.  What the decision should be is your exclusive duty and responsibility.

Ladies and gentlemen of the jury, at this time you may retire to the jury room to begin your deliberations.

* * * * *

(End of excerpt.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 185

Exhibit 73 - 196

FILED IN OPEN COURT
U.S.D.C   Atlanta

APR 2 6 2012

JAMES N. HATTEN
By Valencia Shaw Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA      )
                              )
        v.                    )      CRIMINAL ACTION
                              )      NO. 1:08-CR-139 (CC)
                              )
BRIAN RICHARDSON              )
_____)

<u>VERDICT</u>

**Part I. FINDINGS ON AGE OF DEFENDANT**

(A)  We the jury unanimously find beyond a reasonable doubt that
the defendant, Brian Richardson, was at least 18 years-old on
July 8, 2007.

_____
Foreperson

OR

(B)  We the jury unanimously find beyond a reasonable doubt that
the defendant, Brian Richardson,  was not at least 18 years-
old on July 8, 2007.

_____
Foreperson

(If you do find that the government has not proven that Mr.
Richardson was at least 18 years-old on July 8, 2007, report this
to the Court and your deliberations are concluded.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 186

Exhibit 73 - 197

PART VI.    DECISION FORMS

14

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 187

Exhibit 73 - 198

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION |
| | ) | NO. 1:08-CR-139 (CC) |
| | ) | **DECISION FORM FOR** |
| BRIAN RICHARDSON | ) | **UNANIMOUS SENTENCE OF** |
| | ) | **DEATH** |

We, the jury, as to BRIAN RICHARDSON, unanimously find that
BRIAN RICHARDSON shall be sentenced to death.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____
FOREPERSON


_____
Date


15

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 188

Exhibit 73 - 199

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL ACTION
) NO. 1:08-CR-139 (CC)
) **DECISION FORM FOR**
BRIAN RICHARDSON ) **UNANIMOUS SENTENCE OF**
_____) **LIFE WITHOUT RELEASE**

We, the jury, as to BRIAN RICHARDSON, do unanimously agree that BRIAN RICHARDSON should be sentenced to life imprisonment without possibility of release. Therefore, we hereby decide that BRIAN RICHARDSON should be sentenced to life imprisonment without possibility of release.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____
FOREPERSON

_____
Date

16

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 189

Exhibit 73 - 200

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA    )
                            )
            v.              )        CRIMINAL ACTION
                            )        NO. 1:08-CR-139 (CC)
                            )        **DECISION FORM FOR**
BRIAN RICHARDSON            )        **NON-UNANIMOUS SENTENCE OF**
_____)        **LIFE WITHOUT RELEASE**

We, the jury, having considered and evaluated the evidence presented in light of the instructions of the Court, are not unanimously persuaded on the appropriate sentence.



FOREPERSON

4/26/2012
Date

17

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 190

Exhibit 73 - 201

Exhibit 73 - 202

*United States v. Larry Lujan*
No. 2:05-cr-00924-RB (D.N.M.)
Judge Presiding: The Hon. Robert C. Brack
(Voir dire began June 20, 2011.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 191

IN THE UNITED STATES DISTRICT COURT

**FILED**
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

FOR THE DISTRICT OF NEW MEXICO

OCT - 5 2011
at 5:00 m

MATTHEW J. DYKMAN
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CR 05-0924 RB |
| | ) | |
| LARRY LUJAN, | ) | |
| | ) | |
| Defendant. | ) | |

## COURT'S JURY INSTRUCTIONS

## PENALTY SELECTION PHASE

10.04.11

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 192

Exhibit 73 - 203

## INSTRUCTION NO. 11

After completing your findings regarding aggravating and mitigating factors, you must engage in a weighing process to determine whether a sentence of death is justified. In this process, you must consider only those aggravating factors, statutory and non-statutory, that you unanimously found to exist. Each of you must also consider any mitigating factors that you individually found to exist, and you each may consider any mitigating factors found by any of the other jurors. You must determine whether the proven aggravating factor or factors sufficiently outweigh any proven mitigating factor or factors to justify a sentence of death.

The task of weighing aggravating and mitigating factors against each other, or weighing aggravating factors alone if there are no mitigating factors, is not a mechanical process. You should not simply count the number of factors, but consider the particular character of each, which may be given different weight or value by different jurors. What constitutes sufficient justification for a sentence of death in this case is exclusively left to you. Your role is to make a reasoned moral judgment. Whatever aggravating and mitigating factors are found, a jury is never required to conclude the weighing process in favor of a sentence of death. But your decision must be a reasoned one, free from the influence of passion, prejudice, or arbitrary consideration.

If you do not unanimously find that the aggravating factor or factors sufficiently outweigh the mitigating factor or factors to justify a sentence of death – or in the absence of any mitigating factor, that the aggravating factor or factors, considered alone, justify a sentence of death – answer "no" on the Special Findings Form, sign Verdict - Life

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 193

Exhibit 73 - 204

Imprisonment, and certify your decision as described in Section V of the Form, which will end your deliberations. If you unanimously find that the comparative weight of the aggravating factor or factors is sufficient to justify a sentence of death, answer "yes" on the Special Findings Form, sign Verdict - Sentence of Death, and certify your decision as described in Section V of the Form.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 194

Exhibit 73 - 205

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

OCT - 5 2011
5:00pm

MATTHEW J. DYKMAN
CLERK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,        )
                                 )
         Plaintiff,              )
                                 )
                                 )        **Criminal No. 05-924 RB**
vs.                              )
                                 )
LARRY LUJAN,                     )
                                 )
         Defendant.              )

Redacted

**SPECIAL FINDINGS FORM FOR**
**SELECTION PHASE**

I.    **Non-Statutory Aggravating Factors**

The government has alleged that the following non-statutory aggravating factors are

present in this case. For each factor, answer "yes" or "no" according to whether you

unanimously find that the government proved the existence of the factor beyond a reasonable

doubt:

A.    **Future Dangerousness**

Do you unanimously find that the government has proved beyond a reasonable doubt that

the defendant represents a continuing danger to the lives and safety of other persons and is likely

to commit criminal acts of violence in the future that would constitute a continuing and serious

threat to the lives and safety of others, as evidenced by at least one or more of the following?

YES  ✓                          NO  _____

1. **Continuing Pattern of Violence**

Do you unanimously find that the defendant has engaged in a continuing pattern of

violence, attempted violence, and threatened violence, based upon your earlier finding of guilt on

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 195

Exhibit 73 - 206

_Issues, for example, his children's welfare_

When you have completed your findings regarding mitigation, proceed to the next Section (III) of this Form, where you will weigh the aggravating factors with the mitigating factors, if any, that you have found to be present in this case.

## III.   Weighing Process

The question you must answer at this stage of your deliberations is whether the proven aggravating factors sufficiently outweigh the proven mitigating factors and information to justify a sentence of death or, if you have not found any mitigation present, whether the aggravating factors considered alone justify a death sentence. If you unanimously find that the weight of the aggravating factors is sufficient to justify a sentence of death, answer "yes" below, record your verdict on the attached Verdict – Sentence of Death, certify your decision as described in Section V, and notify the court that you have reached a decision. If you do not unanimously find that a death sentence is justified, answer "no" below, stop your deliberations, sign the attached Verdict – Life Imprisonment, certify your decision as described in section V, and notify the court that you have reached a decision.

YES _____          NO _✓_

## IV.   Imposition of Sentence

This is the last step in your deliberations. If you have made all of the findings necessary and have unanimously concluded that a sentence of death is justified and therefore must be imposed on the defendant, record your decision by collectively signing the verdict set out in Verdict – Sentence of Death below, sign the certification that follows in Section V, and notify the court that you have reached a decision. If you do not unanimously conclude that a sentence of

Exhibit 73 - 207

death is justified and therefore must be imposed, sign the verdict for life imprisonment set out in Verdict – Life Imprisonment below, sign the certification in Section V, and notify the court that you have reached a decision.

## V.    Certification

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or gender of the defendant or the victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same decision regarding the appropriate sentence for the offense in question regardless of the race, color, religious beliefs, national origin, or gender of the defendant or the victim.

FOREPERSON

Date: _____10/5/11_____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 197

Exhibit 73 - 208

## VERDICT – SENTENCE OF DEATH

Based upon our consideration of the evidence and in accordance with the court's

instructions, we find by unanimous vote that a sentence of death shall be imposed on the

defendant.

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____
                                                              FOREPERSON

                                        Date: _____

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 198

Exhibit 73 - 209

## VERDICT – LIFE IMPRISONMENT

Based upon our consideration of the evidence and in accordance with the court's

instructions, we find that a sentence of life imprisonment without release shall be imposed on the

defendant.

*Let it be known that this verdict was not unanimous*

FOREPERSON

Date: ___10/5/11___

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 199

Exhibit 73 - 210

*United States v. Azibo Aquart*
3:06-CR-00160-SRU (D. Conn.)
Judge Presiding: The Hon. Stefan R. Underhill
(Voir dire began April 6, 2011.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 200

Exhibit 73 - 211

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America <br><br> *v.* <br><br> Azibo Aquart. | Criminal No. 3:06cr160 (JBA) |

**PENALTY PHASE JURY INSTRUCTIONS**

**INTRODUCTION**............................................................ 1

    Burden of Proof.......................................................... 2

    Evidence.................................................................. 5

    Expert Witnesses......................................................... 6

**DELIBERATIVE PROCESS.**.................................................. 7

    Finding as to Defendant's Age............................................ 9

    Finding a Threshold Mental State Factor................................. 10

    Statutory Aggravating Factors........................................... 13

    Non–Statutory Aggravating factors...................................... 23

    Mitigating Factors....................................................... 28

    Weighing Aggravation and Mitigation.................................... 33

    Determination of Sentence............................................... 36

**DUTY TO DELIBERATE**.................................................... 37

**JUSTICE WITHOUT DISCRIMINATION**.................................... 38

**SPECIAL VERDICT FORM.**................................................. 39

**CONCLUSION**............................................................. 40

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 201

Exhibit 73 - 212

Although Congress has left it wholly to you, the jury, to decide Defendant Azibo Aquart's punishment, it has narrowed and channeled your discretion in specific ways, by requiring that you consider and weigh any "aggravating" and "mitigating" factors proved in this case. These factors have to do with the circumstances of the crime, the personal traits, character, or background of Defendant Azibo Aquart, or anything else relevant to the sentencing decision. "Aggravating factors" are those that would tend to support imposition of the death penalty. By contrast, "mitigating factors" are those that suggest that life in prison without the possibility of release is the appropriate sentence in this case.

Your task is not simply to decide what aggravating and mitigating factors have been shown to exist. Rather, you are called upon to evaluate any such factors and to make a unique, individualized choice between the death penalty and life in prison without the possibility of release. The law does not assume that any defendant such as Azibo Aquart found guilty of premeditated murder should be sentenced to death. Thus, your decision on the question of his punishment is a uniquely personal, moral judgment which the law leaves up to each of you. However, the decision to impose the death sentence on Defendant Azibo Aquart must be a unanimous decision. If all twelve of you do not unanimously agree that a sentence of death should be imposed on a particular count, then the sentence will be life imprisonment without the possibility of release on that count.

2

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 202

Exhibit 73 - 213

### 6. Weighing Aggravation and Mitigation

If, and only if, you unanimously find that the Government has proven beyond a reasonable doubt the existence of a threshold mental state factor and at least one statutory aggravating factor, with regard to any count, and after you have considered whether the Government has proved any non-statutory aggravating factor, and after you have determined whether Azibo Aquart has proven by a preponderance of the evidence the existence of any mitigating factors, *then* you must engage in a weighing process. This weighing process asks whether you are unanimously persuaded, beyond a reasonable doubt, that the aggravating factors sufficiently outweigh any mitigating factors or, in the absence of any mitigating factors, that the aggravating factors are in and of themselves sufficient to justify a sentence of death. Each juror must individually decide whether under all the facts and circumstances in this case a sentence of death has been proved justified.

You are to conduct this weighing process separately with regard to each of the counts for which you have found the mental state element and at least one statutory aggravating factor. The specific offenses in the counts for which you are considering the sentence are not aggravating factors and thus may not be considered themselves as aggravating factors in your weighing process. This means, for example, that the fact that Count Two charges a murder in aid of racketeering while Count Five charges a drug-related murder are not aggravating factors to be weighed in the balancing to decide what the sentence should be on those two counts since both counts relate to the death of Tina Johnson.

33

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 203

Exhibit 73 - 214

You must independently weigh the aggravating factor or factors that you unanimously found to exist, and each of you must weigh any mitigating factors that you individually or with others found to exist. Remember, you are not to weigh the threshold mental state factors as any part of this process, nor any aggravating factor you did not find proved, nor the nature of the specific counts of conviction. In engaging in the weighing process, you must avoid any influence of passion, prejudice, or any other arbitrary consideration. Your deliberations should be based on the evidence you have seen and heard, and the law on which I have instructed you.

The process of weighing aggravating and mitigating factors, or weighing aggravating factors alone if you find no mitigating factors, in order to determine if a death sentence is justified, is by no means a mechanical process. In other words, you should not simply count the total number of aggravating and mitigating factors and reach a decision based on which number is greater; rather, you should consider the weight and value of each factor.

The law contemplates that different factors may be given different weights or values by different jurors. Thus, you may find that one mitigating factor outweighs all aggravating factors combined, or that the aggravating factors proved do not, standing alone, justify imposition of a sentence of death beyond a reasonable doubt. Similarly, you may instead find beyond a reasonable doubt that a single aggravating factor sufficiently outweighs all mitigating factors combined so as to justify a sentence of death. Each juror is to decide individually what weight or value is to be given to a particular aggravating or mitigating factor in the decision-making process. If you do not unanimously determine

34

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 204

Exhibit 73 - 215

beyond a reasonable doubt that the aggravating factors sufficiently outweigh mitigating factors so as to justify a death sentence as to any count, you may not consider the death penalty for that count. You will reflect your determination in Section VI.

Remember that even a finding that the aggravating factor(s) sufficiently outweigh the mitigating factors to *justify* a sentence of death does not *require* that you impose a sentence of death; there is never any requirement that a death sentence be imposed. Your determination of what sentence shall be imposed will be the result of your carefully weighing these various factors, and making a unique, individual judgment about the sentence that is appropriate for Defendant Azibo Aquart.

35

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 205

Exhibit 73 - 216

### 7. Determination of Sentence

Whether or not the circumstances in this case persuade you that a sentence of death is called for is a decision that the law leaves entirely to you. Remember that before a sentence of death can be imposed, all 12 jurors must agree that beyond a reasonable doubt death is in fact the appropriate sentence, knowing as I have told you, no juror is ever required by the law to impose a death sentence. The decision is yours as individuals to make. Any one of you may decline to impose a death sentence. You do not have to give a reason for your decision. The law has given each of you the discretion to temper justice with mercy.

Bear in mind that in order to find that a sentence of death should be imposed on Defendant Azibo Aquart, the jurors must first have unanimously concluded that beyond a reasonable doubt a death sentence is justified because the aggravating factor or factors sufficiently outweigh any mitigating factors, as I discussed earlier. However, once it is imposed, I cannot change it. I will have no discretion, and I must then sentence the Defendant to death.

If you unanimously determine that Defendant Azibo Aquart shall be sentenced to life imprisonment without possibility of release, record that determination in Section VII of the Special Verdict Form; if you unanimously determine that Defendant Azibo Aquart shall be sentenced to death, record that determination in Section VII of the Special Verdict Form.

36

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 206

Exhibit 73 - 217

### Duty to Deliberate

It is your duty as jurors to discuss the issue of punishment with one another in an effort to reach agreement, if you can do so.  However, each of you must decide the question of punishment for yourselves, but only after full consideration of the evidence with the other members of the jury and respectful consideration of their views.  While you are discussing this matter, do not hesitate to re-examine your own opinion, and to change your mind if you become convinced that you are wrong.  But do not give up your honest beliefs as to the weight or the effect of the evidence or the appropriate sentence for Azibo Aquart solely because others think differently, or simply to get the case over with.

37

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 207

Exhibit 73 - 218

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| United States of America | |
|---|---|
| v. | Criminal No. 3:06cr160 (JBA) |
| Azibo Aquart. | |

## SPECIAL VERDICT FORM (Penalty Phase)

**Section I:    Finding as to Defendant's Age**

Do you, the jury, unanimously find beyond a reasonable doubt that Defendant Azibo Aquart was at least 18 years of age on August 24, 2005?

YES ☒                    NO ☐

*If you indicated "yes," proceed to Section II.*

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 208

Exhibit 73 - 219

**Section VII:    Determination of Sentence**

### Count Two (Tina Johnson)

__X__    We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to death.

_____    We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to life imprisonment without the possibility of release.

### Count Five (Tina Johnson)

__X__    We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to death.

_____    We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to life imprisonment without the possibility of release.

### Count Three (James Reid)

_____    We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to death.

_____    We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to life imprisonment without the possibility of release.

__X__    We are unable to reach a unanimous verdict in favor of a death sentence or a life sentence.

### Count Six (James Reid)

_____    We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to death.

_____    We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to life imprisonment without the possibility of release.

__X__    We are unable to reach a unanimous verdict in favor of a death sentence or a life sentence.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 209

Exhibit 73 - 220

### Count Four (Basil Williams)

  We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to death.

_____  We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to life imprisonment without the possibility of release.

### Count Seven (Basil Williams)

  We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to death.

_____  We, the jury, unanimously find that Defendant Azibo Aquart should be sentenced to life imprisonment without the possibility of release.

*Each juror must sign his or her name and juror number below, indicating that the above sentence determinations reflect the jury's unanimous decisions:*



*The foreperson shall indicate the date of signing:*

June ___15___, 2011

*Go to Section VIII.*

13

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 210

Exhibit 73 - 221

*United States v. Timothy O'Reilly*
No. 2:05-cr-80025-VAR-1 (E.D. Mich.)
Judge Presiding: The Hon. Victoria A. Roberts
(Voir dire began June 8, 2010.)

Exhibit 73 - 222

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                                        Case No. 05-80025

        -vs-

TIMOTHY DENNIS O'REILLY,                 Detroit, Michigan

            Defendant.                   August 24, 2010

----------------------------/

            TRANSCRIPT OF TRIAL - VOLUME 25

        BEFORE THE HONORABLE VICTORIA A. ROBERTS

    UNITED STATES DISTRICT COURT JUDGE, and a Jury.


APPEARANCES:


For the Government:              MARK CHASTEEN, Esq.

                                 KENNETH CHADWELL, Esq.

                                 MARGARET SMITH, Esq.

For the Defendant:               RICHARD KAMMEN, Esq.

                                 HAROLD GUREWITZ, Esq.

                                 AMY PAREKH, Esq.



Proceedings taken by mechanical stenography, transcript

produced by computer-aided transcription

JANICE COLEMAN, CSR/RPR
OFFICIAL FEDERAL COURT REPORTER
(313) 964-5066

Exhibit 73 - 223

2:05-cr-80025-VAR-RSW   Doc # 746   Filed 05/26/11   Pg 84 of 98   Pg ID 11357        84

Similarly, you may unanimously find that a particular statutory or nonstatutory aggravating factor sufficiently outweighs all mitigating factors combined to justify a sentence of death.  Each juror must decide what weight or value to give to a particular factor in the weighing process.

After each of the jurors -- after each juror individually engages in the weighing process, the Jury should then vote on whether Mr. O'Reilly should be sentenced to death or to life in prison without the possibility of release. If you unanimously find that the aggravating factor sufficiently outweighs any mitigators to justify a sentence of death, the Court will impose the death penalty.

In the absence of my mitigating factors, if you unanimously find that the aggravators alone justify a sentence of death, the Court will impose the death penalty. If any of you, even a single juror is not persuaded that the aggravating factors sufficiently outweigh any mitigating factor such that  a sentence of death is justified, Mr. O'Reilly will be sentenced to life in prison without the possibility of release.

If you find after thorough deliberation and the consideration and the views of your fellow jurors that you are not unanimous in your views, you have nevertheless reached a verdict and that verdict is that the Government did not meet its burden and the death penalty is not justified.  In that case, the Court will sentence Mr. O'Reilly to life in prison without the possibility of release.

Ladies and gentlemen, regardless of your findings regarding aggravating or mitigating factors you are never required to impose the death penalty.  Indeed, you may decline to impose the death penalty without giving a reason for that decision.  A jury is never required to conclude the weighing process in favor of a sentence of death, but your decision must be a reasoned one free from the influence of passion, prejudice or arbitrary consideration.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 224

2:05-cr-80025-VAR-RSW   Doc # 635   Filed 08/25/10  Pg 1 of 29   Pg ID 5805



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

           **Plaintiff(s),**

**v.**

**D-1 TIMOTHY DENNIS O'REILLY,**

           **Defendant(s).**
_____/

**CASE NUMBER: 05-80025**
**HONORABLE VICTORIA A. ROBERTS**

### SPECIAL VERDICT FORM

### SECTION I:  AGE OF THE DEFENDANT

Do you, the jury, unanimously find that the Government proved beyond a reasonable doubt that:

TIMOTHY O'REILLY was at least 18 years old at the time he committed the offenses charged in Counts 2 and 3 of the Second Superseding Indictment?

Because the parties stipulated to this fact, you must answer "YES," and proceed to Section II.

YES __✓__

NO _____

1

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 214

Exhibit 73 - 225

## SECTION VI - A: RECOMMENDATION TO SENTENCE TIMOTHY O'REILLY TO LIFE IN PRISON WITHOUT THE POSSIBILITY OF RELEASE

As to TIMOTHY O'REILLY, we, unanimously find that the proven aggravating factor(s) do(es) not sufficiently outweigh the mitigating factor(s) found to exist; or, in the absence of any mitigating factors, we, unanimously find that the aggravating factors in themselves do not justify a sentence of death. Therefore, we unanimously recommend that TIMOTHY O'REILLY be sentenced to life in prison without the possibility of release.

<u>Count 2</u>

YES _____

NO \_\_\_✓\_\_\_\_

<u>Count 3</u>

YES _____

NO \_\_✓\_\_\_\_\_

Instructions: If you answer "YES," you must sign here and proceed to Section VII. If you answer "NO," you must proceed to Section VI - B.

So say we all, this _____ day of _____, 2010.

Name: _____    Name: _____

Name: _____    Name: _____

Name: _____    Name: _____

24

Exhibit 73 - 226

**Name:** _____

**Name:** _____

**Name:** _____

**Name:** _____

**Name:** _____

**Name:** _____

25

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 216

Exhibit 73 - 227

## SECTION VI - B: RECOMMENDATION TO SENTENCE TIMOTHY O'REILLY TO DEATH

As to TIMOTHY O'REILLY, we, unanimously find that the proven aggravating factor(s) sufficiently outweigh(s) the mitigating factor(s) found to exist; or, in the absence of mitigating factors, we unanimously find that the aggravating factors themselves justify a sentence of death. Therefore, we unanimously recommend that a death sentence be imposed on TIMOTHY O'REILLY.

<u>Count 2</u>

YES _____

NO ____✓____

<u>Count 3</u>

YES _____

NO ____✓____

<u>Instructions</u>: If you answer "YES," you must sign here and proceed to Section VII. If you answer "NO," you must proceed to Section VI - C.

So say we all, this _____ day of _____, 2010.

_____          _____
Name:                               Name:

_____          _____
Name:                               Name:

_____          _____
Name:                               Name:

26

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 217

Exhibit 73 - 228

Name: _____          Name: _____

Name: _____          Name: _____

Name: _____          Name: _____

27

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 229

2:05-cr-80025-VAR-RSW   Doc # 635   Filed 08/25/10   Pg 28 of 29   Pg ID 5832

## SECTION VI - C; NO UNANIMOUS SENTENCING RECOMMENDATION

We, the jury, are unable to reach a unanimous sentencing recommendation either in favor of a sentence of life in prison without the possibility of release, or in favor of a death sentence.

Count 2

YES _____✓_____

NO _____

Count 3

YES _____✓_____

NO _____

Instructions: If you answer "YES," you must sign here and proceed to Section VII.

So say we all, this _25th_ day of _August_, 2010.

S/Jury Foreperson
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal
S/Juror
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal
S/Juror
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal

S/Juror
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal
S/Juror
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal
S/Juror
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal

S/Juror
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal
S/Juror
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal
S/Juror
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal

S/Juror
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal
S/Juror
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal
S/Juror
In compliance with the Privacy Policy Adopted by the Judicial Conference, the verdict form with the original signature has been filed under seal

Exhibit B. DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)    **28**

Page 219

Exhibit 73 - 230

*United States v. George Lecco*
No. 2:05-cr-00107 (S.D. W.Va.)
Judge Presiding: The Hon. John T. Copenhaver, Jr.
(Voir dire began April 5, 2010.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 220

Exhibit 73 - 231

1315

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

---------------------------------x
UNITED STATES OF AMERICA,          :
                                   :  CRIMINAL NO. 2:05-00107
     v.                            :
                                   :  APRIL 30, 2010
GEORGE M. LECCO,                   :  MAY 3, 2010
                                   :
          Defendant.               :  VOLUME IX
---------------------------------x

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOHN T. COPENHAVER, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE UNITED STATES:      USA CHARLES T. MILLER
                            AUSA R. GREGORY McVEY
                            U.S. Attorney's Office
                            P.O. Box 1713
                            Charleston, WV  25336

                            RICHARD BURNS
                            Department of Justice
                            950 Pennsylvania Avenue, NW
                            Washington, D.C.  20530

FOR THE DEFENDANT:          AFPD GERALD T. ZERKIN
                            AFPD AMY L. AUSTIN
                            Office of the Federal Public Defender
                            830 East Main Street, Suite 1100
                            Richmond, VA  23219

                            FPD BRIAN J. KORNBRATH
                            230 West Pike Street, Suite 360
                            Clarksburg, WV  26301

COURT REPORTER:             BARBARA STEINKE, RMR
                            Post Office Box 75025
                            Charleston, WV  25375
                            (304) 347-3151

These proceedings were reported with use of a stenographic
machine and transcribed with use of computer-aided
transcription.

Exhibit 73 - 232

*4/30/1*                                                                 1388

innocence/guilt phase.  In the innocence/guilt phase, I instructed you to deliberate with a goal of reaching a unanimous decision one way or the other, as to whether the government had proven the defendant guilty beyond a reasonable doubt of the crimes charged in the indictment.  However, in the sentencing phase, if you are not unanimous as to the existence of a threshold or aggravating factor, you have made a decision and you should not find that factor.  Similarly, if you are not unanimous as to imposing a sentence of death on a particular count, you will have made a decision against imposing a sentence of death as to that count.

Again, as was true in the first phase of the trial, the defendant at this hearing does not have to present any evidence. The defendant does not have to prove to you that threshold or aggravating factors do not exist or that he should not be sentenced to death.

If you unanimously determine that the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors found to exist to justify a sentence of death, or in the absence of any mitigating factors, that the aggravating factor or factors alone are sufficient to justify a sentence of death, you are to record your unanimous determination that death is justified in the Special Verdict Form.

If you unanimously determine that the aggravating factor or

Exhibit 73 - 233



UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 2:05-00107-01

GEORGE M. LECCO

## SPECIAL VERDICT FORM
## AS TO DEFENDANT GEORGE M. LECCO

### MURDER OF CARLA COLLINS BY DEFENDANT GEORGE M. LECCO

### AGE REQUIREMENT

### COUNTS NINE, TEN, AND ELEVEN CONSIDERED SEPARATELY

We, the jury, unanimously find that the defendant was more than 18 years of age at the time of the offense.



YES or NO

### SECTION I.   THRESHOLD INTENT FACTORS

**General Instructions for Section I:**  For each of the following, indicate "YES" or "NO" after the appropriate finding by the jury.

### COUNTS NINE, TEN, AND ELEVEN CONSIDERED SEPARATELY

### First Threshold Intent Factor:

1.   Do you unanimously find that the United States has established beyond a reasonable doubt that the defendant GEORGE M. LECCO intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and the victim Carla Collins died as a direct result of the act?

yes

YES or NO

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 223

Exhibit 73 - 234



35.  _____

NUMBER OF JURORS WHO SO FIND _____

36.  _____

NUMBER OF JURORS WHO SO FIND _____

37.  _____

NUMBER OF JURORS WHO SO FIND _____

As to your separate deliberations on Counts Nine, Ten, and Eleven, do you make the foregoing findings as to all Counts?



(YES) or NO

If you responded "NO" above, please explain below:

_____

_____

**General Instructions for Section IV:** When you have completed Section IV above, proceed to Section V **and** Section VI which follow.

## V.  DETERMINATION OF SENTENCE

**General Instructions for Section V:**  Based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist -- or in the absence of any mitigating factors, whether the aggravating factor(s) so found are themselves sufficient to justify a sentence of death -- we choose as follows between Option A and Option B below:

10 of 13

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 224

Exhibit 73 - 235

### Option A.  Death Sentence

We the jury determine, by unanimous vote, that a sentence of death shall be imposed as to Count Nine.

_NO_

YES or (NO)

We the jury determine, by unanimous vote, that a sentence of death shall be imposed as to Count Ten.

_NO_

YES or (NO)

We the jury determine, by unanimous vote, that a sentence of death shall be imposed as to Count Eleven.

_NO_

YES or (NO)

If you indicate "YES" as to any or all counts, sign your name here, and then proceed as appropriate to either Option B on the next page or Section VI.  If you indicate "NO" as to all counts the foreperson alone should sign, and you should proceed to Option B:

_Bonnie Jo Treasel_ _____  _____
FOREPERSON

_____  _____  _____

_____  _____  _____

_____  _____  _____

Date:  _5-3-10_

11 of 13

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 225

Exhibit 73 - 236

**Option B. Sentence of Life in Prison Without Possibility of Release**

We the jury determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed as to Count Nine.

YES or (NO)

We the jury determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed as to Count Ten.

YES or (NO)

We the jury determine, by unanimous vote, that a sentence of life imprisonment without possibility of release shall be imposed as to Count Eleven.

YES or (NO)

If you indicate "YES" as to any or all counts, sign your name here, and then proceed to Section VI.  If you indicate "NO" as to all counts the foreperson alone should sign, and you should proceed to Section VI:

_Bobbi Jo Measel_
FOREPERSON

Date: _5-3-10_

12 of 13

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 237

## VI.   CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or the victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of  the race, color, religious beliefs, national origin, or sex of the defendant, or the victim(s).

FOREPERSON

Date:   5-3-10

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 227

Exhibit 73 - 238

*United States v. Anh The Duong*
No. 01-cr-20154-JF (N.D. Cal.)
Judge Presiding: The Hon. Jeremy Fogel
(Voir dire began February 23, 2010.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 228

Exhibit 73 - 239

**FILED**

DEC 1 4 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

UNITED STATES,

          Plaintiff,

v.

ANH THE DUONG, et al.,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Action No.    CR 01-20154 JF

**PENALTY PHASE JURY
INSTRUCTIONS**

## I.    Introduction:

Members of the jury, it is again my duty to instruct you on the law. This time it is the law applicable to the sentencing phase of this trial. In these instructions I will sometimes use the term "you" to refer to the jury as a whole, and at other times will use it to refer to an individual juror. You can tell from the context how I am using it.

Your task will be to choose between our two most severe penalties. They are a sentence of death or a sentence of life in prison without the possibility of release. If you determine that the defendant should be sentenced to life in prison without the possibility of release or to death, the Court is required to impose whichever sentence you choose. There is no parole in the federal system, so life without the possibility of release means exactly that. The defendant will spend the rest of his life in prison. If you choose death, federal law does not give me the authority to overrule your decision. I will sentence Mr. Duong to death and he will be executed.

In the guilt phase of the trial you found Mr. Duong guilty of offenses which by statute carry the potential of a death sentence. However, it is still the Government's burden to prove certain facts before the death penalty becomes a possible sentence for these offenses. Only if these facts are proved unanimously and beyond a reasonable doubt does the offense become one for which the death penalty may be imposed. I will later provide further explanation of these findings, but in sum they are:

1.    That Mr. Duong was eighteen years of age or older at the time of the offense for which the death penalty is sought;

- 1 -

Exhibit B: DECLARATION REGARDING THE IMPORTANCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Exhibit 73 - 240

unanimity. This results from the fact that that not all jurors might have agreed which Mitigating Factors have been factually proved, and what weight is to be given to those factors. Depending on each juror's findings with regard to the existence of Mitigating Factors, jurors may be weighing different sets of Mitigating Factors with different levels of weight against the Aggravating Factors found by all jurors. This results in the individual nature of the decision. Whether or not the circumstances in this case persuade you that a sentence of death is justified is a decision that the law leaves entirely to you.

You should record your decision as to whether you have unanimously decided whether the Aggravating Factors so sufficiently outweigh the Mitigating Factor to justify a sentence of death with respect to each of the homicides in Section VI of the Special Verdict Form and follow the instructions there.

XI.    Sentence

Even if you have unanimously found that the Aggravating Factors sufficiently outweigh the Mitigating Factors that a death sentence is justified in one or more of the murders, each of you must still determine whether to in fact impose that sentence. No juror is ever required by the law to impose a death sentence. The decision is yours as individuals to make. Any one of you may decline to impose a death sentence, even where your findings make imposition of the death penalty possible. You do not have to give a reason for your decision. You may decline to impose a death sentence because of mercy or for any reason you deem to be relevant. It is an individual and personal decision that is each juror's alone. The law has given each of you the discretion to temper justice with mercy.

A death sentence shall be imposed only if it is the unanimous decision of the jury. That is, only if all the jurors make the individual decision that death is in fact the appropriate sentence.

Even though a death sentence is never mandatory, once it is imposed, I cannot change it. I will have no discretion, and I must then sentence Anh Duong to death even if you have imposed that sentence for only one of the three homicides. You must record your determination of the sentence with respect to each homicide in Section VII of the Special Verdict Form. If all twelve members of the jury cannot unanimously agree on the sentence, I must impose the

- 15 -

Exhibit 73 - 241

mandatory sentence of life imprisonment without possibility of release. There will be no retrial.

**XII.   Duty to Deliberate:**

It is your duty as jurors to discuss the issue of punishment with one another in an effort to reach agreement if you can do so. But each of you, after full consideration of the evidence, must decide the question of punishment for yourselves.

**XIII.   Justice Without Discrimination:**

In your consideration of whether the death penalty is appropriate, you must not consider the race, color, religious beliefs, national origin, or gender of either Mr. Duong or the homicide victims. You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to these factors. To emphasize the importance of this consideration, Section VIII of the Special Verdict Form contains a certification statement. Each juror should carefully read the statement, and sign your name in the appropriate place if the statement accurately reflects the manner in which each of you reached your individual decision.

**XIV.   Special Verdict Form:**

As referenced throughout these instructions, a "Special Verdict Form" has been prepared to assist you during your deliberations. You are required to record your decisions on this form.

Section I of the Special Verdict Form contains space to record your finding as to the defendant's age. Section II of the Special Verdict Form contains space to record your findings on the Gateway Mental State. Section III contains space to record your findings on Statutory Aggravating Factors. Section IV contains space to record your findings on the Non-Statutory Aggravating Factors. Section V contains space to record your findings on Mitigating Factors. Section VI contains space to record your findings as a result of the weighing process. Section VII of the Special Verdict Form contains space to record your determination of the sentence. Section VIII of the Special Verdict Form contains a certification statement.

Each of you are required to sign the Special Verdict Form in Section VII to reflect your sentencing determination, and in Section VIII to reflect your certification that your decision was not based on race, color, religious beliefs, national origin, or gender. Your foreperson must sign a second time to certify the date of your decision.

- 16 -

Exhibit 73 - 242

**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

DEC 15 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES,

        Plaintiff,

    v.

ANH THE DUONG, et al.,

        Defendants.

Action No.    CR 01-20154 JF

**SPECIAL VERDICT FORM**

## I.    FINDING AS TO DEFENDANT'S AGE:

**Instructions**:

The parties have stipulated that Mr. Duong was eighteen years or older at the time of the offenses for which he has been convicted. You must accept that fact. Mark the box below indicating that finding and continue to Section II, below.

Do you, the jury, unanimously find that the defendant was eighteen years of age or older at the time of the homicides of Chau Quach, Hsu-Pin Tsai, and Josefino Cambosa has been proved beyond a reasonable doubt?

YES __X__          NO _____

## II.    GATEWAY MENTAL STATES:

A defendant convicted of murder may not be considered for the death penalty unless you agree unanimously that the Government also proved beyond a reasonable doubt that at the time of the homicide the defendant acted with at least one or more of the four Gateway Mental States I have explained to you.

**Instructions**:

For each of the following answer "YES" or "NO."

1.    Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant intentionally killed the victim named in the corresponding count?

Counts Six and Seven, Chau Quach:

YES _____          NO __X__

Counts Eighteen and Nineteen, Hsu-Pin Tsai:

YES _____          NO __X__

Counts Twenty-Eight and Twenty-Nine, Josefino Cambosa:

YES _____          NO __X__

Exhibit 73 - 243

## VI.    WEIGHING:

This section asks each of you to individually weigh the Aggravating Factor or Factors that were unanimously found to have been proved beyond a reasonable doubt against the Mitigating Factor or Factors that each of you has individually found to have been proved by a preponderance of the evidence.

1.    We unanimously find that the proved Aggravating Factors outweigh the Mitigating Factors so sufficiently to justify a sentence of death.

Counts Six and Seven, Chau Quach:

YES _____          NO __X__

Counts Eighteen and Nineteen, Hsu-Pin Tsai:

YES _____          NO __X__

Counts Twenty-Eight and Twenty-Nine, Josefino Cambosa:

YES _____          NO __X__

## VII.    SENTENCING DECISION

**Directions**:

If you have not unanimously found that the Aggravating Factors so sufficiently outweigh the Mitigating Factors so as to justify a sentence of death for any of the homicides, proceed to Section VIII, below, follow the directions there, and return this Verdict Form to the Court. The defendant will be, as required by law, sentenced to life in prison without the possibility of release.

If you have unanimously found that the Aggravating Factors so sufficiently outweigh the Mitigating Factors to justify a sentence of death for one or more of the homicides, you may still sentence the defendant to life in prison without the possibility of release. A sentence of death will be imposed only if all twelve jurors make the individual decision that death is in fact the appropriate sentence. Proceed to the next question below, to determine the sentence. Disregard the sentencing determination for any homicide where you did not unanimously find that the Aggravating Factors so sufficiently outweighed the Mitigating Factors.

For each capital homicide, you will now determine the sentence that shall be imposed: death or life in prison without the possibility of release. If you have unanimously found that a sentence of death is justified on any one of the homicides, a sentence of death will be imposed, and Mr. Duong shall be executed.

**Counts Six and Seven, Chau Quach:**

_____ Even though we have unanimously found that the Aggravating Factors outweigh the Mitigating Factors so sufficiently to justify a sentence of death, we do not unanimously agree that a sentence of death should be imposed. A sentence of life imprisonment without the possibility of release results by law.

Exhibit B: DECLARATION REGARDING THE INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

*United States v. Duong, et al.,* CR 01-20154-JF
Special Verdict Form

Page 233

Exhibit 73 - 244

_____ We have unanimously found that the Aggravating Factors so sufficiently outweigh the Mitigating Factors that a sentence of death rather than life in prison without the possibility of release is justified, and we unanimously find a sentence of death shall be imposed. Mr. Duong shall be sentenced to death and shall be executed.

**Counts Eighteen and Nineteen, Hsu-Pin Tsai:**

_____ Even though we have unanimously found that the Aggravating Factors outweigh the Mitigating Factors so sufficiently to justify a sentence of death, we do not unanimously agree that a sentence of death should be imposed. A sentence of life imprisonment without the possibility of release results by law.

_____ We have unanimously found that the Aggravating Factors so sufficiently outweigh the Mitigating Factors that a sentence of death rather than life in prison without the possibility of release is justified, and we unanimously find a sentence of death shall be imposed. Mr. Duong shall be sentenced to death and shall be executed.

**Counts Twenty-Eight and Twenty-Nine, Josefino Cambosa:**

_____ Even though we have unanimously found that the Aggravating Factors outweigh the Mitigating Factors so sufficiently to justify a sentence of death, we do not unanimously agree that a sentence of death should be imposed. A sentence of life imprisonment without the possibility of release results by law.

_____ We have unanimously found that the Aggravating Factors so sufficiently outweigh the Mitigating Factors that a sentence of death rather than life in prison without the possibility of release is justified, and we unanimously find a sentence of death shall be imposed. Mr. Duong shall be sentenced to death and shall be executed.

Each juror must sign below, indicating that the above sentence determination reflects the decision of the jury and the decision of each individual juror, or, if no unanimous decision was reached that each juror agrees that was the result of deliberations.

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

The foreperson shall indicate the date of signing:

Dated: _____     _____

- 11 -

*United States v. Duong, et al.*, CR 01-20154-JF
Special Verdict Form

Page 234

Exhibit 73 - 245

*United States v. Antonio Argueta*
No. 8:05-CR-00393-DKC (D. Md.)
Judge Presiding: The Hon. Deborah K. Chasanow
(Voir dire began January 12, 2010.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 235

Exhibit 73 - 246

*United States v. Argueta*, No. 8:05-cr-00393-DKC (D.M.D. 2010)(Chasanow, J.)

Note: The concluding instructions from the sentencing trial have not been publicly filed on ECF, however, the relevant portions of the sentencing trial instructions were provided to me by defense counsel Teresa Whalen.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 236

Exhibit 73 - 247

Members of the jury, you have now heard all of the evidence in the case. It again becomes my duty, therefore, to instruct you on the rules of law that you must follow and apply in arriving at your decision as to the question of whether the Defendant, Roberto Antonio Argueta, should be sentenced to death or to life imprisonment without the possibility of parole or release. No other lesser sentence is authorized under the law for the offenses of which the Defendant has been convicted. Regardless of any opinion you may have as to what the law may be—or should be—it would be a violation of your oaths as jurors to base your verdict upon any other view of the law than that which I give to you in these instructions.

Some of the legal principles that you must apply to this sentencing decision duplicate those you followed in reaching your verdict in the first part of this trial. Others are different. I have prepared a full set of instructions on the applicable law in order to ensure that you are clear in your duties at this stage of the case. You will have a copy of these instructions for use during deliberations. You will also receive a form that details the findings that you are asked to make in this phase of the

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 237

Exhibit 73 - 248

After consideration of the aggravating and mitigating factors, you must unanimously determine whether the Defendant should be sentenced to death or to life imprisonment without possibility of release on each count. You should indicate your determinations regarding the sentence in Part VI of the Verdict Form.

If, after weighing the aggravating and mitigating factors, you unanimously determine that a sentence of death shall be imposed, then the Court is required to sentence the Defendant to death. If you unanimously determine that a sentence of life imprisonment without the possibility of release shall be imposed, then the Court is required to sentence the Defendant to life imprisonment without the possibility of release. If you cannot unanimously agree whether the Defendant should be sentenced to death or life imprisonment without the possibility of release, the Court will sentence the Defendant to life imprisonment without the possibility of release.

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 238

Exhibit 73 - 249

*United States v. Maurice Phillips*
No. 2:07-cr-00549-JCJ (E.D. Pa.)
Judge Presiding:  The Hon. J. Curtis Joyner
(Voir dire began January 4, 2010.)

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 239

Exhibit 73 - 250

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
---

UNITED STATES OF AMERICA      :   CRIMINAL ACTION
                              :
     vs.                      :
                              :
MAURICE PHILLIPS,             :
DAVID GARCIA,                 :
SHERMAN KEMP                  :   NO. 07-549


PHILADELPHIA, PENNSYLVANIA
APRIL 26, 2010
BEFORE HONORABLE J. CURTIS JOYNER
TRIAL - DAY 39


APPEARANCES:


FOR THE GOVERNMENT:   U.S. ATTORNEY'S OFFICE
                      BY:  LINWOOD C. WRIGHT, ESQUIRE
                      MAUREEN McCARTNEY, ESQUIRE
                      615 Chestnut Street, Suite 1250
                      Philadelphia, Pennsylvania 19106


FOR MAURICE PHILLIPS: RUHNKE & BARRETT
                      BY:  JEAN D. BARRETT, ESQUIRE
                      47 Park Street
                      Montclair, New Jersey 07042

                      LAW OFFICES OF THOMAS R. ASHLEY
                      BY: THOMAS R. ASHLEY, ESQUIRE
                      50 Park Place, Suite 1400
                      Newark, New Jersey 07102




GREGG B. WOLFE, RPR, CM
Official Court Reporters
601 Market Street, Room 1234
Philadelphia, Pennsylvania 19106
(215) 925-6409


Gregg B. Wolfe, RPR, CM
215-460-1511

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 240

Exhibit 73 - 251

case as to each count calls for death as the appropriate sentence. In determining the appropriate sentence for the capital count you are considering, all of you must independently weigh the aggravating factor or factors that you unanimously found to exist with regard to that count, whether statutory or non-statutory, and each of you must weigh any mitigating factors that you individually or with others found to exist. You are not to weigh the preliminary factors I mentioned previously as part of this process. In engaging in the weighing process, you must avoid any influence of passion, prejudice or any other arbitrary consideration.

Your deliberation should be from the evidence that you have seen and heard and on the law on which I have instructed you, members of the jury. Again, whether or not the circumstances in this case call for a sentence of death is a decision that the law leaves entirely to you.

Remember, that all 12 jurors must agree beyond a reasonable doubt that death is, in fact, the appropriate sentence, but that no juror is ever required by the law to impose a

Gregg B. Wolfe, RPR, CM
215-460-1511

Exhibit B: DECLARATION REGARDING THE PREVALENCE OF TRIAL COURTS
INSTRUCTING JURORS OF THE CONSEQUENCE OF A NON-UNANIMOUS
VOTE ON THE ULTIMATE ISSUE OF LIFE IMPRISONMENT OR DEATH
(August 31, 2023)

Page 241

Exhibit 73 - 252

death sentence.  The decision is yours as individuals to make.  As stated earlier, if even a single juror is not persuaded that death is the appropriate punishment, the death penalty will not be imposed.

The process of weighing aggravating and mitigating factors against each other is by no means a mechanical process.  In other words, you should not simply count the total number of aggravating and mitigating factors and reach the decision based upon which number is greater. Rather, you should consider the weight and the value of each factor.  In carefully weighing these various factors, members of the jury, are not mere fact-finders.  Instead, you are called upon as individuals to make a unique individualized judgment about the sentence this defendant should receive.

Ladies and gentlemen, the law contemplates that different factors may be given different weight or value by different jurors. Thus, you may find that one mitigating factor outweighs all the aggravating factors combined or that the aggravating factors proven do not standing alone justify imposition of a sentence

Gregg B. Wolfe, RPR, CM
215-460-1511

Exhibit 73 - 253

168

of death.  Similarly, you may instead find that a single aggravating factor sufficiently outweighs all mitigating factors combined so as to justify a sentence of death.

Ladies and gentlemen, each juror is individually to decide what weight or value is to be given to a particular aggravating or mitigating factor in the decision-making process.  Bear in mind, however, that in order to find that a sentence of death is appropriate for a particular count, the jurors must be unanimous in their conclusions beyond a reasonable doubt that the aggravating factor or factors proven as to that count sufficiently outweigh any mitigating factors found such that a sentence of death is warranted.

Ladies and gentlemen, dealing with section number six, the determination of sentence.  In the event that you unanimously find beyond a reasonable doubt that the balancing process leads you to the conclusion that a sentence of death is called for as to the particular capital count you are considering, please mark the appropriate line provided on the special verdict form for the count that you are

Gregg B. Wolfe, RPR, CM
215-460-1511

Exhibit 73 - 254

considering.  If after engaging in the balancing process I have described to you, all 12 members of the jury do not unanimously find that the defendant should be sentenced to death on any of the capital counts, then you may not impose the death penalty for that.

As I told you, should you unanimously decide to impose the death penalty or to impose life imprisonment without any possibility of release, I am required by law to abide by your decision and to sentence the defendant accordingly.  Thus, you are free to agree or disagree.

Ladies and gentlemen, as you see in section seven, there is a certification.  I must instruct you that in your consideration of whether the death sentence is appropriate, you must not consider the race, color, religious beliefs, national origin or sex of either the defendant or the victims.  You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to race, color, religious belief, national origin or sex of either the defendant or any victim.

Gregg B. Wolfe, RPR, CM
215-460-1511

Exhibit 73 - 255

# Exhibit 74

# Filed under seal

# Exhibit 75

# Filed under seal

# Exhibit 77

# Filed under seal

# Exhibit 78

# Filed under seal

# Exhibit 80

# Filed under seal

# Exhibit 81

**NEWS**

# Federal Prisons Were Told to Provide Addiction Medications. Instead, They Punish People Who Use Them.

*Congress directed the Bureau of Prisons to make Suboxone and other medications widely available, but only a small fraction of those who need the help have received it.*



12.12.2022

By BETH SCHWARTZAPFEL and KERI BLAKINGER

Timothy York knows what works to treat his decades-long opioid addiction: Suboxone, a medication that effectively quiets cravings.

Since York arrived in federal prison in 2008, he has been held in a series of facilities awash with contraband drugs and violence. He's spent tens of thousands of dollars buying the medication illicitly from prison dealers because Suboxone enables him to think and communicate clearly, he

Exhibit 81 - 1

said. But he hasn't been able to get it consistently.

This article was published in partnership with NBC News.

In 2019, he was relieved to learn that the federal Bureau of Prisons was starting a program to expand access to Suboxone, and the following year, a pharmacist at the federal prison in Sumterville, Florida, said he was "priority #1" for treatment, according to his medical records.

He's still waiting.

In the meantime, he's been punished for using Suboxone without a prescription. Last year, after York, 46, was caught with the medication, he spent a month in solitary confinement and had his visitor privileges revoked for a year, according to his disciplinary log. He lost access to phone calls and email for four months. And he lost the chance to be released more than a month early.

York is not alone.

The Marshall Project spoke to more than 20 people struggling with addictions in federal prison, and they described the dire consequences of being unable to safely access a treatment that Congress has instructed prisons to provide.

Some have overdosed. Many have gotten involved in dangerous and illicit money-making schemes to pay for Suboxone, which costs about $20 for a small fraction of a daily dose on the illegal market, several prisoners said. Many, like York, have lost phone or visiting privileges or been sent to solitary confinement because they were caught taking the medication. Last year, the Bureau of Prisons disciplined more than 500 people for using Suboxone without a prescription, according to data obtained from the agency by The Marshall Project through a public records request.

"Believe me, 100% I recognize the irony there," said a bureau administrator familiar with the agency's addiction treatment programs, who spoke on the condition of anonymity because they are not authorized to speak to the press. "It's maddening."

Congress passed the First Step Act four years ago, requiring, among other things, that the Bureau of Prisons offer more prisoners addiction medications, the most common of which is Suboxone. The medications can quiet opioid cravings and reduce the risk of relapse and overdose.

Yet the federal prisons are treating only a fraction — less than 10% — of the roughly 15,000 prisoners who need it, according to the bureau's estimates.

At the end of October, 21 prisons were not offering any prisoners addiction medication, and

Exhibit 81 - 2

another 59 were treating 10 or fewer people — in many cases, just one person, according to bureau data obtained through a Freedom of Information Act request. The rest of the 121 facilities nationwide were each treating a few dozen people at most.

The Bureau of Prisons declined an interview request and would not comment on individual cases. But spokesperson Emery Nelson said in a statement that addiction medicines in combination with therapy and other supports (often referred to as medication-assisted treatment) are the "gold standard" for treatment, and "the Bureau's goal is to provide high-quality, comprehensive, and accessible medication-assisted treatment at all Bureau locations."

The bureau would not discuss the barriers to rolling out the program more widely, but prisoners and people who work in the system described a widespread misperception among prison staff that Suboxone substitutes one addiction for another. There's broad discretion among prison staff about who qualifies for treatment. The bureau also requires patients to get approval from multiple health care providers, and each step has its own lengthy waitlist.

To be sure, the Bureau of Prisons is treating increasingly more people since it launched its opioid medication program. In 2019, 41 people were receiving addiction medications. As of October, that had risen to 1,035 people; more than 80% of them are receiving Suboxone.

"That's great progress," said Sally Friedman, an attorney with the Legal Action Center, which has been involved in several opioid medication lawsuits against criminal justice agencies. "But BOP cannot rest until it complies with its constitutional mandate to ensure that every single incarcerated person with opioid use disorder has the opportunity to receive life-saving treatment."

The bureau's delay in providing more widespread addiction medication has consequences not only for prisoners but for its employees as well: It "creates an avenue for contraband to flow into the institution through other avenues," said Aaron McGlothin, union president at the federal prison in Mendota, California. "The BOP is breaking the law" by not providing Suboxone, he said.

For years, the Bureau of Prisons fought in court to prevent people entering the system from staying on the addiction medications they were prescribed by doctors in the community. That began to change in 2018, when the First Step Act was passed and prisons and jails across the country began losing lawsuits from prisoners who argued it was cruel and unusual to deny them the addiction medicine they'd been taking before they were incarcerated.

In 2019, the bureau released internal guidance saying that "all eligible inmates" at all of its facilities would have access to addiction medications. But what constitutes "eligible" leaves a lot of room for

Exhibit 81 - 3

interpretation.

Prisoners need to overcome several administrative hurdles before they can begin medication, obtaining clearance from psychological services, then health services, before seeing a prescriber. A records request from early this year showed more than 2,000 prisoners were caught somewhere in the process, waiting to move from one stage to another.

Some say the issues stem from a culture at the bureau that is skeptical of addiction medication and pits staff against prisoners.

One top bureau administrator who has worked in more than 10 federal prisons said he was once a Suboxone skeptic who thought it was just a "crutch."

"Once I found a doctor that supported it, and started giving inmates Suboxone, my SHU count went down," he said, referring to the special housing unit, the name for one type of solitary confinement. "There were less fights. There were less debts. The drug dealers on the compound went out of business." This administrator, who spoke on the condition of anonymity because he's not authorized to speak to the press, added, "I bought into it because I've seen it work."

When he moved to another prison, the administrator discovered that though the bureau's official policy is to make addiction medications widely available to those who need them, staff at local institutions have tremendous discretion about who begins treatment and who doesn't. Some facilities only give one medication and not others. In other cases, facilities refused to give people any of the medications until they were nearing release, he said.

"Once I started inquiring, what I keep getting told is, 'Well, it's only for inmates who are close to their release date,' or, 'We don't have enough resources,'" he said. "I've only got so much reach. I can't direct a doctor to prescribe a medication. I'm way out of my lane on that."

Federal law treats use of any narcotics without a prescription in federal prison — including Suboxone — as a "greatest severity level prohibited act," allowing officials to punish prisoners by delaying their release date, confiscating their property, taking away their visiting or phone privileges and holding them for up to six months in solitary confinement — which human rights groups have described as torture. Experts say even a few days in solitary can exacerbate the mental illness that is often the cause of, or closely linked to, drug addiction.

The lack of Suboxone treatment comes amid a rise in drug-related deaths behind bars. A variety of substances are routinely smuggled into prisons and jails through mail, drone drops, visitors or

Exhibit 81 - 4

corrections officers and other staff. In the last two decades, federal data shows that fatal overdoses increased by more than 600% inside prisons and more than 200% inside jails.

Forty-seven incarcerated people died of overdoses in federal prison from 2019 through 2021, according to internal bureau data released via a public records request. The data does not specify how many of these overdose deaths were caused by opioids and could have been prevented by medications like Suboxone. However, other bureau data offers some clue: During the same period, correctional staff administered Narcan — a drug that reverses opioid overdoses — almost 600 times in federal prisons.

"It's not easy being surrounded by drugs and expected not to use them," said Linda Wainwright, who spent five months in solitary confinement and lost the chance she had earned to go home nine months early as punishment for using smuggled Suboxone when prison officials wouldn't provide her with a prescription. "I begged them to help me," Wainwright said.

At FCI Fort Dix, a low-security prison in New Jersey, Tyler Scher's prison psychologist wrote to him saying that he was "shocked" and "at a loss" that Scher was repeatedly denied access to Suboxone, records show. In response to a grievance Scher filed, the warden at his prison said the purpose of the Suboxone program was to prevent "relapse, overdose, and death" among those scheduled "for imminent release from the institution."

Scher — who is serving a 20-year term for charges related to his girlfriend's overdose death — had complained of withdrawal symptoms and said that he couldn't stop using drugs without medication. He'd been written up twice for drug use, he said, and even sent to solitary. At one point, the prison offered him a different medication that he'd tried before and found it didn't work. When he pushed for Suboxone, officials told him, "You may resubmit a new request closer to your release."

When prescribed, Suboxone typically comes as a strip of film that patients dissolve under the tongue. On the illegal market behind bars, a strip is cut into 16 or 32 pieces, each of which sells for $20.

To pay for that with paltry prison wages, prisoners get both creative and desperate.

"You wash clothes for people, run around, wash tennis shoes, you have sex with people," said one man incarcerated in a federal prison that was providing Suboxone prescriptions to less than 1% of the people there as of October, according to Bureau of Prisons data. This man, who asked not to be named because he feared retaliation by bureau officials, said in a phone interview and letters to

Exhibit 81 - 5

The Marshall Project that he had his jaw broken by another prisoner and had to spend time in protective custody because "I've run up bills and I can't pay for the stuff, telling people lies."

The Marshall Project spoke to several people who said they'd endured violence or physical danger resulting from Suboxone debts.

Michael Swain had been trying to get on the Bureau of Prisons' program for eight months when he almost died of an overdose. He'd served four years of an eight-year sentence for a bank robbery that he said he committed to fund his addiction. He was using an underground supply of Suboxone at USP-Coleman, the federal prison in Florida where he was incarcerated, but it was erratic.

Last July, he turned to a much more dangerous drug: K2, a synthetic chemical also known as Spice, which varies widely in potency and purity and can cause everything from a mild buzz to death.

"I started projectile vomiting, real bad sweats and passed out," Swain said in a phone interview.

Medical staff later told him that he had lain in the infirmary for over an hour, mumbling incoherently and begging them to not let him die, he said. They finally called an ambulance, which brought him to a nearby hospital where, medical records show, he learned he'd had a seizure. "If I had been going to get a regular dose of Suboxone, I would have never seeked the K2," Swain said.

Even now, every time he asks the medical staff for an update on his request to receive Suboxone to treat his addiction, he said he's told the same thing: "You have been accepted, and you are on the waiting list."

Exhibit 81 - 6

Case 1:23-cv-00355-MAC-ZJH    Document 12-2    Filed 12/08/23    Page 275 of 313
PageID #:  4035

# Exhibit 82

# Intentionally Omitted

# Exhibit 83

# Filed under seal

# Exhibit 84

# Filed under seal

# Exhibit 85

9/15/23, 5:11 PM    Gangs, Prison Culture and the Role of Prison Staff | by More Than Our Crimes | An Injustice!

Open in app ↗    Sign up    Sign In

 Q Search Medium

# Gangs, Prison Culture and the Role of Prison Staff

An examination of the consequences of modern-day slavery

 **More Than Our Crimes** · **Follow**
Published in An Injustice!
9 min read · Feb 10, 2022

▶ Listen    ⬆ Share



Photo credit: Cribb Visuals

By Pam Bailey

https://aninjusticemag.com/gangs-prison-culture-and-the-role-of-prison-staff-c6002f96a3f    1/16

Exhibit 85 - 1

When the news broke that the federal Bureau of Prisons (FBOP) had locked down all 122 of its prisons in response to a gang fight at an institution in Texas, I was outraged — like most other activists, family members, and loved ones of the people inside. After all, lockdowns have become depressingly common in the federal "gulag," imposed for everything from staffing shortages to much more minor fights.

**Fight? Holiday? Low Staffing? Lockdown!**

Lockdowns don't keep the peace in prison, but they seem to be the only mode of operation

aninjusticemag.com

But as I talked to my recently released friends about the dynamics of gang influence in federal prisons, I began to realize that while lockdowns as a standard practice are — quite simply — wrong, this particular instance is a bit more complicated to judge. It also offers a very instructive view of the perverse incentive in life inside.

## What happened?

Here's what little we know: Two individuals were killed and two others were injured on Jan. 31 during an altercation between two rival gangs at the federal penitentiary in Beaumont, Texas. The gangs involved were MS-13 (which originally sprang up in Los Angeles in the 1970s to protect Salvadoran immigrants from other gangs, then evolved into a more traditional criminal organization) and the Sureños (known as the foot soldiers for the Mexican Mafia).

The Bureau of Prisons immediately responded by locking down every institution in the system — meaning its more than 150,000 "residents" were confined to their cells, unable to participate in what little programming exists or communicate with the outside world. Why?

"When two large, known groups face-off like this, it can have severe consequences," notes Jeremiah Mungo, released this year after nearly 25 years in the federal system. "It's very plausible that one of the leaders will put out the word, 'blood for blood,' and that can spread from prison to prison — because a lot of facilities have members of

Exhibit 85 - 2

those gangs. Word spreads fast. So, what the BOP is trying to do is quell what could literally turn into a war."

That doesn't mean Jeremiah condones the pervasive use of lockdowns, and he's quick to point out that the BOP doesn't do what it could to help prevent these fights. But once the riot broke out, he notes, the bureau likely found itself backed into a corner.

"They don't want it to get worse before they can 'fix' it, by talking to the shot callers [leaders — literally those who call the shots] and transferring people to different prisons," says Earlie Henderson, just released back to DC after 27 years. "When I was at the USP (U.S. penitentiary) in Lee County (Virginia), there was a big fight. And even a lot of the guys who weren't a part of the riot were shipped out. In fact, they weren't even outside on the yard or in those units when it happened, but they got transferred to Colorado, Texas... all different prisons. Probably because of their jackets [files] and the BOP wanting to change the makeup of the prison."

The bottom line, he says: "They're trying to put a band-aid on a problem that should have never existed. And lockdowns are the FBOP's go-to solution for almost everything."

## The evolution of prison gangs

In "Beating the Code Dilemma: How to Overcome Prisonization, Prevent PTSD and Emerge a Better Person," J.D. MacBean describes the "prison code" as "a set of rules governing prisoner behavior to maintain stability." Those rules are mediated by a complex network of gangs (of which the commanding officers could be classified as one).

MacBean explains that throughout the 1940s, '50s, and '60s, the federal prison population was made up mostly of white males incarcerated for tax evasion, organized crime, and associated murder, treason, and kidnapping. They were a homogenous group, coming primarily from the same socioeconomic and racial background; thus, they focused less on their differences and more on fighting a common enemy: prison staff. Prison staff was "the other."

That began to change in the mid to late 1970s with the advent of the War on Drugs. Quite quickly and dramatically, the prison population doubled, fed by an influx of

Exhibit 85 - 3

Blacks and Hispanics. It was no longer Us vs. Them. Now, prison life was Us vs. Them vs. Them. "This disintegration of unity stemmed largely from multiple social groups all vying to become the ingroup and control prison resources. Even worse, subgroups formed within each social group," writes MacBean. Among them are gangs such as the Bloods and Crips; Black Guerilla Family; Dead Men, Inc.; Dirty White Boys; Aryan Brotherhood…and MS-13 and Sureños. "Imagine, if you will: What if thousands of people — of different racial and socioeconomic backgrounds — suddenly moved into your neighborhood?" asks MacBean.

Earlie notes the difference between the state prison system he experienced and the feds: "I was in the Virginia state system for 11 and a half years. Then I came to the BOP. There weren't a lot of gangs in the state prison, but the feds were totally different. I think it's the mix of mentalities, cultures, and races from all over the country."

Jeremiah explains what happens this way: "Let's say you're from Detroit. When you arrive at a prison, you're asked, 'Okay, what time you on? Are you on Blood time or you on Detroit time?' If you say you on Blood time, that means you sit with the Bloods, and whatever argument or confrontation comes up, you have to roll with the Bloods, even against your Detroit buddies. Even though your Detroit buddies are the people you grew up with."

Kenard Johnson, who is in the midst of transitioning back home from federal prison, picks up from there: "Nobody in the BOP is really an individual, although it's easier in lower-security institutions. Gangs, whether formal or informal, are needed for protection."

Jeremiah agrees: "At the bottom of it, it's fear-based. If I come into an institution, and I say, 'Man, give me a knife,' it's because I want to protect myself. Why? Because I understand I'm vulnerable."

Kenard continues: "If you're what they call a civilian or a solo, you may be subject to somebody trying to take advantage of you. Sure, some people say, 'I'm on man time,' meaning 'I'm not affiliated with any particular group.' But that's really just talking, because when things get violent, they haul ass to a particular group."

Exhibit 85 - 4

And the thing about prisons, as MacBean points out, is that unlike in society at large, there are no lawyers who can sue if you've been hurt, or a trusted police force to turn to. Instead, the governing force among the incarcerated is the street code they brought with them from their 'hoods. That code has three tenets: 1) You must fight for your place in the world. 2) To survive, you must be prepared to force others to respect you with violence. And 3) Within the "community," you may see but must also not see (no snitching).

"A simple fistfight is a rarity in federal prison," says Jeremiah. "It's always with knives or a lock in a sock."

## The role of prison staff

The prison administration reinforces the division.

"I heard an officer say once, 'As long as they're not hurting us, we all right. Let them kill each other,'" recalls Earlie. So, "they classify us. They put numbers on your shirt that immediately let it be known where you're from. [For example, an 007 at the end signals D.C.] So, if I get off the bus when I arrive at a new prison, I got this number on my shirt and I'm categorized from the get-go."

Jeremiah agrees: "It's divide and conquer. If I can divide, I can conquer. Imagine if everyone incarcerated united together! Look, it's the inmate population that runs a prison. They cook the food, clean the institution, teach some of the programs. They put us down, but they also need us."

Dan Manville, director of the Michigan State University Civil Rights Clinic and formerly incarcerated himself, wrote a self-help prison litigation manual in which he explains how the division among residents gives the administration greater control. "And that holds true today," observes Kenard. "The administration deliberately exacerbates and feeds into our division. They know that if we decided not to prey on each other if we instead all started writing them up to hold them accountable legally for the many ways they violate our rights, it would be a real problem for them. Think about it: If we all decided one day to say, 'I'm not going to have a problem with this white guy, I'm going to have a problem with this CO who just beat another white guy up and I'm going to help him'…they'd be in serious trouble. We outnumber them."

Exhibit 85 - 5

Plus, there is another dynamic at work: The prison COs act as a gang themselves.

### Prison Is Just a Continuation of 'Thug Life' — with the Guards Among the Worst

Were we sent to prison for rehabilitation or retaliation?

aninjusticemag.com

Jeremiah offers an example: "Picture this: An officer, for any one of all sorts of reasons, enters a guy's cell and throws his property on the floor, tearing up his pictures, photos he kept of relatives who have died but are close to him. Maybe the CO pours juice on his mother's pictures. So, he says, 'fuck this shit, man.' And he hits the CO in his head or stabs him. Boom! Once he does that, a bunch of the COs is going to beat that guy to within an inch of his life. Then they'll ship him to another institution. Once the officers there look in his jacket [record], they'll say, 'You assaulted one of our officers?' They'll put him in the worst block, play games with his property. It's a brotherhood, a blue wall of silence. It's the same culture found among police on the street, but behind closed doors without any body cameras. The COs do all types of things, like giving inmates knives to retaliate against inmates they don't like."

So, it's obvious why many COs and wardens aren't promoting a less divisive environment, such as through productive, desirable programming.

Kenard recounts one example: "We started an interfaith dialogue at FCI Beckley. Once a month, we tried to bring all of the religious groups together to meet in the chapel, regardless of race, and just talk about being men. The administration put a stop to it."

Sometimes, a progressive warden comes in and sets a different tone, as was the case when Carlisle Holder was in charge at USP Coleman 1. He allowed Mutulu Shakur, who was incarcerated there at the time, to bring in all sorts of speakers and activities that the other guys really wanted. As a result, recounts James Carpenter, who was there at the time, "Everybody pretty much worked together under Dr. Shakur's watch. When we knew we had an upcoming event, everybody was on high alert, working to keep violence down because we didn't want to be locked down; we wanted the talk, the performance, or whatever it was to happen. So, for example, if it was September and

Exhibit 85 - 6

the function was in November when we saw somebody about to do something like getting in a fight, people would intervene, saying, 'Hold up, man. You know we got the function coming up, man. Don't do that.' There was actually a feeling of optimism instead of the usual negative cloud over the place all the time."

### Mutulu Shakur: Proof That a Different Kind of Prison is Possible

He helped us and paid with his life

aninjusticemag.com

But all that came to an end when word got out. Holder was fired and Doc Shakur was shipped out to a high-security discipline facility.

"Every time a warden leaves and a new officer gets promoted, he comes in with his own crew and his own policy," explains Jeremiah. "And (unlike Holder), they typically don't add anything to the prison; instead, they take away. They use negative reinforcement instead of positive: "Y'all can't have any more canned sodas. We're taking sugary candy from the commissary. We're not allowing this type of movie to be played or this type of channel because it costs us too much. We want to save money. We're locking y'all in." That's what happens. It's basically another form of slavery. Dangling things in front of us, then taking them away. It may be hundreds of years since slavery was outlawed, but the practices are still there."

*Note: As of today, the system-wide lockdown is starting to ease. But we all know it won't be long before there's another reason to lock people down, just not dramatically enough to get media attention.*

### An Injustice!

A new intersectional publication, geared towards voices, values, and identities!

aninjusticemag.com

Exhibit 85 - 7

# Exhibit 86

You have 2 more free articles available this month. **Subscribe today**
**(/subscribe/digital/)**.                                                      ×

# ✳ (/subscribe/digital/) Violence on the Rise in BOP Facilities

Loaded on AUG. 15, 2009 by Brandon Sample (/news/author/brandon-sample/) published in Prison Legal News August, 2009 (/news/issue/20/8/), page 10

Filed under: Gang Policies (/search/?selected_facets=tags:Gang%20Policies), Prison Rebellion (/search/?selected_facets=tags:Prison%20Rebellion), Criminal Prosecution (/search/?selected_facets=tags:Criminal%20Prosecution), Crime (/search/?selected_facets=tags:Crime), Failure to Protect (General) (/search/?selected_facets=tags:Failure%20to%20Protect%20%28General%29), Staffing (/search/?selected_facets=tags:Staffing), Lockdowns (/search/?selected_facets=tags:Lockdowns), Failure to Protect (Wrongful Death) (/search/?selected_facets=tags:Failure%20to%20Protect%20%28Wrongful%20Death%29), Guards/Staff (/search/?selected_facets=tags:Guards/Staff), Assaults on Staff (/search/?selected_facets=tags:Assaults%20on%20Staff), Guard Unions (/search/?selected_facets=tags:Guard%20Unions). Location: United States of America (/search/?selected_facets=locations:998).

Killings, assaults and other acts of violence are becoming more widespread in the federal Bureau of Prisons (BOP), as the prison population increases and staff-to-prisoner ratios decline. Fifteen prisoner-on-prisoner BOP homicides occurred in 2008 compared with 12 in 2007. Serious assaults on staff increased to 82 in 2008 from 72 in 2007, following a decline in previous years.

The BOP operates 115 facilities that house over 205,000 prisoners. Most of the violence is relegated to U.S. Penitentiaries (USPs), which typically hold high-security offenders serving lengthy sentences.

On April 20, 2008, for example, a massive 30-minute riot at the USP in Florence, Colorado broke out in the recreation yard. The incident began after white supremacist prisoners celebrating Adolf Hitler's birthday began yelling racial epithets at black prisoners. The white supremacists were drinking hooch, a form of homemade wine, and were armed with rocks and improvised weapons. Approximately 200 prisoners were involved in the melee.

To quell the riot, guards fired more than 200 M-16 rounds, 300 pepper balls and almost a dozen tear gas canisters, plus sting grenades. Two prisoners, Brian Scott Kubik and Phillip Lee Hooker, were shot to death by tower guards. Although the BOP initially reported that five other prisoners had been hurt, it was later learned that 30 prisoners and one staff member were injured during the incident.

Frank Sims, a prisoner allegedly involved in the riot, described the scene on the yard as "lil' Baghdad." Ken Shatto, president of the American Federal of Government Employees Local 1302 (AFGE), which represents BOP workers at the prison complex, remarked "It's the craziest thing in 15 years I've seen with the Bureau."

Outsiders like Mark Potok of the Southern Poverty Law Center, an organization that tracks hate

Exhibit 86 - 1

groups, were surprised that white supremacist prisoners were allowed to congregate in the yard that day. "I'm not an expert in keeping prisons calm, but it certainly does seem like dangerous business to allow groups of white supremacist criminals to congregate on Hitler's birthday," said Potok. "The truth is, it is an iconic day in the white supremacist calendar."

Leann LaRiva, a spokesperson for USP Florence, said prisoners are not separated by race on Hitler's birthday or any other anniversary. "We don't discriminate on race or ethnicity or segregate," she said. Not even, apparently, to prevent riots that result in prisoners being shot to death.

Union officials have long called for increased staffing to help prevent such violent outbreaks – and, of course, to boost their membership ranks. In April 2008, just weeks before the riot occurred, Phil Glover, a legislative coordinator with the AFGE, testified before Congress about rising levels of violence in the BOP. Glover blamed the violence on insufficient staffing and resources.

According to Glover, the BOP has filled only 87 percent of staffing positions compared to 95 percent during the 1990s. He stated that staffing levels in federal prisons may drop as low as 76 percent if budget shortfalls continue. Compounding this staff shortage, BOP facilities are 36 percent over capacity systemwide.

The BOP has recognized the potential for increased violence due to staffing deficiencies. In a March 2008 memo, prison officials estimated that a projected $289 million budget shortfall could force the cutting of guard positions to the point "where safety and security of staff and inmates could be in jeopardy."

Immediately following the USP Florence riot, then-U.S. Senator Ken Salazar contacted Attorney General Michael Mukasey and requested that additional guards be sent to the facility. Salazar has also called on the BOP to release reports about the riot to the public.

"The people of Colorado, especially those in the communities surrounding the USP, deserve the assurance that the BOP is taking the steps necessary to improve security at the facility and prevent terrible incidents like this in the future," Salazar wrote to BOP Director Harley Lappin. Despite Salazar's requests, the BOP refused to release details regarding the riot, citing an ongoing investigation. The FBI is also conducting a review.

Amazingly, just three months after the riot, the warden of USP Florence, Sara Revell, received an Excellence in Prison Management award. According to Felcia Ponce, a BOP spokesperson, the award "recognizes outstanding contributions by a warden in the overall management of staff, inmates, and general population." The BOP did not comment on why Revell was given the award following a major riot.

On August 10, 2008, just weeks after Revell was recognized for her excellence in prison management, USP Florence was again placed on lockdown due to a prisoner-on-prisoner homicide.

Exhibit 86 - 2

Violence at USP Florence has even extended to the visiting room. In November 2008, days after visitation was restarted at the institution, a prisoner attacked two visitors. An unidentified BOP guard claimed the prisoner tried to stab his wife and mother-in-law. "It was some type of paper, folded or rolled really tight with a blade in the end of it," the guard said. "He managed to cut his wife's neck and then tried to cut up the mother a little bit." The visitors were taken to a hospital and released.

The BOP is in the process of separating outside recreation yards at all USPs into smaller, more manageable areas. While the timing of the change may seem related to the Florence riot, BOP officials said it was part of a nationwide move following the June 20, 2008 murder of Jose Rivera, a guard at USP Atwater in California.

Rivera was stabbed at least 28 times with an 8" ice pick-like weapon; he was unarmed, had no protective equipment, and other prison employees were delayed in coming to his rescue due to a locked door. The two prisoners accused of stabbing Rivera to death, Jose Cabrera Sablan and James Ninete Leon Guerrero, who are both serving life sentences, are scheduled to go to trial on murder charges in September 2010. They face the death penalty.

USP Atwater was placed on lockdown for three months after Rivera was killed. Once the lockdown was lifted, the prison was plagued by numerous fights – including a dozen stabbings over a one-week period – which resulted in another lockdown. In November 2008 the BOP replaced Atwater warden Dennis Smith, who was transferred to a medium-security facility.

A subsequent BOP report found that weapons were commonly available at USP Atwater and prisoners were able to get drunk on homemade alcohol. The prisoners who killed Rivera were reportedly drunk at the time. Between 2005 and 2007 the number of prisoner-on-staff assaults at Atwater had quadrupled from 13 to 57 per year. This included assaults involving prisoners spitting or throwing urine on guards, and attacking them with fists or food trays. Half of the reported assaults took place in the facility's Special Housing Unit.

The AFGE sharply criticized the BOP over Rivera's murder, calling for the resignation of top BOP officials and demanding that prison guards be provided with stab-proof vests and Tasers, pepper spray and other self-defensive equipment.

"We have lost all faith in the BOP management," stated AFGE president John Gage. "It's incredible to us that the Bureau is making this a labor dispute, that they refuse to give these basic, common-sense tools to our officers. We feel, in the Rivera case, if these simple things we are asking had been granted, he would be alive today."

Violence in the BOP has not been confined to USP Florence and Atwater. USP Pollock in Louisiana was the leader in prisoner-on-prisoner homicides in 2007. Two prisoners, Tyrone Johnson and Derrick Sparks, were killed in April 2007 after being stabbed with homemade weapons. Three

Exhibit 86 - 3

months later another two prisoners were stabbed in the stomach. In November 2007, prisoners William Bullock and Donald Till were murdered by other prisoners. USP Pollock rang in the new year in January 2008 with the killing of prisoner Peter Avalos Gutierrez, 55, barely a month after he was transferred to the facility. He was stabbed to death with a shank.

Other institutions with high levels of violence include USP Beaumont, better known as "Bloody Beaumont." In November 2007, prisoner Gabriel N. Rhone was stabbed to death; a guard received 13 puncture wounds during the attack, which involved two other prisoners.

USP Lee is another honorable mention. On September 30, 2008, prisoner Quentin Corniel died after sustaining multiple stab wounds. He was less than a year away from his release date.

The Metropolitan Correctional Center (MCC) in Chicago, Illinois; the Federal Correctional Institution (FCI) in Three Rivers, Texas; and the FCI in Phoenix, Arizona round out the top-ranked BOP facilities for levels of violence.

Jason Katz, serving a nine-month sentence, was beaten to death at the MCC in March 2008 by fellow prisoner Jason Tolen, 20, who was indicted on second-degree murder charges. At FCI Three Rivers, a prisoner was killed during a fight in March 2008. And a brawl involving three prisoners at FCI Phoenix in January 2008 resulted in one prisoner suffering stab wounds to the head.

Other BOP facilities have experienced their own share of violence. On January 25, 2009, a "large-scale fight" at Federal Correctional Complex (FCC) Coleman, located about 50 miles northwest of Orlando, Florida, left eight prisoners hospitalized with stab or gunshot wounds. One of the prisoners was shot by guards "to prevent possible loss of life," stated Rita Teel, a BOP spokeswoman.

Another major fight broke out at the facility in March 2009 that involved dozens of prisoners and left 14 prisoners with serious injuries. Eleven were airlifted to hospitals.
FCC Coleman was placed on lockdown, and the incident is under investigation. "It was a busy day, to say the least," said Jim Judge, director of Lake-Sumter Emergency Medical Services.

Two separate fights at the USP in Tucson, Arizona on May 28, 2009 sent three prisoners to the hospital with stab wounds. Most recently, FCI Victorville was placed on lockdown on June 6, 2009 following an attack by prisoners in which four staff members suffered minor injuries, and on June 11 a prisoner was shot by guards at USP Terre Haute during a fight with another prisoner on a recreation yard. Both prisoners were hospitalized.

On June 18, 2009, the U.S. House of Representatives passed an appropriations bill that includes $71 million for hiring 745 new BOP guards; the bill still must be approved by the Senate. It is hoped that an increase in staffing levels will reduce violence in federal prisons. The BOP has taken additional steps to confront increasing levels of violence, including transferring high-security offenders to other facilities and prosecuting prisoners involved in fights.

Exhibit 86 - 4

In October 2008, the BOP created a new security level – dangerous prisoners at USP Atwater will be sent to USP Lewisburg in Pennsylvania, a high-security prison. "What we've seen is some very positive steps and progress. We are going to see a change in the entire federal penitentiary system," stated U.S. Rep. Dennis Cardoza, after touring Atwater.

Rep. Cardoza introduced federal legislation in 2008 that would have required the BOP to provide stab-resistant vests to all federal prison guards, who would have to wear them while on duty (H.R. 6462). The bill, titled the "Jose Rivera Correctional Officer Protection Act," failed to pass; however, the BOP has been distributing vests to BOP staff who request them.

In regard to prosecutions, in October 2008 two FCC Terre Haute prisoners, Michael S. Vaught and Whitney H. Smith, were indicted on charges of assault with intent to commit murder and assault resulting in serious bodily injury, resulting from a May 27, 2008 razor attack on another prisoner. In August 2008, FCC Coleman prisoners Gerardo Martinez and Osbaldo Farias were charged with conspiracy to commit murder in connection with the October 2007 death of Orlando Yazzie, who was beaten and stabbed to death in a recreation cage.

On June 4, 2009, USP Big Sandy prisoner Manuel Cardosa, 28, was convicted of attacking and stomping fellow prisoner Marvin Fontenette, leaving him paralyzed and half-blind. While prison officials may not be able to prevent violence at BOP facilities, that doesn't stop them from prosecuting violent offenders after the fact.

Meanwhile, in June 2009, the mother of slain prison guard Jose Rivera filed a lawsuit against federal officials, including BOP Director Harley Lappin and former Atwater warden Dennis Smith. The suit alleges that BOP officials "willingly and knowingly participated in the creation of dangerous conditions that resulted in [Rivera's] death." See: Rivera v. Lappin, U.S.D.C. (E.D. Cal.), Case No. 1:09-cv-00954-LJO-SMS.

According to Mark J. Peacock, the attorney representing Rivera's family, "Officer Rivera's death highlights the complete and utter breakdown of the prison's management in protecting their employees. This can't be allowed to continue."

The same can be said about the inability of BOP officials to protect prisoners from increasing levels of violence, which also cannot be allowed to continue.

Sources: Colorado Independent, Rocky Mountain News, Denver Post, Associated Press, Channel 13 KRDO, Corpus Christi Caller-Times, Beaumont Enterprise, Arizona Republic, Chicago Tribune, Bristol Herald Courier, www.thetowntalk.com, KSWT, http://corspecops.com
As a digital subscriber to Prison Legal News, you can access full text and downloads for this and other premium content.

Exhibit 86 - 5

Subscribe today (/subscribe/digital/)

Already a subscriber?    Login (/users/login/)

# Related legal case

## Rivera v. Lappin

| | |
|---|---|
| **Year** | 2009 |
| **Cite** | U.S.D.C. (E.D. Cal.), Case No. 1:09-cv-00954-LJO-SMS |
| **Level** | District Court |
| **Injunction Status** | N/A |

Exhibit 86 - 6

# Exhibit 87

9/15/23, 5:10 PM                    Key takeaways from our investigation into federal prison deaths at Thomson : NPR





DONATE

INVESTIGATIONS

# Five things to know about one of the deadliest federal prisons

May 31, 2022 · 6:00 AM ET

By Christie Thompson, The Marshall Project



The federal Bureau of Prisons announced in 2018 that it was moving a special unit that had been plagued with violence to a new federal prison complex in Illinois. Some hoped it would be a fresh start and a chance to improve conditions. But things only got worse.

*Charles Rex Arbogast/AP*

The Marshall Project and NPR investigated how the newest federal prison — the penitentiary in Thomson, Ill. — has quickly become one of the deadliest. The story is the latest in our years-long coverage of the dangers of "double-celled solitary confinement" — putting two people on lockdown in a small cell — as well as the use of force in federal prisons.

Here are five takeaways from our investigation.

## Officials moved a notorious double-celled prison program to a new facility. The problems followed.

The "Special Management Unit" is a high security prison program meant for some of the most dangerous people in federal custody (though many have ended up there who don't fit that description). Volatile people are often locked down in pairs for nearly 24 hours a day in a cell roughly the size of a parking space, forced to eat, sleep and defecate just feet from each other. In 2016, NPR and The Marshall Project wrote about violence and abuse in that unit when it was housed in the penitentiary in Lewisburg, Pa.

After our stories ran, the federal Bureau of Prisons announced in 2018 that it was moving the unit to a new federal penitentiary in Illinois. Some hoped it would be a fresh start and a chance to improve conditions. But things only got worse. There have been five suspected homicides at Thomson since it opened — among the most of any federal prison in that time.

## Restraints are supposed to be a last resort. At this prison, men say they're used frequently — often as punishment.

Prison guards are only supposed to use restraints to subdue someone who is actively dangerous to themselves or others, and for as short a time as possible. But dozens of men incarcerated at Thomson reported in letters, lawsuits and interviews that officers there use these restraints frequently, and leave people in chains for hours or days at a time. NPR and The Marshall Project heard many of the same complaints in 2016, when the Special Management Unit was housed at Lewisburg.



INVESTIGATIONS

**How the newest federal prison became one of the deadliest**

INVESTIGATIONS

**Doubling Up Prisoners In 'Solitary' Creates Deadly Consequences**

Exhibit 87 - 2





INVESTIGATIONS

**Inside Lewisburg Prison: A Choice Between A Violent Cellmate Or Shackles**

"Ambulatory restraints" are ankle cuffs and handcuffs that are chained to a strap around the torso.. Even more intense are "four-point restraints," where each limb is chained to a concrete bed, leaving someone splayed and immobile. Many held at Thomson said they often weren't allowed to eat or drink while in restraints, and were sometimes forced to urinate on themselves. Some said restraints were applied so tightly that they left scars — what men there call "the Thomson tattoo."

A Bureau of Prisons spokesperson told NPR and The Marshall Project that he couldn't comment on pending lawsuits, but that "restraints are not used as a method of punishing an inmate or in any manner which restricts blood circulation or obstructs the inmate's airways or in a manner that causes unnecessary physical pain or extreme discomfort." Any allegation of staff abuse would be investigated, he said.

## This level of violence is preventable.

Prisons can be violent places, especially maximum security facilities such as Thomson. But homicides behind bars often happen when warning signs are ignored, or people are knowingly put in dangerous situations. "There's no excuse for there to be any homicides in a prison," said David Fathi, director of the American Civil Liberties Union National Prison Project. "It's an environment of total surveillance and control."

Matthew Phillips — a Jewish man with a Star of David tattooed on his chest — was killed after Thomson corrections officers locked him in a recreation cage with two members of a white supremacist gang. Bobby Everson was killed at Thomson after he had been writing to his family for months, saying he felt officers were purposefully housing him with violent men.

Exhibit 87 - 3

Lawmakers say persistent understaffing is a part of the problem. And attorneys say many people held at Thomson report not getting the mental health care they need, or are denied their psychiatric medication. The Special Management Unit has been sued for this before.

A Bureau of Prisons spokesperson said in an email that prison officials consider gang affiliation, geography, religion and past incident reports when deciding whom to cell together. Any instance of an officer intentionally ignoring a valid threat would be treated as misconduct and investigated, he said.

## Federal prisons across the country are under fire right now for mistreatment.

The Bureau of Prisons has had one scandal and crisis after another. COVID-19 killed hundreds of people in federal prisons.



INVESTIGATIONS

**As COVID spread in federal prisons, many at-risk inmates tried and failed to get out**

The Associated Press recently revealed how hundreds of prison employees have been arrested since the start of 2019, and how guards sexually abused women at a federal prison in California. And understaffing escalated during the pandemic, forcing everyone from cooks to counselors to work as guards and increasing risks for staff and incarcerated people alike.

In response, the Senate has formed a new group to investigate federal prison operations, and Bureau of Prisons Director Michael Carvajal announced his resignation in January. The agency has yet to name his successor.

## Prison abuse and violence have widespread ripple effects.

"Lewisburg was not only a violence factory, it was a homicide factory," said Mark Donatelli, a defense lawyer who works on death penalty cases out of prisons. Donatelli said he knows of at least seven people who were involved in homicides after getting

Exhibit 87 - 4

out of the Special Management Unit at Lewisburg. The violence endured in one prison begets more in the future, he said.



**INVESTIGATIONS**

**When A Prisoner Returns Home With A Brain Injury, Freedom Isn't So Free**

For the people who survive such conditions, the impact lasts long after their release date. In 2019, NPR and The Marshall Project followed Chuck Coma when he came home from federal prison, after he nearly died from a prison assault at Lewisburg. He returned to his family with a traumatic brain injury and post-traumatic stress disorder exacerbated by the violence he witnessed inside.

A prisoner identified only as John Doe said in a federal lawsuit that being attacked by cellmates and being left in restraints at Thomson caused "extreme permanent mental anguish."

Sebastian Richardson was housed at Lewisburg from 2010 to 2012, and sued the prison for leaving him in shackles for nearly a month when he tried to refuse a dangerous cell assignment. A decade later, he still has searing pain, swelling and numbness in his hands as a result of the cuffs, and has trouble trusting authority. "You come out with a lot of anger, and they create that," he said.

## Your mission, should you accept it...

Story by story, we are creating a more informed public. Grassroots support from you is essential. We invest every gift into funding reporters, amplifying essential stories, and more. If that is a mission you can get behind, signal that you are all in by donating today.

♥ YES, I'LL DONATE

Exhibit 87 - 5

# Exhibit 88

# Filed under seal

# Exhibit 89

# Filed under seal

# Exhibit 90

# Filed under seal

# Exhibit 91

# Filed under seal

# Exhibit 92

# Filed under seal

# Exhibit 93

# Filed under seal

# Exhibit 94

# Filed under seal

# **Exhibit 95**

# **Filed under seal**

# Exhibit 96

# Filed under seal

# Exhibit 97

# Filed under seal

# Exhibit 98

# Filed under seal

# Exhibit 99

# Filed under seal

# Exhibit 100

# Filed under seal

# Exhibit 101

# Filed under seal

# Exhibit 102

# Filed under seal