**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**BEAUMONT DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | Civil No. 1:23-cv-355 |
| | § | Crim. No. 1:16-CR-26 |
| v. | § | |
| | § | |
| CHRISTOPHER E. CRAMER | § | |
| | § | |

**MOVANT CRAMER'S RESPONSE TO ORDER FOR
STATEMENT REGARDING VIABILITY OF CLAIMS**

TO THE HONORABLE ZACK HAWTHORNE, UNITED STATES MAGISTRATE JUDGE FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION:

On December 23, 2024, President Joseph R. Biden, Jr. issued an unconditional commutation of the death sentence imposed upon Movant Christopher Emory Cramer in Criminal Action No. 1:16-CR-00026(01). (Dkt. 20.) President Biden's order commuted Mr. Cramer's death sentence to life imprisonment without the possibility of parole. All other conditions and components of the previous sentence were left intact. (*Id.*)

On January 5, 2025, this Court requested that Cramer address "whether any live case or controversy still exists in this cause, and specifically, which issues, if any, are not moot." (Dkt. 21.) This Court cited two cases which could inform its decision: *United States v. Surratt*, 855 F.3d 218 (4th Cir.), *cert. denied*, 583 U.S. 1040 (2017) and *Dennis v. Terris*, 927 F.3d 955, 959 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 2571 (2020).

As explained below, *Surratt* does not control this case. Mr. Cramer's § 2255 motion remains viable because (1) this Court retains jurisdiction despite the executive action, and (2) the majority of Mr. Cramer's claims were not mooted by President Biden's commutation of his death

1

sentence.

## I. PROCEDURAL BACKGROUND

On September 21, 2023, Cramer timely filed his Motion pursuant to 28 U.S.C. § 2255. (Dkt. 4.) An abridged version, requested by the Court, was filed December 8, 2023, with an effective filing date of September 21, 2023. (Dkts. 7, 12.) A Motion for Leave to File Under Seal (Dkts. 10, 19) is still pending[1].

On July 8, 2024, this Court ordered the government to submit an Answer. (Dkt. 13.) That order, and the case itself, is currently stayed. (Dkt. 21.)

In 2024, the Department of Justice, through its Pardon Attorneys, and the White House reviewed various requests for clemency submitted by federally condemned prisoners. Cramer did not submit such a request.

On December 23, 2024, President Biden announced that he was commuting the sentences of 34 of the 37 prisoners on federal death row. That commutation order included Cramer, and this Court issued an order converting Cramer's sentence to Life Without Possibility of Parole. (See Dkt. 20.)

On January 5, 2025, this Court requested the response contained herein. (Dkt. 21.)

## II. LEGAL ARGUMENT

### A. Mr. Cramer continues to serve a judicial sentence despite the presidential commutation.

Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980). A case or controversy becomes moot only when "the issues presented are no longer

---

[1] To avoid an additional Motion to Seal for this document, all claims herein are referred to only by their section number as stated in the operative Motion at Dkt. 12.

'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 396 (internal quotations and citations omitted); *see also Corona-Perez v. United States*, 2023 U.S. Dist. LEXIS 229437 at *2-3 (citing *Geraghty*). A moot dispute is not a live dispute. *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307-08 (2012).

The issue of mootness in this case arises from a possible conflict between this Court's Article III powers and the pardon power granted to the executive branch via Article II. "As an act of executive mercy, the pardon power includes the authority to commute sentences in whole or in part." *Dennis*, 927 F.3d at 957-58 (cleaned up). While the President may place conditions on a pardon or commutation, those conditions must be "lawful and reasonable." *Hagelberger v. United States*, 445 F.2d 279, 280 (5th Cir. 1971) (per curiam); *see also Schick v. Reed*, 419 U.S. 256, 264 (1974) (in commuting an inmate's sentence, the President may not impose "conditions which . . . in themselves offend the Constitution"). As the Sixth Circuit recognized in *Dennis*, the interplay of Article II and Article III principles raises two questions: "Does a presidential commutation do away with a judicial sentence, leaving the recipient bound only by an executive sentence? Or does a commutation merely limit the execution of the judicial sentence?" 927 F.3d at 958. The weight of the caselaw emanating from the Supreme Court and the majority of circuits who have addressed this issue (including the Fifth Circuit), compels this Court to answer "no" to the first question and "yes" to the second.

"To render judgment is a judicial function. To carry the judgment into effect is an executive function." *Benz*, 282 U.S. at 311. This distinction is not altered by a commutation, because a prisoner who receives a presidential commutation continues to be bound by a judicial sentence. *See Dennis*, 927 F.3d at 958.; *see also Hagelberger*, 445 F.2d at 280 ("Commutation is the executive act reducing the terms of **a sentence already imposed**, substituting lesser for greater

3

punishment.") (emphasis added). A commutation "changes only how the sentence is carried out by switching out a greater punishment for a lesser one." *Dennis*, 927 F.3d at 958 (citing *Biddle v. Perovich*, 274 U.S. 480, 487 (1927)). In other words, while a president's commutation "abridges the enforcement of the judgment," it "does not alter it qua judgment." *United States v. Benz*, 282 U.S. 304, 311 (1931). Therefore, courts remain fully empowered to exercise their Article III authority to entertain collateral attacks on that judgment and scrutinize the case for "mistakes **the courts** may have made." *Dennis*, 927 F.3d at 958 (emphasis in original); *see also Benz*, 282 U.S. at 311.

Given this fundamental truth, the *Dennis* Court correctly recognized that the continued exercise of Article III jurisdiction inheres whether the commutation is unconditional (as in Mr. Cramer's case) or conditional:

> The existence of conditional commutations, as President Obama used in Dennis's case, also supports our jurisdiction. Say the President commuted a life sentence to 25 years but conditioned the commutation on the prisoner maintaining good behavior in prison. If, five years later, the prisoner stabbed a fellow inmate, he would violate the condition, undo the commutation, and absent more executive grace, be subject once again to life imprisonment under the sentence. *See Vitale v. Hunter*, 206 F.2d 826, 829 (10th Cir. 1953). The judgment remains in place, ready to kick into full effect if the recipient violates the conditional cap.
>
> The possibility of unconditional commutations also supports this view. Keep in mind that such actions do not require the recipient's consent. *Biddle*, 274 U.S. at 486-88. Anyone who takes the position that executive pardons or commutations necessarily eliminate the judicial sentence must account for this reality. It would mean that a mischievous chief executive could interfere with an inmate's efforts to obtain deserved relief in court. Suppose the President didn't like a Supreme Court decision that would result in some prisoners receiving lower sentences on collateral review (e.g., *Johnson v. United States*, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015)). Is it really the case that the President could unconditionally commute each of those prisoners' sentences by a day and thereby deny them any judicial relief from their unconstitutional sentences? We don't think so.

927 F.3d at 958-59. This Court should abide by the sound reasoning of the Sixth Circuit in *Dennis* and find that President Biden's commutation did not eliminate this Court's Article III jurisdiction

or its ability to review Mr. Cramer's allegations of Constitutional error in his conviction. Any other outcome would be contrary to the Constitution and the judiciary's "independent—and compelling—interest in remedying its errors." *Surratt*, 855 F.3d at 228 (Wynn, C.J., dissenting from dismissal).

Mr. Cramer maintains that the Fourth Circuit's holding in *Surratt*, 855 F.3d 218 (4th Cir. 2016), which dismissed a § 2255 appeal because the petitioner received a presidential commutation of his life sentence, is both wrongly decided and readily distinguishable from Mr. Cramer's case. The controlling holding in *Surratt* is a concurring opinion by Judge Wilkerson, who opined that the executive commutation fully substituted for the judicial sentence, and therefore the Fourth Circuit could not "readjust or rescind what the President, in the exercise of his pardon power, has done." 855 F.3d at 219. As discussed above, this holding is contrary to the law of this Circuit and the Supreme Court. Judge Wilkerson's concurrence effectively allows the president to impose a sentence on a private citizen, which is a power the executive clearly does not have. *Ex Parte Milligan*, 71 U.S. (4 Wall.) 2, 121-22 (1866); *Benz*, 282 U.S. at 311. Instead, any presidential commutation, including the one granted to Mr. Cramer, remains a judicial sentence, "the **execution** of which the President's act of grace has softened." *Dennis*, 927 F.3d at 960.

Even if this Court finds the holding in *Surratt* persuasive, the facts of that case are distinguishable from Mr. Cramer's. In *Surratt*, the petitioner requested that the President grant him relief from his sentence. When the requested commutation was granted, it came with conditions that Surratt had to affirmatively accept and complete. *Surratt*, 855 F.3d at 224-25. Here, in contrast, Mr. Cramer did not seek clemency from President Biden. Biden's commutation was both unconditional and unrefusable. *See Biddle v. Perovich*, 274 U.S. 480, 486 (1927) (cleaned up); *see also Agofsky v. United States*, Case No. 2:25-cv-00001-JRS-MJD (Dkt. 15, *Order*, Jan. 17, 2025)

(dismissing with prejudice petitioner's request to refuse President Biden's commutation). And Mr. Cramer certainly did not knowingly and voluntarily waive his rights under § 2255 when he, by no action of his own, received a commutation of his death sentence. *See Estelle v. Williams*, 425 U.S. 501, 515 (1976) (Powell, J., concurring) (the Supreme Court has long disfavored the inferred or implicit waiver of rights, particularly constitutional rights). While Mr. Cramer is grateful for the life sentence, it would certainly be a perversion of the constitutional order for that unrequested act of mercy to moot viable claims for relief that challenge his underlying conviction.

### B. Mr. Cramer's pending § 2255 motion includes live claims in which he retains a legally cognizable interest.

As noted above, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "A case becomes moot **only** when it is impossible for a court to grant **any** effectual relief whatever to the prevailing party." *Knox*, 567 U.S. at 307-08 (emphasis in original). Accordingly, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.*

Mr. Cramer's § 2255 motion remains viable except for those claims which **exclusively** challenge Mr. Cramer's death sentence. The claims listed below could result in a new trial, which in turn could result in a reduced sentence. The possibility that his sentence might be reduced suffices to give Mr. Cramer a concrete interest in this dispute, making it non-moot. *See id*. Numerous courts have found that a petitioner may collaterally challenge his original sentence, notwithstanding that the challenged sentence was commuted during the course of litigating that collateral challenge, when, at a minimum, the commuted sentence exceeds what the petitioner would face if he prevailed on his collateral challenge. *See, e.g., Dennis*, 855 F.3d at 228-29; *Simpson v. Battaglia*, 458 F.3d 585, 595 (7th Cir. 2006); *Robson v. United States*, 526 F.2d 1145,

1147 (1st Cir. 1975); *United States v. Hearst*, 638 F.2d 1190 (9th Cir. 1980).

Claims which remain viable following the commutation order are as follows:

- Claim 1;

- Claim 3(a);

- Claim 5;

- Claim 6;

- Claim 7, to the extent that the claim relies on a request for a new penalty phase;

- Claim 8;

- Claim 9;

- Claim 10;

- Claim 11;

- Claim 14;

- Claim 15;

- Claim 16, with the exception of failure to challenge the execution impact evidence and only as the claim relates to claims 1, 5, 6, 9, 11, and 15;

- Claim 18.

//

//

//

//

//

//

//

While some remaining subclaims involving the jury's decision to choose a life sentence or any subclaims that challenge the penalty phase alone may be moot, Cramer reserves the right to argue that certain aspects of the claim implicate his guilt-phase rights or otherwise demonstrate prejudice at the guilt phase. Cramer's remaining claims, individually or cumulatively, could result in guilt phase relief, which could entitle him to relief beyond the imposition of a life sentence.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 25, 2025                    By:    */s/ Laura Paul*
                                                    LAURA PAUL
                                                    CA Bar No. 329386
                                                    Deputy Federal Public Defenders
                                                    321 East 2nd Street
                                                    Los Angeles, California 90012-4202
                                                    Telephone: 213-894-3217
                                                    Facsimile: 213-894-0081
                                                    Email: Laura_Paul@fd.org

                                                    CELESTE BACCHI
                                                    CA Bar No. 307119
                                                    Managing Attorney
                                                    1001 Liberty Ave., Ste 1500
                                                    Pittsburgh, PA 15222
                                                    Telephone: 412-644-6565
                                                    Facsimile: 412-644-4594
                                                    Email: Celeste_Bacchi@fd.org

                                                    Attorneys for Movant
                                                    CHRISTOPHER E. CRAMER

8

**CERTIFICATE OF SERVICE**

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV(a)(3) on this 25th day of February.

/s/ Laura Paul
LAURA PAUL